UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 08 2010 ★

BROOKLYN OFFICE

---------------------------------------------------------------- x

GARY WOODS on behalf of himself and other
consumers of the Maytag Gas Oven Appliance
(Model MGR5875QDS) similarly situated,

Plaintiffs,

v.

MAYTAG CO., MAYTAG APPLIANCES SALES
CO., and PLESSER'S M.S.H. INC.,

Defendants.

---------------------------------------------------- x

**CV-10- 559**

**DEFENDANTS MAYTAG
CORPORATION'S AND
MAYTAG SALES, INC.'S
NOTICE OF REMOVAL**

SPATT, J.

WALL, M.J.

Defendants Maytag Corporation ("Maytag Corp.") and Maytag Sales, Inc.

("Maytag Sales") (collectively, "Maytag")[1] hereby remove to this Court the state court action

described below:

      1.      On December 10, 2009, Plaintiff Gary Woods ("Plaintiff") filed an action in the

Supreme Court of the State of New York, County of Nassau, entitled *Gary Woods v. Maytag Co.,*

*Maytag Appliances Sales Co., and Plesser's M.S.H. Inc.*, Case No. 025733/09.

---

[1] Although Plaintiff named "Maytag Co." and "Maytag Appliances Sales Co." as
defendants, those entities no longer exist. The Maytag Company changed its name to Maytag
Corporation on April 29, 1987, and the Maytag Appliances Sales Company became Maytag
Sales, Inc. on January 1, 2005 after The Hoover Company (Sales) merged into the Maytag
Appliances Sales Company. (Decl. of Lori E. Rabb ("Rabb Decl.") ¶ 2 n.1, attached hereto as
Exhibit A.) Maytag assumes, for the purposes of removal, that Plaintiff intended to file this
lawsuit against Maytag Corporation and Maytag Sales, Inc.

2.      On January 7, 2010, Plaintiff served Maytag Sales with his Complaint via Corporation Service Company.  This notice of removal is timely filed pursuant to 28 U.S.C. § 1446(b).

3.      A true and correct copy of the Complaint, together with copies of all other process, pleadings, and orders served in this case, are attached hereto as Exhibit B.  To the best of Maytag's knowledge and belief, these documents constitute all of the process, pleadings, and orders as of the date of this filing.  *See* 28 U.S.C. § 1446.

4.      According to the Complaint, Plaintiff is a resident of Nassau County, New York.  (Compl. ¶ 1.)

5.      Both Maytag Corp. and Maytag Appliances are Delaware corporations with their principal places of business in Benton Harbor, Michigan.[2]  (Rabb Decl. ¶ 4.)  Prior to 2006, when Maytag was acquired by Whirlpool Corporation, Maytag's principal place of business was in Newton, Iowa.  (*Id.*)

6.      A true and correct copy of this notice of removal will be filed with the Supreme Court of the State of New York, County of Nassau, in accordance with 28 U.S.C. § 1446(d), along with a notice of that filing that will be served on all parties.

7.      Plaintiff's Complaint is removable to this Court, and this Court has subject-matter jurisdiction, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a), and 1453, because this is a putative class action involving more than 100 putative class

_____

[2] Although Plaintiff alleges that Maytag Corp. and Maytag Sales have their principal places of business in New York (Compl. ¶¶ 4-5), Plaintiff is incorrect.

members, the parties are minimally diverse, and the matter in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d).

## I.   THIS COURT HAS JURISDICTION OVER THIS ACTION

8.     Plaintiff's Complaint alleges that Maytag sold the "Maytag 30 inch gas range convection oven model number MGR5875QDS" (the "Ovens") that allegedly have been designed "with certain hidden defects" as to the igniter mechanism that result in "a tendency to explode" and renders the ovens "inoperable and unusable." (Compl. ¶¶ 2, 15, 19.)

9.     Plaintiff alleges that, on or about July 21, 2005, he "purchased a gas oven Model No. MGR5875QDS." (*Id.* ¶ 13.) According to the Complaint, "[o]n February 29, 2008, Plaintiff, Gary Woods attempted to use said oven at which time it malfunctioned causing personal injuries and damages." (*Id.* ¶ 17.)

10.     Plaintiff's Complaint also alleges that Defendants were "aware of this defective condition and [were] fully capable of taking proper remedial action to correct it, but wrongfully failed and refuse to do so" and "intentionally concealed and covered up" the alleged defect in the Ovens. (*Id.* ¶¶ 16, 18.)

11.     Plaintiff filed this putative class action on behalf of "all those who are consumers of a Maytag 30-inch gas range convection oven model number MGR5875QDS."[3] (*Id.* ¶ 23; *see*

---

[3] There are at least four engineering model numbers for nearly identical Maytag®-brand gas range convection ovens, of which Plaintiff's model number, MGR5875QDS, represents the stainless steel option. Model numbers MGR5875QDB, MGR5875QDQ, and MGR5875QDW correspond to the black, bisque, and white colors of this same engineering model. (Rabb Decl. ¶ 2 n.2.) Although there may be functional engineering differences among these models over time as Maytag continuously improves its products through design and manufacturing changes, at any

*(Footnote cont'd on next page)*

3

*also id.* ¶ 1 ("He brings this action . . . on behalf of all those who now or in the past owned or purchased Maytag 30 inch gas range convection oven model number MGR5876QDS.").)

12.     The Complaint purports to assert claims for breach of express warranty, breach of implied warranty of fitness, breach of implied warranty of merchantability, fraud and deceit, and violation of New York General Business Law Section 349. (*Id.* ¶¶ 37-69.)

13.     CAFA reflects Congress's intent to have federal courts adjudicate substantial class action suits brought against out-of-state defendants. *See* S. Rep. No. 109-14, at 43 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 26-27; H.R. Rep. No. 108-144, at 22 (2005). To effectuate this purpose, CAFA provides that putative class actions filed in state court are removable to federal court and expands federal jurisdiction over such class actions by amending 28 U.S.C. § 1332 to grant original jurisdiction where, as here, the putative class contains at least 100 class members, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000 in the aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d).

14.     This putative class action satisfies all the jurisdictional requirements under CAFA. Specifically, (1) the proposed class consists of 100 or more putative members; (2) the parties are minimally diverse; (3) the amount in controversy exceeds the $5,000,000 jurisdictional threshold; and (4) the exceptions to CAFA do not apply here. *See* 28 U.S.C. § 1332(d); *County of Nassau, N.Y. v. Hotels.com, LP*, 577 F.3d 89, 92 (2d Cir. 2009).

---

*(Footnote cont'd from previous page.)*

given point these four model numbers would share a nearly identical engineering design, with primarily aesthetic differences among them (*e.g.*, different colors). (*Id.*)

## A.    The Putative Class Size Exceeds 100 Members

15.    CAFA's requirement that the putative class consist of at least 100 persons, 28 U.S.C. § 1332(d)(5)(B), is readily satisfied here.  Based on sales and shipping records created and maintained by Maytag in the course of Maytag's regularly conducted business activities, Maytag has shipped to trade customers (*i.e.*, retailers and other distributors of Maytag appliances) more than 12,194 Ovens (model number MGR5875QDS) throughout the United States during the period August 2003 (when Maytag first began selling the Ovens) through January 31, 2010.[4] (Rabb Decl. ¶ 9.)  Of these, Maytag shipped 232 Ovens to Intercounty Appliance, a third-party buying group from which Maytag's co-defendant Plesser's purchased Ovens for re-sale to consumers, such as Plaintiff.  (*Id.* ¶¶ 8-9.)  Plaintiff alleges that all of the Ovens are defective and either already have failed or in the future will fail.  (*See* Compl. ¶ 20 ("[T]he ovens in question possessed hidden and concealed defects as to the igniter mechanism which were known to Defendant."); *id.* ¶ 15 ("The damage suffered by Plaintiff and the class includes . . . the continuous malfunctioning of the gas oven which frequently render them inoperable and unusable . . .[and] the unconscionable and serious safety risk they encountered and continue to encounter . . . .").)  Accordingly, the number of current and former owners of the Ovens exceeds 100.

---

[4] Plaintiff's class definition is not limited to consumers in New York and is not limited to those Ovens sold by co-defendant Plesser's.  (*See* Compl. ¶ 23 ("The class is defined as all those who are consumers of a Maytag 30-inch gas range convection over model number MGR5875QDS."); *see also id.* ¶ 1.)

**B.      There Is Sufficient Diversity of Citizenship**

16.      The second CAFA requirement—minimal diversity—is satisfied here because at least one putative class member is a citizen of a different state than Maytag.  28 U.S.C. § 1332(d)(2).

17.      According to the Complaint, Plaintiff was a "resident of the County of Nassau, State of New York" at the time this action was filed.  (Compl. ¶ 1.)

18.      Maytag Corp. and Maytag Sales are both Delaware corporations with their principal place of business in Michigan.  (Rabb Decl. ¶ 4.)  Thus, the Maytag defendants are citizens of a different state than Plaintiff and a majority of the class.  *See* 28 U.S.C. § 1332(c)(1); *e.g.*, *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d. Cir. 2006) ("[I]t seems plain to us that Blockbuster is able to meet its burden of showing there is a reasonable probability that at least one of these class members is a citizen of New York and thus is 'a citizen of a State different from . . . defendant.'" (quoting 28 U.S.C. § 1332(d)(2)(A), alteration in original)).

**C.      The Minimum Amount in Controversy Requirement Is Satisfied**

19.      To confer subject matter jurisdiction on this Court based on diversity of citizenship, the amount in controversy must exceed the sum or value of $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individuals comprising a putative class are aggregated to determine if the amount in controversy exceeds the $5,000,000 jurisdictional threshold.  28 U.S.C. § 1332(d)(6).

20.      In the Complaint, Plaintiff asserts claims for compensatory damages, punitive damages, and injunctive relief on behalf of a proposed class of all consumers who currently own or previously owned an Oven.  (*See* Compl. ¶¶ 1, 23 (defining the class as "all" consumers of the

6

Ovens); *id.* at 14 ¶¶ 1-5 (requesting "compensatory and punitive damages" and "actual damages sustained as allowable under General Business Law Section 347"); *id.* ¶ 68 (requesting Defendants "be enjoined from continuing to engage in [their] deceptive practices and wrongful violations").) Plaintiff also seeks "attorneys' fees." (*Id.* at 14 ¶ 4.) The Court may consider economic damages, as well as the cost of complying with Plaintiff's requested injunction and attorneys' fees, for purposes of determining the jurisdictional amount in controversy. *See, e.g., Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007).

21.    Although the Complaint does not make any specific damages demand, Plaintiff specifically requests "reimbursement for the entire purchase price of the machine," as well as other available damages. (Compl. ¶ 55.) Based on sales and shipping records maintained by Maytag in the course of Maytag's regularly conducted business activities, Maytag can estimate the minimum cost of such aggregate damages Plaintiff requests on behalf of the putative class. As noted above, Maytag shipped approximately 12,194 Ovens to trade customer locations throughout the United States during the period August 2003 to January 31, 2010. (Rabb Decl. ¶ 9.) The lowest retail cost of a new Oven sold during the period 2003 to the present has been higher than approximately $1,000.00. (*Id.* ¶ 11.) Thus, if Plaintiff were to prevail on his putative class claims, the aggregate cost to Maytag to reimburse the Ovens' purchase prices would exceed $12,194,000, and that sum does not include sales taxes, delivery charges, or installation expenses.[5] (*Id.* ¶ 12.)

---

[5] Moreover, if the Court were to consider all four of the substantially-similar engineering models, which differ primarily as to aesthetic characteristics during any given manufacturing

*(Footnote cont'd on next page)*

22.     Moreover, because Plaintiff also seeks punitive damages, presumably in an amount equal to or greater than the claimed aggregate compensatory damages,[6] Maytag's total claimed liability for damages could be at least twice the sum of the aggregate cost of purchase-price reimbursements.

23.     If Plaintiff were to obtain a class-wide judgment on behalf of all consumers of a Maytag 30-inch gas range convection oven model number MGR5875QDS, the requested award of compensatory damages, punitive damages, injunctive relief, and attorneys' fees would substantially exceed the sum of $5,000,000.  Thus, CAFA's amount-in-controversy requirement is satisfied here.  *See, e.g.*, *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 353 (E.D.N.Y. 2008) (finding that the defendants sufficiently demonstrated that the jurisdictional amount was satisfied where the plaintiff sought a number of forms of relief, including rent abatement, property damage, actual or potential personal injury, breach of warranty, and alleged deceptive acts).

---

*(Footnote cont'd from previous page.)*

period, and not just the stainless steel model number owned by Plaintiff, the aggregate cost of purchase-price reimbursements would exceed $27,430,000 for the approximately 27,430 units sold nationwide.  (Rabb Decl. ¶¶ 10, 12.)

[6] *See* N.Y. Gen. Bus. Law § 349 ("The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section."); *Barclays Bank of N.Y., N.A. v. Heady Elec. Co.*, 571 N.Y.S. 2d 650, 654 (N.Y. App. Div. 1991) (noting that punitive damages can be recovered in fraud claims where the plaintiff seeks to vindicate a public right or deter morally culpable conduct).

### D. The Exceptions to CAFA Do Not Apply

24. Plaintiff bears the burden of establishing any applicable exception to the Court's subject matter jurisdiction under CAFA. *Sorrentino*, 588 F. Supp. 2d at 353 ("[W]hile the Second Circuit has not ruled on the issue, the Court agrees with the weight of authority finding that the party resisting federal jurisdiction pursuant to one of CAFA's exception provisions bears the burden of proving that a CAFA exception applies."); *Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 528 (S.D.N.Y. 2008) (noting that the "other circuits and district courts in this circuit that have confronted this issue have determined that once the removing defendants prove the amount in controversy and the existence of minimal diversity, the burden shifts to the plaintiffs to prove that the local controversy exception to federal jurisdiction should apply"); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 812-13 (5th Cir. 2007); *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 680-81 (7th Cir. 2006); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006); *cf. Blockbuster, Inc.*, 472 F.3d at 58 (noting that several courts of appeal have held that a plaintiff seeking remand bears the burden of establishing that they are eligible for one of CAFA's exceptions to jurisdiction, but declining to decide the issue because it was not presently before the court).

25. CAFA provides two mandatory exceptions to the application of federal jurisdiction. 28 U.S.C. § 1332(d)(4); *see also Preston*, 485 F.3d at 797 (discussing CAFA exceptions). The "local controversy" exception applies where (1) more than two-thirds of the class members are citizens of the state where the action was originally filed; (2) there is at least one defendant from the state where the action was originally filed from whom "significant" relief is demanded and whose alleged conduct forms a "significant" basis for the claims asserted; (3)

9

the principal injuries suffered by the class were incurred in the state where the action was originally filed; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the past three years. *See* 28 U.S.C. § 1332(d)(4)(A). The "home state controversy" exception applies where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

26.    Neither of these exceptions applies.[7] First, because Plaintiff's proposed class definition seeks to cover "all" consumers (Compl. ¶¶ 1, 23)—without any geographic restriction—Plaintiff's proposed class necessarily encompasses consumers who are citizens of all 50 states and the District of Columbia, who bought their Ovens in their home states, who experienced problems with their Ovens (if at all) in their home states, and who were harmed (if at all) by Maytag's alleged wrongful conduct in their home states. Plaintiff, therefore, cannot satisfy the local controversy exception's requirements that two-thirds of the class be citizens of New York and that the principal injuries have occurred in New York. (*See* Rabb Decl. ¶ 9 (Maytag shipped at least 12,194 Ovens to trade customers throughout the United States, while only 1,010 went to trade customers in New York).)

27.    Second, Plaintiff cannot show that he is seeking "significant relief" from Plesser's—the only New York defendant—or that Plesser's alleged wrong forms a "significant basis" for the claims asserted. *See* 28 U.S.C. § 1332(d)(4)(A). Although CAFA does not define

---

[7] CAFA's discretionary exception also does not apply, and Maytag reserves its right to address the exception in detail if Plaintiff files a motion to remand to state court.

or provide standards for determining whether the relief sought is "significant" or for determining which bases for the plaintiffs' claims are "significant," "courts have generally required that the local defendant's conduct be significant in relation to the conduct alleged against other defendants in the complaint, and that the relief sought against that defendant is a significant portion of the entire relief sought by the class." *Ava Acupuncture*, 592 F. Supp. 2d at 528 (citation omitted and internal quotation marks omitted). Here, Plaintiff does not limit the proposed class to only those consumers who bought their Ovens from Plesser's, and Plesser's may be held liable, if at all, only for those Ovens that Plesser's actually sold to putative class members. Of the 12,194 Ovens that Maytag shipped to retailers for re-sale to consumers, however, Maytag shipped only 232 to Intercounty Appliance, a third-party buying group that re-sold a portion of these same 232 Ovens to Plesser's. (Rabb Decl. ¶ 9.) Because Plesser's has sold only a small number of the Ovens to putative class members, the vast majority of class members have no claims against Plesser's and cannot obtain any relief from Plesser's. *See, e.g.*, *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006) (holding that the local defendant was not significant because its liability was not significant compared to other defendants, and its conduct did not form a significant basis for the claims of the class); *Ava Acupuncture*, 592 F. Supp. 2d at 531 (finding that the "local controversy" exception did not apply because "the total number of complaints lodged against AutoOne and General Assurance [the two New York defendants] pale in comparison with the more than sixty-seven thousand denials at issue with State Farm," the foreign defendant).

11

28.     Moreover, Plaintiff cannot establish 28 U.S.C. § 1332(d)(4)(B)'s "home state controversy" exception because two-thirds of the putative class members are not citizens of the same state as Maytag, the "primary defendants."[8]

29.     Because the CAFA jurisdictional requirements are met, and because exceptions to the Court's exercise of jurisdiction do not apply here, this case is properly removed.

30.     For these reasons, the Maytag defendants request that the Court assume jurisdiction over this action.

Dated:   New York, New York
         February 8, 2010

                                        LEADER & BERKON LLP

                                        By _James K. Leader_

                                        JAMES K. LEADER (JL-9417)
                                        THOMAS K. RICHARDS (TR-8945)
                                        630 Third Avenue
                                        New York, NY 10017
                                        Telephone: (212) 486-2400
                                        Facsimile: (212) 486-3099
                                        Email: jkleader@leaderberkon.com

---

[8]  Although the term "primary defendants" is not defined in CAFA, courts have held that a primary defendant is one who has the greater liability exposure, is most able to satisfy a potential judgment, or is the subject of a significant portion of the claims asserted by plaintiffs. *See Brook v. UnitedHealth Group Inc.*, No. 06 CV 12954(GBD), 2007 WL 2827808, at *5 (S.D.N.Y. Sept. 27, 2007). As the defendants who potentially could be held liable to 100% of the putative class members for each of the claims asserted by Plaintiff, the Maytag defendants are "the primary defendants" in this lawsuit.

&

Michael T. Williams, Esq.*
Allison R. Cohn, Esq.*
Wheeler Trigg O'Donnell LLP
1801 California Street, Suite 3600
Denver, Colorado 80202
Telephone: (303) 244-1800
Facsimile:  (303) 244-1879

*pro hac vice motions will be submitted

Attorneys for Defendants
Maytag Corporation and Maytag Sales, Inc.

13

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )

                           : ss.:

COUNTY OF NEW YORK  )

           **ANILDA DELAMAZA,** being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age, and resides in Bronx, New York, that on the 8th day of February, 2010 deponent served the foregoing, **NOTICE OF REMOVAL** by **FED EX** upon the following:

                                John T. Gorton, Esq.
                                Gorton & Gorton, LLP
                                1539 Franklin Avenue
                                Mineola, NY 11501

                                Plesser's M.S.H., Inc.
                                6 E. Main Street
                                Babylon, NY 11702

                                **ANILDA DELAMAZA**

Sworn to before me this
8TH day of FEB_____ 2010

Notary Public

WILLIE GARCIA
Notary Public, State of New York
No. 01GA6176781
Qualified in Kings County
Commission Expires Nov. 5, 20_____



**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

——————————————————————— x

GARY WOODS on behalf of himself and other
consumers of the Maytag Gas Oven Appliance
(Model MGR5875QDS) similarly situated,

               Plaintiffs,

     v.

MAYTAG CO., MAYTAG APPLIANCES SALES
CO., and PLESSER'S M.S.H. INC.,

               Defendants.

——————————————————————— x

Case No. _____

**DECLARATION OF LORI E.
RABB IN SUPPORT OF
MAYTAG CORPORATION
AND MAYTAG SALES, INC.'S
NOTICE OF REMOVAL**

I, Lori E. Rabb, hereby state and declare the following:

1.      I am over 21 years of age, of sound mind, and competent to testify.  Unless

otherwise stated, I have personal knowledge of the facts stated in this declaration.  If called as a

witness, I could testify as to each of them.

2.      I am employed by Whirlpool Corporation ("Whirlpool"), as Product Quality Lead,

Food Preparation, North America Region.[1]  My routine job responsibilities include providing

leadership in addressing quality issues for food preparation appliances manufactured by

---

[1] In May 2006, Whirlpool acquired the Maytag Corporation ("Maytag Corp.") and
Maytag Sales, Inc. ("Maytag Sales") (collectively, "Maytag").  I understand that Plaintiff named
"Maytag Co." and "Maytag Appliances Sales Co." as two of the defendants.  Neither entity
currently exists.  The Maytag Company changed its name to Maytag Corporation on April 29,
1987.  On January 1, 2005, The Hoover Company (Sales) merged into Maytag Appliances Sales
Company, and the surviving company continued as Maytag Sales, Inc.

Whirlpool and Maytag, including the Maytag®-brand gas range convection ovens, model number MGR5875QDS (the "Ovens"),[2] that are the subject of this lawsuit.

3.     In this declaration I state facts in support of Maytag's removal of this case from New York state court to federal court.

4.     Maytag is incorporated in Delaware, and its principal place of business is currently located in Benton Harbor, Michigan, which is located in Berrien County, Michigan. Prior to Maytag's 2006 acquisition by Whirlpool, Maytag's principal place of business was in Newton, Iowa.

5.     Maytag first began selling the Ovens in August 2003.

6.     I am familiar with the methods by which Maytag sells its Ovens, the number of such Ovens that Maytag has sold nationwide and in the State of New York from 2003 through the present, and the lowest approximate retail cost of the Ovens.  In the ordinary course of its business, Maytag maintains sales and shipping information for such Ovens in Maytag's and Whirlpool's computerized databases.

7.     The Ovens have been sold to, and resold by, thousands of "trade customers," which include nationwide retailers, regional retailers, local retailers, builders, contractors, and

---

[2] There are at least four engineering model numbers for nearly identical Maytag®-brand gas range convection ovens, of which Plaintiff's model number, MGR5875QDS, represents the stainless steel option.  Model numbers MGR5875QDB, MGR5875QDQ, and MGR5875QDW correspond to the black, bisque, and white colors of this same engineering model.  Although there may be functional engineering differences among these models over time as Maytag continuously improves its products through design and manufacturing changes, at any given point these four model numbers would share a nearly identical engineering design, with primarily aesthetic differences among them (*e.g.*, different colors).

other distributors of Maytag appliances, in the 50 United States, the District of Columbia, and elsewhere. Maytag sells a small minority of its Ovens directly to end-user consumers through (a) Whirlpool's Employee Purchase Program, which allows Whirlpool employees and their family members to buy appliances at a discount, (b) Everyone Sells, a promotional program that permits friends and acquaintances of Whirlpool employees to buy appliances at a discount, and (c) through Whirlpool's VIP Program, which allows employees of Whirlpool's third-party vendors to buy appliances at a discount.

8.     I understand that Plaintiff purchased his Oven from Defendant Plesser's M.S.H. Inc. ("Plesser's"). Plesser's is not one of Maytag's trade customers, and Maytag did not sell the Ovens to Plesser's. Rather, Plesser's purchased the Ovens through Intercounty Appliance, a third-party buying group. Because I am familiar with the number of Ovens that Maytag has sold to Intercounty Appliance, I can determine that the number of Ovens sold by Plesser's is less than the number sold by Maytag to Intercounty Appliance.

9.     During the period August 2003, through January 31, 2010, Maytag manufactured and shipped at least 12,194 Ovens (model number MGR5875QDS) to trade customer locations throughout the United States. Of these, approximately 1,010 Ovens were shipped to trade customers in New York, and approximately 232 were shipped to Intercounty Appliance, of which a smaller number were sold to Plesser's.

10.     I also determined the shipment numbers for all four model numbers of the Maytag®-brand gas range convection ovens (MGR5875QDS, MGR5875QDB, MGR5875QDQ, and MGR5875QDW), not just the model number owned by Plaintiff (which reflects the stainless steel option). During the period August 2003 through January 31, 2010, Maytag manufactured

and shipped at least 27,430 Maytag®-brand gas range convection ovens to trade customer locations throughout the United States. Of these, approximately 2,184 ovens were shipped to trade customers in New York, and approximately 489 were shipped to Intercounty Appliance, of which a smaller number were sold to Plesser's.

11.     During that same period, the lowest retail cost of a new Oven sold has been higher than approximately $1,000.00. Most Ovens cost hundreds of dollars more than this price.

12.     The aggregate cost to Maytag to reimburse the Ovens' purchase prices would exceed $12,194,000, which does not include sales taxes, delivery charges, or installation expenses. Moreover, the aggregate cost of purchase-price reimbursements for all four of the substantially-similar engineering models (which differ primarily as to aesthetic characteristics during any given manufacturing period) would exceed $27,430,000.

I declare under penalty of perjury under the laws of the United States, 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Signed this 5th day of February, 2010.

_____
Lori E. Rabb

**EXHIBIT B**



**DATE RECEIVED**

**JAN 1 1 2010**

**LAW DEPARTMENT**



**CORPORATION SERVICE COMPANY**

**BHY / ALL**
**Transmittal Number: 7288186**
**Date Processed: 01/07/2010**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Ms. Garnet Chapin<br>Whirlpool Corporation<br>211 Hilltop Road<br>MD 2114<br>St. Joseph, MI 49085 |
| **Copy of transmittal only provided to:** | Angela Nepper |

| | |
|---|---|
| **Entity:** | Maytag Sales, Inc.<br>Entity ID Number 2644803 |
| **Entity Served:** | Maytag Sales, Inc. |
| **Title of Action:** | Gary Woods vs. Maytag Co. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court:** | Nassau County Supreme Court, New York |
| **Case Number:** | 025733/09 |
| **Jurisdiction Served:** | New York |
| **Date Served on CSC:** | 01/07/2010 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | NY - Department of State on 12/29/2009 |
| **How Served:** | Certified Mail |
| **Sender Information:** | John T. Gordon<br>516-742-8466 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

To avoid potential delay, please do not send your response to CSC.
CSC is SAS70 Type II certified for its Litigation Management System.
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

State of New York - Department of State
Division of Corporations

Plaintiff/Petitioner:
WOODS, GARY

Party Served:
MAYTAG SALES, INC.

C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NY 12207-2543

Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of
State on 12/29/2009 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
This copy is being transmitted pursuant to such statute to the address
provided for such purpose.

Very truly yours,
Division of Corporations

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
————————————————————————X

GARY WOODS on behalf of himself and other
consumers of the Maytag Appliance Model MGR5875QDS
 similarly situated,

                        Plaintiffs

    -  against –

MAYTAG CO. and MAYTAG APPLIANCES AND
SALES CO.

                        Defendants.
————————————————————————X

INDEX NO. 025733/09

SUMMONS

TO THE ABOVE-NAMED DEFENDANTS:

      You are hereby summoned and required to serve upon Plaintiff's attorneys an answer to
the Complaint in this action within twenty (20) days after the service of this Summons,
exclusive of the day of service, or within thirty (30) days after service is complete if this
Summons is not personally delivered to you within the State of New York.  In case of your
failure to answer, judgment will be taken against you by default for the relief demanded in the
Complaint.

Dated: Mineola, New York
        December 10, 2009

                      Yours, etc.
                      GORTON & GORTON LLP

                      BY:
                        John T. Gorton, Esq.
                      Attorney for Plaintiff
                      *GARY WOODS on behalf of himself*
                      *and other consumers similarly*
                      *situated, consumers of the Maytag*
                      *Appliance Model MGR5875QDS*
                      1539 Franklin Avenue
                      Mineola, NY  11501
                      (516) 742-8466

To:

Department of State
(Maytag Co.)
Secretary of State
c/o Division of Corporations
41 State Street
Albany, NY 11231

Department of State
(Maytag Appliances and Sales)
Secretary of State
c/o Division of Corporations
41 State Street
Albany, NY 11231

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
_____X

GARY WOODS on behalf of himself and other
consumers of the Maytag Gas Oven Appliance
(Model MGR5875QDS) similarly situated,                              **INDEX NO.**

                               Plaintiffs                              **COMPLAINT**

   -  against —

MAYTAG CO., MAYTAG APPLIANCES SALES CO.,
and PLESSER'S M.S.H. INC.

                              Defendants.
_____X

        Plaintiff, by his attorneys, Gorton & Gorton, as and for their complaint

against the Defendant, allege as follows:

        1.      Plaintiff, Gary Woods, is a resident of the County of Nassau, State

of New York.  He brings this action both in his individual capacity and on behalf of all

those who now or in the past owned or purchased a Maytag 30" gas range oven.

        2.      The named class representative is a member of the above-defined

class and seeks to represent those similarly situated persons who now or in the past

owned or purchased Maytag 30 inch gas range convection oven model number

MGR5875QDS.

        3.      Upon information and belief, Defendant, Maytag Co., is a

corporation incorporated under the laws of the State of Delaware, authorized to do

business in the State of New York, with its principle place of business located in New

York, New York.

4.    Upon information and belief, Defendant, Maytag Appliances and Sales Co. is a Corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of New York with its principal place of business located in New York.

5.    Upon information and belief, the defendant, Maytag Appliance Sales Co., is a wholly owned subsidiary of Maytag Co. which manufactured the gas oven.

6.    At all relevant times, the defendants, Maytag Co. and Maytag Appliance Sales Co. acted on behalf of each other.  During the relevant times, Defendants, Maytag Co. and Maytag Appliances Sales Co. possessed a unity of interest between themselves and Maytag Co. exercised control over its subsidiaries and affiliates. As such, each said defendant is individually, as well as jointly and severally liable to Plaintiff and to the class.

7.    At all times hereinafter mentioned, the defendant, Plesser's, M.S.H., Inc. is located at 6 East Main Street, Babylon, New York, 11702 and does business in the State of New York.

8.    At all times hereinafter mentioned, the defendant, Plesser's M.S.H., Inc. (hereinafter referred to as "Plesser's"), was a domestic corporation organized and existing pursuant to the laws of the State of New York.

9.    At all times hereinafter mentioned, the defendant, Plesser's M.S.H., Inc. was a foreign corporation duly authorized to do business in the State of New York.

2

10.    Defendant, Maytag Co., is now, and at all times mentioned in this Complaint was, in the business of designing, manufacturing, constructing, assembling, inspecting, and selling various types of household appliances, including gas ovens.

11.    Upon information and belief, Defendant, Maytag Sales Appliance Co. is now, and at all times mentioned in this Complaint, was and is in the business of selling household appliances including gas ovens.

12.    Defendant, Plesser's, is now, and at all times mentioned in this Complaint was, in the business of selling at retail to the plaintiff and to the members of the public, various types of household appliances, including gas ovens designed and manufactured by defendant, Maytag Co.

13.    On or about July 21, 2005, Plaintiff purchased from defendant, Plesser's, gas oven Model No. MGR5875QDS, that had previously been designed, manufactured, constructed, assembled, and sold by defendant, Maytag Co..

14.    On or about February 29, 2008, Plaintiff attempted to use the oven, at which time it malfunctioned due to the negligent and careless design of the manufacturer.

15.    This action arises out of the damage caused to the Plaintiff and the members of the class by certain hidden defects in the Maytag gas oven and the deliberate cover up and concealment by Defendant(s) of such defects.  The damage suffered by Plaintiff and the class includes, inter alia, (i) the continuous malfunctioning of the gas oven which frequently rendered them inoperable and unusable, (ii) the unjustifiable inconvenience, damage and expense they were forced to incur because of the countless repairs needed in order to maintain the gas oven in usable condition, albeit temporarily;

3

and (iii) the unconscionable and serious safety risk they encountered and continue to encounter while using the gas oven because of the oven's tendency to explode and become inoperable at any given time.

16.  Upon information and belief, Defendant(s) has intentionally concealed and covered up the incompatible standards of conduct for Defendant(s), or (ii) adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members not party to the adjudications or substantially impair or impede their ability to protect their interest. The foregoing deceptive acts and omissions and practices of Defendant(s) are in violation of General Business Law Sections 349(a).

17.  Beginning in and around 2005, Plaintiffs and the members of the class purchased or otherwise obtained the gas ovens in question. On February 29, 2008, Plaintiff, Gary Woods attempted to use said oven at which time it malfunctioned causing personal injuries and damages.

18.  Upon information and belief, Defendant(s) was aware of this defective condition and was fully capable of taking proper remedial action to correct it, but wrongfully failed and refused to do so in order to save itself the substantial cost and expense involved, all to the detriment, damage, and loss to Plaintiffs and the class and at the inexcusable and unjustifiable risk of exposing Plaintiffs and the class to serious and perilous safety hazards and severe bodily harm.

19.  Upon information and belief, and unbeknownst to Plaintiffs and the class, Defendant further knew that the igniter caused the gas valve to open in such a manner that the open valve causes the oven to fill with gas but does not ignite. As a

4

result, the design defect would trigger an explosion. This occurs when the oven door is opened and the fuel rich oven air and oxygen from outside the oven mix and trigger an explosion. Despite Defendant's knowledge of this, neither Plaintiffs nor the class members were ever advised of the problem and they continued to use these ovens unaware that such ovens were likely to explode.

20.     Further, upon information and belief, the ovens in question possessed hidden and concealed defects as to the igniter mechanism which were known to Defendant. Upon information and belief, these defects are reflected in data and reports maintained by Defendant and other reports, technical service bulletins, documents, and memoranda within the possession of Defendant. Such other defects were never disclosed to Plaintiffs and the class.

21.     These defects in the ovens included, inter alia, upon information and belief, all occurred while Plaintiffs and the class continued to suffer with the defective oven without recompense, at risk to their personal safety, and without the benefit of the full and proper use of the ovens which they paid substantial monies. These defects were not discovered by the named individual Plaintiff, Gary Woods, until on or after February 29, 2008 when said oven exploded causing injury and damage.

## CLASS ACTION ALLEGATIONS

22.     This action is brought and is maintainable as a class action pursuant to N.Y. C.P.L.R. 901.

23.     The class is defined as all those who are consumers of a Maytag 30 –inch gas range convection oven model number MGR5875QDS.

24.     Upon information and belief, the class is so numerous that joinder of all members is impracticable.

25.     There are numerous questions of law and fact common to the class, which predominate over any questions affecting only individual members. Such common questions include, inter alia:

(a)     whether defendants have breached its implied warranty of merchantability that the gas ovens purchased by Plaintiffs and the class were, and would be, fit for their intended use.

(b)     whether defendant has breached its implied warranty that the gas ovens purchased by Plaintiffs and the class were, and would be, of merchantable quality;

(c)     whether defendant has breached its express warranty that the hot surface, ignition mechanism of the oven purchased by plaintiffs and the class were designed in a manner so as to operate properly; and if faulty, would be repaired, replaced, and/or maintained in good working condition;

(d)     whether defendant has committed fraud by failing to disclose to plaintiffs and the class the hidden design defects fully known to it in respect of the gas ovens; and

(e)     whether defendant concealed the hidden defects from plaintiffs and the class by, among others, (i) failing to recall such gas ovens, and (ii) failing to make the correct, complete, and comprehensive installation of an electrical or other appropriate system and components in order to render the gas ovens properly operable and safe for its intended uses.

(f)     whether defendant has violated General Business Law Section 349 by its deceptive practices and acts misleading the consumer that its product was safe for its intended use and which acts have posed a risk to the plaintiff and the class and to potential consumers at large.

26.     The claims of Plaintiffs are typical of the class as a whole.

27.     Plaintiff will fairly and adequately protect the interests of the class.

28.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, since members of the class have no

6

substantial interest in individually controlling the prosecution of separate actions.  No unusual difficulties are likely or expected to be encountered in the management of this action as a class action.

29.     A class action is also superior to other methods of adjudication because the prosecution of separate actions by individual members of the class would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the class.

30.     Unbeknownst to the Plaintiff and to the class, these aforementioned defects, among other things, directly (i) caused the gas ovens to malfunction, making the ovens unusable and unsafe, (ii) caused the Plaintiffs and the members of the class undue inconvenience, frustration, damage, and expense by requiring them to undergo countless repairs to the ovens in order to render them usable, albeit temporarily.

31.     Despite the fact that Defendant, upon information and belief, knew of these design defects in the ovens in question, Defendant concealed them, never properly corrected them and failed to disclose the true facts to the Plaintiff and the class.

32.     Defendant has fraudulently failed to disclose, and has continued to conceal from Plaintiffs and the class, that the gas ovens possessed hidden and potentially dangerous design defects which have subjected the consumer to the risk of death or serious bodily harm.

33.     Defendant, by manufacturing and releasing the above-mentioned gas ovens to various distributors for retail sale, impliedly warranted that the gas ovens

7

were of a merchantable quality, fit, safe, and in proper condition for the intended use for which such ovens were designed and used.

34.     The ovens designed and manufactured by Defendant and purchased by Plaintiffs and the class was not of merchantable quality.  Rather, they were and still are unfit and unsafe for their intended purpose.  The defective condition of the gas ovens constitutes a defect which is the basis for damages sustained by Plaintiff and the class.

35.     As a proximate result of the hidden defects in such gas ovens, they were unfit for use in the ordinary manner of cooking inasmuch as they randomly exploded and in constant need of repair.

36.     Defendant was in a superior position to know the existence of the facts pertaining to the hidden defects in the gas oven and the inherent safety risks and other consequences, based upon the data available to it and, upon information and belief, the countless instances in which these gas ovens were returned for repair at Maytag dealers and service centers because of the design defects of which Defendant had knowledge.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of Express Warranty)

37.     Plaintiffs repeat and reallege each and every allegation in Paragraph 1 through 36 with the same force and effect as though fully set forth herein.

38.     In and around 2005, Defendant sold to Plaintiffs and to the members of the class, gas oven Model No. MGR5875QPS.

39.    Upon information and belief, prior to Plaintiffs use of the gas ovens, defendant, Maytag, in order to promote and induce the purchase of its product, expressly warranted to the general public and to the Plaintiff, though the internet, by advertisement literature and other means that consumers could safely use the product for the purpose of cooking which was in fact the purpose for which the product was intended.

40.    At the time of the sale and as a part thereof, and as inducement to Plaintiffs and the class to acquire the gas ovens, Defendants warranted certain safety features.

41.    Plaintiffs and the class purchased or obtained the ovens in reliance on the warranty (as well as the professed integrity of Defendant Maytag).

42.    The warranty was untrue in that Defendants had deliberately failed to disclose and has concealed the design defects in the hot surface igniter style oven of said Maytag appliance and has failed, although given ample opportunity to do so, to repair such defects.

43.    By reason of the foregoing, Plaintiffs and the class have been damaged in an amount to be determined at trial.  The amount of damages sought exceed the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

### AS AND FOR A SECOND CAUSE OF ACTION

(Breach of Implied Warranty of Fitness)

44.    Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 43 with the same force and effect as though fully set forth herein.

9

45.     Plaintiffs and the class owned and purchased the gas ovens in question for use as an appliance to be used on a day-to-day basis and/or as needed for cooking.

46.     Defendants had knowledge of the purpose for which the gas ovens were obtained and, at the time of the sale, warranted the same to be fit and proper for such purposes.

47.     Plaintiffs and the class relied upon the warranty and attempted to use the ovens for the purposes aforesaid, but ovens instead were unsound, unsuitable, and unreliable for such use because the defects resulting from the hidden and concealed defects set forth herein.  Defendant never notified Plaintiffs or the class of the hidden defects and never offered to replace the gas ovens or to install corrective devices or to otherwise make proper repairs in order to render the gas ovens safely operable for the purpose for which obtained.

48.     Plaintiffs have given any and all notice required to be given to Defendant.

49.     Defendants' aforementioned acts and/or omissions were grossly negligent, willful, and wanton, and in reckless disregard for the personal safety of the Plaintiffs and the class which entitles Plaintiff and the class to punitive damages.

50.     By reason of the foregoing, Plaintiffs and the class have been damaged in an amount to be determined at trial.  The amount of damages sought exceeds the jurisdiction's limits of all lower courts that would otherwise have had no jurisdiction.

### AS AND FOR A THIRD CAUSE OF ACTION

(Breach of Implied Warranty of Merchantability)

10

51.    Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 50 with the same force and effect as though fully set forth herein.

52.    On the dates Plaintiffs and the class purchased gas ovens, Defendants warranted that such ovens would be of good and merchantable quality.

53.    Plaintiffs and the class relied upon the warranty and were induced thereby to purchase and to pay substantial consideration therefore.

54.    The ovens at the time of the transactions and warranty were not of good and merchantable quality, but were in fact, though unknown to Plaintiff and the class of poor and inferior quality at the time of the transaction, unfit for use for which substantial consideration was paid; and this has thereby caused the Plaintiff and the class to suffer substantial damage and loss.

55.    Based on the foreging, Plaintiff and the class have been damaged in an amount to be determined at trial including, but not limited to, reimbursement for the entire purchase price of the ovens.  The amount of damages sought exceeds the jurisdiction's limits of all lower courts that would otherwise have had jurisdiction.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Fraud and Deceit)

56.    Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 55 with the same force and effect as though fully set forth herein.

57.    By virtue of the conduct of Defendant, as hereinabove alleged, including lack of disclosure, cover up and concealment, which continues to the date hereof, of the design defects existing in the ovens as aforementioned, Plaintiff and the class have been defrauded and deceived by Defendant.

11

58.     Defendant's failure to disclose the design defects and its fraudulent concealment and cover-up of such material facts of which Defendant had an affirmative duty to disclose to Plaintiff and the class, were willful and deliberate, and Plaintiffs and the class relied on such fraudulent and deceitful conduct to their detriment.

59.     Defendant's fraudulent and deceitful acts of cover-up and concealment, constituted willful indifference, were willful and wanton, and in reckless disregard for the personal safety of the Plaintiff and the class members described herein which entitles Plaintiff and the class to punitive damages.

60.     Based upon the foregoing, Plaintiff and the class have been damaged by an amount to be awarded at trial. The amount of damages sought exceeds the jurisdiction's limits of all lower courts that would otherwise have had jurisdiction.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Violation of General Business Law Section 349)

61.     Plaintiffs repeat and reallege each and every allegation in Paragraphs 1 through 60 with the same force and effect as though fully set forth herein.

62.     Defendant's conduct constitutes materially deceptive acts or practices in the conduct of business, trade, or commerce, or in the furnishing of services in this State which affect the consumer and public interest at large under General Business Law Section 349.

63.     The actions of defendants were directed at the general public as well as Plaintiffs and were designed to further defendants' business, trade, or commerce.

64.     Upon information and belief, the defendant knowingly misrepresented material facts regarding the safety and use of said Maytag oven in an

12

effort to induce plaintiffs and the public at large to purchase said oven, Model No.
MGR5875QDS.

65.    By this action, Plaintiff seeks to remedy the harm caused by
Defendant's wrongful and inequitable conduct which misled consumers to believe that
the purchase of the Maytag appliance was safe for its intended use.  Plaintiff and all those
similarly situated should be awarded compensatory damages and/or other relief to redress
Defendant's unlawful deception and inequitable conduct constituting breach of contract
and in violation of New York General Business Law, Section 349.

66.    As a result, Plaintiff and the class have been injured by
Defendant's deceptive conduct.

67.    Defendant is liable for actual damages sustained by Plaintiff and
the class as allowable under General Business Law Section 349 in amount to be
determined at trial plus interest, costs, and attorneys' fees.

68.    Additionally, Defendant should be enjoined from continuing to
engage in its deceptive practices and wrongful violations of General Business Law
Section 349 with respect to its deceptive business practices concerning the Maytag gas
ovens Model No. MGR5875QPS that are still being sold to consumers.

69.    The amount of damages sought exceeds the juridiction's limits of
all lower courts that would, otherwise, have had jurisdiction.

WHEREFORE, Plaintiffs demand on their behalf individually, and on
behalf of the class as defined herein, that a judgment be entered against Defendant as
follows:

13

1.      That an Order be entered herein certifying this action and maintaining this action as a class action, pursuant to N.Y. C.P.L.R. 901;

2.      That the Plaintiffs and class members herein be awarded compensatory and punitive damages in amounts to be determined at trial;

3.      That Plaintiffs and the class be awarded actual damages sustained as allowable under General Business Law Section 349 plus interest, costs and attorney fees;

4.      That Plaintiffs and class members be entitled to all costs in connection with and expenses incurred in this lawsuit, including reasonable attorneys fees; and

5.      Awarding to Plaintiffs and the class such other and further relief as to this Court may deem just and proper.

Dated: Mineola, New York
       December 10, 2009

Yours, etc.

Gorton & Gorton, LLP

By_____
       John T. Gorton
       *Attorneys for Plaintiff*
       1539 Franklin Avenue
       Mineola, NY 11501
       (516) 742-8466

14

To:

Department of State
(Maytag Co.)
Secretary of State
c/o Division of Corporations
One Commerce Plaza
99 Washington Avenue
Albany, NY   12231

Department of State
 (Maytag Appliances and Sales Co.)
Secretary of State
c/o Division of Corporations
One Commerce Plaza
99 Washington Avenue
Albany, NY   12231

Plesser's M.S.H., Inc.
6 E. Main Street
Babylon, New York 11702

Department of State
 (Plesser's M.S.H., Inc.)
Secretary of State
c/o Division of Corporations
One Commerce Plaza
99 Washington Avenue
Albany, NY   12231

## ATTORNEY'S VERIFICATION

I, the undersigned, am an attorney admitted to practice in the Courts of the State of New York, and say:

That I am the attorney of record, or of counsel with the attorney(s) of record, for Plaintiff.

That I have read the annexed Summons and Complaint, and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon the following: Investigations and reports.

The reason I make this affirmation instead of Plaintiff is because Plaintiff is not presently within the County wherein affirmant maintains his offices; or if Plaintiff is a corporation, no officer of plaintiff corporation is within the County wherein affirmant maintains his office.

I affirm that the foregoing statements are true under penalties of perjury.

Dated: Garden City, New York
     December 10, 2009

**JOHN T. GORTON**

801001040 151



016-26520531
$06.660
01/05/2010
US POSTAGE
Mailed from 12231

Hasler

*CERTIFIED MAIL*

RETURN RECEIPT REQUESTED

7133 5415 5563 3434 1540

Article Addressed To:

MAYTAG SALES, INC.
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NY 12207-2543

Sender:

New York State Department of State
99 Washington Avenue
Albany, NY 12231

Receipt # 20100104 0154

A. Signature (Complete on Delivery)
X

B. Received by: (Please Print Clearly)

C. Date of Delivery

D. Is delivery address different from item 1?

Delivery Address

City          State   Zip + 4 Code

Dear Sir/Madam:

C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NY 12207-2543

DOS-1249 (7/08)

DEPARTMENT OF STATE
UNIFORM COMMERCIAL CODE
ONE COMMERCE PLAZA
99 WASHINGTON AVENUE
ALBANY, NY 12231-0001