**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
GARY WOODS on behalf of himself and other
consumers of the Maytag Gas Oven Appliance
(Model MGR5875QDS) similarly situated,

      Plaintiffs,

    -against-

MAYTAG CO., MAYTAG APPLIANCES
SALES CO., and PLESSER'S M.S.H. INC.

      Defendants.
--------------------------------------------------------X

      **MEMORANDUM OF**
      **DECISION AND ORDER**
      10-CV-0559 (ADS)(WDW)

<u>**APPEARANCES:**</u>

**Parker Waichman Alonso LLP**
*Attorneys for the Plaintiff*
111 Great Neck Road
Great Neck, NY 11021
  By: Andres F. Alonso, Esq., Of Counsel

**Gorton & Gorton LLP**
*Attorneys for the Plaintiff*
1225 Franklin Avenue, Suite 475
Garden City, NY 11530
  By: John T. Gorton, Esq., Of Counsel

**Leader & Berkon LLP**
*Attorneys for Defendants Maytag Corporation and Maytag Sales, Inc.*
630 Third Avenue
New York, NY 10017
  By: James K. Leader, Esq. & Thomas K. Richards, Esq., Of Counsel

**Wheeler Trigg O'Donnell LLP**
*Attorneys for Defendants Maytag Corporation and Maytag Sales, Inc.*
1800 California Street
Suite 3600
Denver, CO 80202
  By: Michael T. Williams, Esq. & Theresa R. Wardon, Esq., Of Counsel

**Eckert Seamans Cherin & Mellott, LLC**
*Attorneys for Defendant Plesser's M.S.H., Inc.*
81 Main Street
Suite 307
White Plains, NY 10601
　　　By:　Steven R. Kramer, Esq., Of Counsel


**SPATT, District Judge**.

　　　Plaintiff Gary Woods filed this putative class action relating to an allegedly defective gas

oven against Plesser's M.S.H., Inc., as well as Maytag Company and Maytag Sales Appliance

Company (the "Maytag Defendants"). The Complaint alleges the following causes of action:

(1) Breach of express warranty; (2) Breach of the implied warranty of fitness; (3) Breach of the

implied warranty of merchantability; (4) Fraud and deceit; and (5) Violations of General

Business Law §349. Presently before the Court is the Maytag Defendants' Fed. R. Civ. P.

12(b)(6) motion to dismiss the complaint. For the reasons set forth below, the motion is granted;

however, the Court will allow Plaintiff to file an amended complaint repleading the fraud and

General Business Law claims.

## I. BACKGROUND

　　　On July 21, 2005, Plaintiff Gary Woods purchased a Maytag 30 inch gas range oven with

the model number MGR5875QDS (the "oven") from Plesser's, M.S.H. Inc. ("Plesser's"), a

department store in Babylon, New York. On or about February 29, 2008, when Plaintiff

attempted to use the oven, a malfunction occurred causing the oven to explode. Plaintiff

attributes this explosion to an alleged defect in the igniter mechanism in the oven, which

"cause[s] the gas valve to open in such a manner that the open valve causes the oven to fill with

gas but does not ignite" and instead "trigger[s] an explosion." (Compl. ¶ 19.) According to the

Plaintiff, at the time of the sale, Maytag Co. (now known as Maytag Corporation, <u>see</u> Def. Br. at

1) was "in the business of designing, manufacturing, constructing, assembling, inspecting, and selling various types of household appliances, including gas ovens" and Maytag Sales Appliance Co. (now known as Maytag Sales, Inc., see id.) was "in the business of selling household appliances including gas ovens."  (Compl. ¶¶ 10–11.)

On December 10, 2009, Plaintiff filed a complaint (the "Complaint") on behalf of a putative class comprised of individuals who purchased the Maytag 30-inch gas range convection oven model number MGR5875QDS.  The Complaint asserts a number of claims based on the Plaintiff's belief that Plesser's and the Maytag Defendants possessed and intentionally withheld knowledge of the alleged defect, and made express warranties and other misrepresentations regarding the safety of the oven in order to induce consumers to purchase the oven and spend money on repairs.

Pursuant to Rule 12(b)(6), the Maytag Defendants moved to dismiss the Complaint on March 10, 2010 on the grounds that:  (1) Plaintiff's breach of warranty claims are barred by the statute of limitations or otherwise fail to state a claim; (2) Plaintiff's fraud claims are duplicative of the warranty claims and fail to state a claim with the requisite particularity; and (3) The Plaintiff fails to state a claim under New York General Business Law §349.  The Court addresses these arguments in turn below.

## II.  DISCUSSION

### A. Legal Standard

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule

12(b)(6) is guided by two principles.  Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  Id. (quoting Iqbal, 129 S. Ct. at 1949).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief."  Iqbal, 129 S. Ct. at 1950.

## B.  As to the Breach of Express and Implied Warranty Causes of Action

The Plaintiff alleges three breaches by the Maytag Defendants:  breach of express warranty, breach of the implied warranty of fitness, and breach of the implied warranty of merchantability.  The Maytag Defendants contend, and the Court agrees, that all of the warranty claims are time-barred by the statute of limitations.

The applicable statute of limitations for a breach of warranty, express or implied, on a contract of sale for a good is four years.  N.Y. U.C.C. 2-725.  Under New York law, a cause of action for breach of warranty begins to accrue upon the date of delivery.  See Fernandez v. Cent. Mine Equip. Co., 670 F. Supp. 2d 178, 189 (E.D.N.Y. 2009).  Here, the parties do not dispute that the date of delivery is July 21, 2005 when the Plaintiff purchased the oven.  It is also undisputed that, absent any applicable exception, the statute of limitations expired on the breach

of warranty claims on or about July 21, 2009, more than four months before the complaint in this action was filed on December 10, 2009.

In his opposition to the motion to dismiss, the Plaintiff asserts that it is improper to dismiss the breach of warranty claims on statute of limitations grounds because "there are disputed facts regarding when Plaintiffs could or should have known that their ovens were potentially defective . . . [and] whether Maytag concealed the danger of these ovens." (Pl. Br. at 6.) The Court is aware of two exceptions to the statute of limitations that arguably could apply. First, there is an exception within the New York Uniform Commercial Code for warranties that explicitly guarantee future performance. Second, under certain circumstances where, as here, a plaintiff alleges fraudulent concealment, courts have applied equitable estoppel to toll the statute of limitations if the fraud prevented a plaintiff from filing a timely action. The Court will address the applicability of these exceptions to the Plaintiff's claims in turn.

### 1. Future Performance

The first issue is whether Plaintiff's express and/or implied warranty claims fall within the statutory exception to the statute of limitations for warranties relating to future performance. Pursuant to N.Y. U.C.C. 2-725(2), when a warranty guarantees future performance "the cause of action accrues when the breach is or should have been discovered." N.Y. U.C.C. 2-725(2). As an initial matter, this exception does not apply to the Plaintiff's causes of action for breach of the implied warranty of fitness and the implied warranty of merchantability because "[t]he [future performance] exception speaks to express warranties not implied warranties." Orlando v. Novurania of America, Inc., 162 F. Supp. 2d 220, 224 (S.D.N.Y. 2001); Momentive Performance Materials USA, Inc. v. AstroCosmos Metallurgical, Inc., 659 F. Supp. 2d 332, 347–48 (N.D.N.Y. 2009) ("Since, 'an implied warranty by definition embodies no 'explicit'

guarantees ... [a] plaintiff's ... implied warranty cause[ ] of action necessarily accrue[s] as a matter of law at about the time of tender of delivery ....") (quoting <u>Zielinski v. Alfa-Laval, Inc.</u>, No. 86-CV-296E, 1989 WL 29482, at *3 (W.D.N.Y. March 27, 1989)).

Furthermore, a court will only apply this exception to a breach of express warranty claim when "the warranty *explicitly* extend[s] to future performance." <u>Rosen v. Spanierman</u>, 894 F.2d 28, 31 (2d Cir. 1990) (emphasis in original). "[T]he term 'explicit' has been explained as plain language which is distinctly stated, clear and unequivocal to the point that there is no doubt as to its meaning." <u>Port Auth. of N.Y. & N.J. v. Allied Corp.</u>, 914 F. Supp. 960, 962 (S.D.N.Y.1995) (citation and internal quotation omitted). In addition, "[w]arranties to repair or replace the product in the event that it fails to perform, without any promise of performance, do not constitute warranties of future performance." <u>Rochester-Genesee Reg'l Trans. Auth. v. Cummins Inc.</u>, No. 09-CV-6370, 2010 WL 2998768, at *3–4 (W.D.N.Y. July 28, 2010) (citing, <u>Rosen</u>, 894 F.2d at 31); <u>see</u> <u>also</u> <u>Ontario v. Zallea Sys., Inc.</u>, 569 F. Supp. 1261, 1266 (D. Del. 1983) (noting that the key distinction between a repair or replace warranty and one for future performance is that a "repair or replacement warranty merely provides a remedy if the product becomes defective, while a warranty for future performance guarantees the performance of the product itself for a stated period of time").

Here, the Court looks to the language included in the warranty attached as Exhibit 1 to the Motion to Dismiss to determine whether the Maytag Defendants explicitly warranted future performance. Although the Plaintiff did not include a copy of the limited warranty at issue in the Complaint, because the warranty is directly relied upon by the Plaintiff in support of the Complaint, this Court may consider the warranty without converting the motion to dismiss into one for summary judgment. <u>See, e.g.</u>, <u>Holoweeki v. Federal Exp. Corp.</u>, 440 F.3d 558, 565–66

(2d Cir. 2006).  The Plaintiff did not contest or dispute that the warranty attached to the Maytag

Defendants' motion was the full and correct copy of the warranty included with the oven.  The

relevant language of the warranty is as follows:

> Full One Year Warranty – Parts and Labor
>
> For **one (1) year** from the original retail purchase date, any part
> which fails in normal home use will be repaired or replaced free of
> charge.
>
> . . .
>
> *The specific warranties expressed above are the **ONLY** warranties*
> *provided by the manufacturer.  This warranty gives you specific*
> *legal rights, and you may also have other rights that vary from*
> *state to state.*

(Def. Br., Ex. 1 (emphasis in original).)  The Court finds no ambiguity, nor does the Plaintiff

point to any ambiguity, that would indicate that the warranty is anything other than a warranty

for repair or replacement and therefore does not guarantee future performance.  Furthermore,

given the declaration in the written warranty stating that "[t]he specific warranties expressed

above are the **ONLY** warranties provided by the manufacturer," the Court is limited in its review

to the written warranty and the Plaintiff has not indicated that there are any additional facts he

could present that would allow him to avail himself of the N.Y. U.C.C. 2-725(2) future

performance exception.

### 2.  Equitable Estoppel

The second exception potentially available to the Plaintiff is the equitable remedy of

tolling the statute of limitations where the "plaintiff was induced by fraud, misrepresentations or

deception to refrain from filing a timely action."  Simcuski v. Saeli, 44 N.Y.2d 442, 406

N.Y.S.2d 259, 377 N.E.2d 713 (1978).  In order for the doctrine of equitable estoppel to apply, a

plaintiff must "articulate ... acts by defendant[ ] that prevented [plaintiff] from timely

commencing suit . . . ."  Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007).  Evidence that the

plaintiff "was the victim of fraud, misrepresentations, or deception" alone is insufficient unless the plaintiff demonstrates that "those circumstances prevented him from timely filing his complaint." Id. (internal quotations omitted).

Here, equitable estoppel is unavailable regardless of whether the Plaintiff can state a valid fraudulent concealment claim because "[t]he doctrine of equitable estoppel will not apply if the plaintiff possesses 'timely knowledge' sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations." Harris v. Wilmorite Corp., 266 A.D.2d 902, 902, 697 N.Y.S.2d 439, 440 (4th Dep't 1999) (quoting McIvor v. Di Benedetto, 121 A.D.2d 519, 520, 503 N.Y.S.2d 836, 837 (2d Dep't 1986)); Abbas, 480 F.3d at 642.

As the Plaintiff states in the Complaint, he learned of the alleged defect on or about February 29, 2008, when the malfunction and explosion occurred—nearly two years before he commenced this action and more than a year before the limitations period expired. In the Court's view, the Plaintiff had a sufficient period of time to investigate and commence an action based on the warranty prior to the expiration of the applicable statute of limitations. Thus, the doctrine of equitable estoppel is unavailable to resuscitate the breach of warranty claims.

Accordingly, the Plaintiff's claims for breach of express warranty, breach of the implied warranty of fitness, and breach of the implied warranty of merchantability claims are dismissed with prejudice as time-barred by the statute of limitations. Also, the Plaintiff has not provided the Court with any indication that additional facts exist that would not render leave to replead these claims to be futile.

**C. Fraud & Deceit**

The Plaintiff's fourth cause of action is for fraud and deceit. Although the Plaintiff does not specifically define the claim, the allegations are consistent with claims of fraudulent inducement based on misrepresentations and fraudulent concealment. The Maytag Defendants assert that the Court should dismiss the fraud cause of action because the Plaintiff fails to state the claim with the requisite specificity and because it is duplicative of the warranty claims. As discussed below, the Court dismisses, without prejudice, the Plaintiff's fraud claim for failure to meet the heightened pleading standard of Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)"). However, the Court also finds that it would not be futile to permit Plaintiff to replead because a properly pled fraud claim would not be duplicative of the warranty claims.

**1. Whether Plaintiff Adequately Pleads a Claim for Fraudulent Inducement and Fraudulent Concealment**

**a. Legal Standard**

In order to state a fraudulent inducement claim under New York law, the Plaintiff must establish that: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Wall v. CSX Transp., Inc., 471 F.3d 410, 415–16 (2d Cir. 2006) (citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996)).

A fraudulent concealment claim shares these same elements with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information. See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 213 (S.D.N.Y. 2007). It is well-settled that a complaint alleging fraud under New York law must comply with the heightened pleading standard under Rule 9(b) which requires that "the

circumstances constituting fraud ... must be stated with particularity." See Fed.R.Civ.P. 9(b); see also Ganino v. Citizens Util. Co., 228 F.3d 154, 168 (2d Cir. 2000); Manhattan Motorcars, 244 F.R.D. at 213. The particularity requirement of Rule 9(b) demands that a plaintiff "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996).

In addition, although Rule 9(b) allows that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally," it should not be "'mistaken for license to base claims of fraud on speculation and conclusory allegations.'" Shields v. Citytrust Bankcorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (citing O'Brien v. Nat'l Prop. Analysts Partner, 936 F.2d 674, 676 (2d Cir. 1991)). Therefore, when pleading scienter, plaintiffs must allege facts that give rise to a strong inference of fraudulent intent. As set forth below, the Plaintiff failed to plead the alleged misrepresentations and omissions he relied upon with the requisite particularity to support a claim for fraudulent inducement. Furthermore, because the Court is granting the Plaintiff the opportunity to replead, although the Court can properly dismiss the fraud claim based solely on the inadequately pled misrepresentations, the discussion below also will address the Plaintiff's failure to plead scienter.

### b. Misrepresentations and Omissions

In the Complaint, the Plaintiff alleges that he was induced to purchase the oven because "upon information and belief . . . defendant, Maytag . . . expressly warranted to the general public and to the Plaintiff, through the [I]nternet, by advertisement literature and other means that consumers could safely use the product for the purpose of cooking . . . ." (Compl. ¶ 39.)

As an initial matter, the Plaintiff pleads the alleged misrepresentations on "information and belief," however, "[a]llegations of fraud cannot ordinarily be based 'upon information and belief,' except as to 'matters peculiarly within the opposing party's knowledge.'" Luce v. Edelstein, 802 F.2d 49, 54 n. 1 (2d Cir. 1986) (citation omitted). By alleging that he purchased the oven based on advertisements and information disseminated through the Internet and other literature, the Plaintiff has conceded that this information was publicly accessible. Therefore the Plaintiff's allegations regarding the misrepresentations that are made upon information and belief cannot satisfy Rule 9(b)'s particularity requirement. See Weaver v. Chrysler Corp., 172 F.R.D. 96, 101 (S.D.N.Y. 1997) (holding that the Plaintiff did not meet the exception to Rule 9(b)'s particularity requirement permitting pleading on information and belief when the Plaintiff alleged in the Complaint that they relied on the manufacturer's advertisements and other publicly disseminated information as to the safety and quality of its vehicles).

Here, it is clear that the vague allegations relating to the misrepresentations and omissions clearly fall short of meeting Rule 9(b)'s particularity requirements. The allegations in the Complaint fail to specify the actual locations of the advertisements or literature where the Plaintiff purportedly viewed the alleged statements, the content of the statements, and when the statements were made. Identification of these misrepresentations is also relevant to providing context to the alleged omissions as required under Rule 9(b). See Weaver, 172 F.R.D at 102 ("To identify the context in which the omission here was made and the manner in which it misled Plaintiff, Plaintiff would have to specifically identify the representations, advertisements, and promotional materials that omitted the reference to the defective child seats, misled him, and upon which he relied."). Absent the particularized detail required by Rule 9(b), Plaintiff's alleged misrepresentations and omissions are insufficient to state a claim for fraud. See, e.g.,

Ben Hur Moving & Storage, Inc. v. Better Bus. Bureau, No. 08 Civ. 6572, 2008 WL 4702458, at *4 (S.D.N.Y. Oct. 3, 2008) ("The plaintiff's complaint fails [the Rule 9(b)] standard because the allegations in the complaint do not specify the time, place, [or] speaker ... of the misrepresentations that were allegedly made through the mails and over the Internet."); Armored Group, LLC v. Homeland Security Strategies, No. 07-CV-9694, 2009 WL 1110783, at *1 (S.D.N.Y. 2009)(dismissing a fraudulent inducement claim where plaintiff "does not identify the location where the misrepresentations were made . . . does not provide exact dates for the statements . . . and fails to sufficiently identify 'who' the speaker is concerning each statement") (internal quotations and citations omitted).

Finally, Plaintiff's additional allegations that "[a]t the time of sale and as a part thereof . . . Defendants warranted certain safety features" and that he relied on "the professed integrity of Defendant Maytag" (Compl. ¶¶ 40–41) in purchasing the oven cannot support a fraud claim because they do not identify any statements made by the Maytag Defendants.  See Watts v. Jackson Hewitt Tax Serv., Inc., 579 F. Supp. 2d 334, 353 (E.D.N.Y. 2008) (stating that the Rule 9(b) particularity requirement "is not satisfied where the acts or omissions of the 'defendants are clumped together' through unspecified allegations") (citation omitted); Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 248 (S.D.N.Y. 2006).

### c. Scienter

In addition to failing to plead any misrepresentations or omissions with particularity, the Complaint also fails to adequately plead scienter.  The Plaintiff's allegations in this regard lack particularized facts to support an inference that the defendants acted fraudulently.  A "strong inference" of fraud may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bankcorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Although the "strong inference" requirement does not require a Plaintiff to "allege the defendant's requisite intent with any great specificity," EED Holdings v. Palmer Johnson Acquisition Corp., 387 F. Supp. 2d 265, 280 (S.D.N.Y. 2004), basing allegations of knowledge and fraudulent intent "upon information and belief" without anything more will not satisfy the pleading requirements under Rule 9(b). See Premium Mortgage Corp. v. Equifax, Inc, 583 F.3d 103, 108 (2d Cir. 2009) ("Allegations that are conclusory or unsupported by factual assertions are insufficient.") (citation omitted).

Consequently, although matters peculiarly within a defendant's knowledge may be pled "on information and belief," these matters may not be pled "lacking any detail at all." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 179 (2d Cir. 2004); Shields, 25 F.3d at 1129 (holding that allegations of scienter lack the requisite particularity when plaintiff simply "couple['s] a factual statement with a conclusory allegation of fraudulent intent"). The Plaintiff must be able to at least allege facts that "constitute strong circumstantial evidence of conscious misbehavior or recklessness." EED Holdings, 387 F. Supp. 2d at 280. Even where information indicating fraud is solely within the possession of the Defendant the pleading party must still "provide a statement of facts upon which the belief is founded." See Campaniello Imps., Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 664 (2d Cir. 1997) (citing Luce, 802 F.2d at 54 n. 1); Watts v. Jackson Hewitt Tax Service Inc., 579 F. Supp. 2d 334, 351 (E.D.N.Y. 2008) ("When pleading on information and belief is permitted, the allegations must be accompanied by a statement of facts upon which the belief is founded.").

Here, the Plaintiff first alleges that "[u]pon information and belief, these defects are reflected in data and reports maintained by Defendant and other reports, technical service

bulletins, documents and memoranda within the possession of Defendant" (Compl. ¶ 20.)

However, the Plaintiff does not provide any details about these documents, most importantly

when they were created and therefore when the Maytag Defendants allegedly become aware of a

defect. See Weaver v. Chrysler Corp., 172 F.R.D. 96, 102 (S.D.N.Y. 1997) (holding that the

Plaintiff's allegation that the defendant manufacturer was in a "superior position to know the true

facts of the hidden defect based on, inter alia design and test data and field reports" did not give

rise to a "strong inference of fraudulent intent" because the Plaintiff failed to "identify the data

and field reports and their contents and to allege any other factual basis"). The Plaintiff also

alleges that the defendants had knowledge of the defect "based upon the data available to it and,

upon information and belief the countless instances in which these gas ovens were returned for

repair at Maytag dealers and service centers because of the design defects of which Defendant

had knowledge" (Compl. ¶ 36.) Although product returns might give rise to a strong inference

that the Maytag Defendants were aware of the defect, the Plaintiff's allegations are void of any

detail to support such an inference such as how many ovens were returned, when they were

returned, or whether the returns related to the same defect.

The decision in Watts v. Jackson Hewitt Tax Serv. Inc., 579 F. Supp. 2d 334, 351

(E.D.N.Y. 2008) provides an illustrative example of where a court found a strong inference of

fraudulent intent based on allegations pled on "information and belief." In Watts, the Plaintiff

provided the basis for their information and accompanied "key factual assertions" in the

complaint with statements of fact. For example, the court noted that the "allegation that

defendants advertised misleading prices is supported by the presence of minimum fee fliers in

defendants' offices" and the Defendants confirmed the existence of the fliers by including them

in their motions to dismiss. Id. Comparatively, the Plaintiff in the instant action does not state

where he saw, or how he received, the advertisements and literature he allegedly relied upon. In addition, in <u>Watts</u>, the plaintiffs provided context to the alleged omissions despite the fact that the majority of the information was uniquely within the defendant's possession. <u>Watts</u>, 579 F. Supp. 2d at 351. Whereas counsel in <u>Watts</u> compared the itemized charges on different plaintiffs bills and actual documents containing the alleged misrepresentation, the Plaintiff in the instant action cites only one example of an oven malfunctioning to support the contention that the oven contained a design defect and presumes, without anything more, that the Maytag Defendants knew about it.

The lack of specificity in what would otherwise be the Plaintiff's factual support for his allegations prevents him from raising a "strong inference" of fraudulent intent sufficient to satisfy Rule 9(b). <u>See</u> <u>San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos.</u>, 75 F.3d 801, 813 (2d Cir. 1996) ("Since plaintiffs have not alleged circumstances indicating that any of the statements identified in the Complaint were false, the plaintiffs have failed to adequately plead fraud.") (citing <u>Acito v. IMCERA Group, Inc.</u>, 47 F.3d 47, 53 (2d Cir. 1995)); <u>Campaniello Imps.</u>, 117 F.3d at 664 (2d Cir. 1997) ("Even if Gidatex's financial status was peculiarly within appellees' knowledge, appellants have failed to provide a statement of facts upon which the belief is founded. The unsupported nature of the allegation weighs against finding it indicative of fraudulent intent."); <u>Meserole v. Sony Corp. of America, Inc.</u>, No. 08-CV-8987, 2009 WL 1403933, at *4 (S.D.N.Y. May 19, 2009) ("This claim is dismissed because, and as explained in more detail, *infra,* Plaintiffs have not put forth any particularized allegations evincing that Sony knew about the alleged defect prior to distributing the products to Plaintiffs. Rather, the Complaint's allegations in this respect are conclusory and devoid of specific factual averments.").

**2. Whether the Fraud and Warranty Claims are Duplicative**

The Maytag Defendants also move this Court to dismiss the fraud claim as duplicative of the breach of warranty claims, arguing that "[t]his is a warranty case and nothing more." (Def. Br. at 14.) If true, then it would be futile to permit the Plaintiff to replead the fraud claim. New York law generally requires that a fraud claim raised in the context of a contract dispute be "sufficiently distinct from the breach of contract claim." Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (quoting Papa's-June Music, Inc. v. McLean, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996)). A fraud claim generally will not lie if it arises "out of the same facts as plaintiff's breach of contract claim." Telecom Int'l. Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001). However, parallel fraud and contract claims may be maintained if the plaintiff: "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, Inc., 98 F.3d at 20 (internal citations omitted); see Great Earth Intern. Franchising Corp. v. Milks Dev., 311 F. Supp. 2d 419, 425 (S.D.N.Y. 2004) (noting that a fraud claim and a breach of contract claim can coexist where the plaintiff makes one of three showings discussed in Bridgestone/Firestone).

As discussed below, the Court finds that, if properly pled, the fraud allegations in the Complaint indicate that Plaintiff can potentially demonstrate all three of the circumstances under which courts permit parallel fraud and breach of warranty claims.

**a. Independent Duty**

The Maytag Defendants contend that the Plaintiff cannot maintain a separate cause of action for fraudulent concealment because the Plaintiff's statement in the Complaint that

Defendants had a "duty to disclose" (Compl. ¶ 58) does not sufficiently identify a duty distinct from its duty to perform pursuant to its warranty. (Def. Br. at 15.) To state a claim for fraudulent concealment "plaintiff must allege that the defendant had a duty to disclose the concealed fact and that it failed to do so." ADL, LLC v. Tirakian, No. 06-CV-5076, 2010 WL 3925131, at *15 (E.D.N.Y. 2010); see also Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 181 (2d Cir. 2007); TVT Records v. The Island Def Jam Music Group, 412 F.3d 82, 90–91 (2d Cir. 2005). New York recognizes a duty to disclose by a party to a business transaction in three situations: "first, where the party has made a partial or ambiguous statement . . . second, when the parties stand in a fiduciary or confidential relationship with each other . . . and third, 'where one party possesses superior knowledge, not readily available to the other, and know that the other is acting on the basis of mistaken knowledge.'" Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

As an initial matter "once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth." Id. Thus, if upon repleading the Plaintiff adequately identifies, with the requisite specificity, statements by the Maytag Defendants as to the safety of the ovens, a duty to speak based on "partial or ambiguous statements" may exist. However, even if the Plaintiff is unable to identify such statements, Plaintiff has pled sufficient facts to support a claim that the Maytag Defendants had a duty to disclose based on their "special knowledge."

"[W]hen dealing with a claim of fraud based on material omissions, it is settled that a duty to disclose arises only when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." United States v. Szur, 289 F.3d 200, 211 (2d Cir. 2002). "Under [the special facts] doctrine, a duty to disclose arises where one party's superior knowledge of essential facts renders a

transaction without disclosure inherently unfair." P.T. Bank Central Asia v. ABN AMRO Bank N.V., 301 A.D.2d 373, 378, 754 N.Y.S.2d 245, 252 (1st Dep't 2003).

Under New York law this duty to disclose is distinct from a contractual duty because "it is a principle of long standing that 'one who sells an article knowing it to be dangerous by reason of concealed defects is guilty of a wrong, without regard to the contract, and is liable in damages to any person, including one not in privity of contract with him, who suffers an injury by reason of his willful and fraudulent deceit and concealment.'" Young v. RobertShaw Controls Co., 104 A.D.2d 84, 87, 481 N.Y.S.2d 891, 894 (3d Dep't 1984) (citing Kuelling v. Lean Mfg. Co., 183 N.Y. 78, 89, 75 N.E. 1098, 1098 (1905)) (internal citations omitted); Strasser v. Prudential Secs., Inc., 218 A.D.2d 526, 527, 630 N.Y.S.2d 80, 82 (1st Dep't 1995) ("There is a duty to disclose, which is not limited to parties in privity of contract when nondisclosure would lead the person to whom it was or should have been made to forego action that might otherwise have been taken for the protection of that person") (citation and internal quotation omitted); Tirakian, 2010 WL 3925131, at *16 (holding that privity of contract is not necessarily a requirement for a duty to disclose to arise in a fraudulent concealment claim).

Here, the Maytag Defendants are incorrect in stating that the Complaint includes only a vague statement that Defendant had a "duty to disclose." (Def. Br. at 15.) In support of the Maytag Defendant's duty to disclose, the Plaintiff alleges, among other statements, the following:

> "Further, upon information and belief, the ovens in question possessed hidden and concealed defects as to the igniter mechanism which were known to Defendant. Upon information and belief, these defects are reflected in data and reports maintained by Defendant and other reports, technical service bulletins, documents, and memoranda within the possession of Defendant." (Compl. ¶ 20.)

> "Defendant was in a superior position to know the existence of the
> facts pertaining to the hidden defects in the gas oven and the
> inherent safety risks and other consequences, based upon the data
> available to it and, upon information and belief, the countless
> instances in which these gas ovens were returned for repair to
> Maytag dealers and service centers because of the design defects of
> which Defendant had knowledge." (Compl. ¶ 36.)

Through these allegations, the Plaintiff has adequately pled facts that, if accepted as true,

establish that the Maytag Defendants had knowledge of a specifically identified defect; that such

information was exclusively within the control of the Maytag Defendants and not available to the

Plaintiff; and that the Maytag Defendants concealed this defect because they knew Plaintiff

would not otherwise purchase the oven. Thus, if Plaintiff repleads the fraud claim with the

requisite particularity discussed *supra*, he will have adequately alleged an independent legal duty

to disclose so that a fraudulent concealment claim can exist parallel to a breach of warranty

claim. See Sofi Classics S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 244 (S.D.N.Y. 2006)

(holding that fraud and breach of contract claims were not duplicative where Plaintiff pled that

Defendants had a duty to disclose based on defendant's superior knowledge, that that was not

readily available to the plaintiff, and that Defendants knew Plaintiffs were operating under a

mistaken impression); City of New York v. Lead Indus. Ass'n, Inc., 190 A.D. 2d 173, 177, 597

N.Y.S.2d 698, 700 (1st Dept 1993) (holding that a cause of action for fraud could be maintained

against manufacturers of lead-based paint who advertised in such a way to "have led the public

to believe in the safety of a product that defendants knew to be a health hazard").

### b. Collateral or Extraneous

The Court also finds that the alleged misrepresentations and omissions the Plaintiff

claims he relied upon when purchasing the oven, even if not properly pled, were collateral or

extraneous to the warranty. "New York distinguishes between a promissory statement of what

will be done in the future that gives rise only to a breach of contract cause of action and a

misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007). Because a warranty is considered to be a statement of present fact and not a promise of performance, "a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim." First Bank of Americas v. Motor Car Funding, Inc., 257 A.D.2d 287, 292, 690 N.Y.S.2d 17, 21 (1st Dep't 1999).

This rationale is applicable to claims, such as those in the present case, of fraudulent inducement by misrepresentation and concealment. See Merrill Lynch, 500 F.3d at 184 ("That the alleged misrepresentations would represent, if proven, a breach of the contractual warranties as well does not alter the result. A plaintiff may elect to sue in fraud on the basis of misrepresentations that breach express warranties."); Rosen v. Spainerman, 894 F.2d 28, 35 (2d Cir. 1990) ("A claim for fraudulent inducement is separate and distinct from a claim for breach of contract under New York law, and a plaintiff may plead both causes of action."); Koch v. Greenberg, No. 07-CV-9600, 2008 WL 4778813, at *4 (S.D.N.Y. Oct. 31, 2008) ("New York courts have upheld claims of fraud in situations in which a plaintiff purchased an item because the defendant concealed material information, that, if known by the plaintiff, would have affected his decision to purchase."); Vitolo v. Mentor H/S, Inc., 426 F. Supp. 2d 28, 36 (E.D.N.Y. 2006) ("Where . . . a party warrants and represents a present existing fact, there simply is no reason why it should not have a remedy in contract for breach of warranty, and a remedy in tort for deliberate, fraudulent misrepresentation, assuming the facts otherwise justify such relief.") (citation omitted); FSP, Inc. v. Societe Generale, 02-CV-4786, 2005 WL 475986, at *9 (S.D.N.Y. Feb. 28, 2005) ("An independent claim sounding in fraud may be maintained where a party falsely warrants and represents a present existing fact in a contract thereby

inducing the complainant into entering the agreement."); <u>EED Holdings v. Palmer Johnson</u>

<u>Acquisition Corp.</u>, 387 F. Supp. 2d 265, 279 (S.D.N.Y. 2004) (holding that separate actions for

breach of contract and fraud can be maintained where statements made to induce a contract are

"collateral to the actual terms of the contract"); <u>B&F Product Development, Inc. v. Fasst</u>

<u>Products LLC</u>, No. 13303/08, 2009 WL 81145, at *5 (N.Y. Sup. Ct. Jan. 13, 2009) ("Where a

plaintiff alleges misrepresentations of present facts, rather than merely of future intent, that were

collateral to the contract and which induced the allegedly defrauded party to enter into the

contract, a fraudulent inducement claim is not duplicative of a breach of contract claim.").

 The Maytag Defendants' reliance on <u>Suzy Phillips Originals, Inc. v. Coville, Inc.</u>, 939 F.

Supp. 1012 (E.D.N.Y. 1996) and the related line of cases dismissing fraud claims as duplicative

of breach of contract claims is misplaced.  Whether fraudulent inducement claims are duplicative

of breach of contract claims hinges on whether the alleged misrepresentations were made prior to

the formation of the contract, and whether the misrepresentations were explicitly included in the

contract between the parties.  <u>Compare</u> <u>Triangle Underwriters, Inc. v. Honeywell, Inc.</u>, 604 F.2d

737, 747 (2d Cir. 1979) (holding that fraud is considered "extraneous to the contract" when the

alleged fraud "consist[s] of independent false representations, made before there ever was a

contract between the parties, which [leads a Plaintiff] to enter into it."); <u>B&F Product</u>

<u>Development</u>, 2009 WL 81145, at *5 ("The fraud allegedly perpetrated by defendants occurred

prior to the parties' entry into the Agreement, and arose from circumstances separate and distinct

from plaintiff's breach of contract claim.") <u>with</u> <u>Four Finger Art Factory, Inc. v. Dinicola</u>, 99-

CV-1259, 2000 WL 145466, at *5 (S.D.N.Y. Feb. 9, 2000) ("[P]laintiff argues that the alleged

false representations which induced it to enter the contract are those which are contained in . . .

the contract" and thus "the allegation as to the false warranty is therefore plainly not collateral

and it does not support a claim for fraud"); <u>Suzy Phillips</u>, 939 F. Supp. at 1016 (holding that a fraud claim relating to an undisclosed defect was duplicative of a breach of a warranty of merchantability claim because it did not "concern representations that are collateral or extraneous to the terms of the parties' agreement"); <u>Bell Sports, Inc. v. Sys. Software Assocs., Inc.</u>, 45 F. Supp. 2d 220, 228 (E.D.N.Y. 1999) (holding that the alleged misrepresentations were not collateral to the terms of the contracts plaintiffs contended they were fraudulently induced to enter into, but rather "the representations were the very essence of those various agreements").

Here, the Plaintiff alleges that the Maytag Defendants "in order to promote and induce the purchase of its product, expressly warranted to the general public and to the Plaintiff, through the [I]nternet, by advertisement literature and other means that consumers could safely use the product for the purpose of cooking" and that "Plaintiffs and the class purchased or obtained the ovens in reliance" on these warranties. (Compl. ¶¶ 39 & 41.) By categorizing the alleged misrepresentations as express warranties, the Maytag Defendants assume the statements cannot be "collateral or extraneous to what Maytag allegedly warranted regarding the performance of the Ovens." (Def. Br. at 15.) However, as noted above, the written warranty explicitly limited the manufacturers express warranties to what was contained in the document. Thus, despite being labeled "express warranties," the Court finds that the alleged misrepresentations outside the written warranty that Plaintiff contends were made "in order to promote and induce the purchase of its product" are collateral and extraneous to the written warranty that serves as the basis for the breach of warranty claim. <u>See, e.g.</u>, <u>Koch</u>, 2008 WL 4778813, at *4 (holding that plaintiff stated a claim for fraud and for breach of contract where defendant was silent about the results of wine inspections indicating a defect and affirmatively misrepresented the authenticity of certain wines in order to induce the plaintiff's purchase).

In addition, if true, the Plaintiff's allegation that the Maytag Defendants concealed the defect in order to induce the purchase of the ovens is also considered a material misrepresentation collateral to the contract and is sufficient to maintain a separate action for fraud.  See, e.g., TVT Records v. The Island Def Jam Music Group, 412 F.3d 82 (2d Cir. 2005) (observing that courts have allowed fraud damages in cases in which a seller concealed a material defect in the product it sold); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 152 (2d Cir. 1993) (holding that where a securities broker failed to inform a buyer that securities offered for sale were encumbered, and where the broker knew that such information was unknown to the buyer and would likely have caused him not to purchase the securities, the seller could be liable for fraudulent concealment).

### c. Special Damages

Finally, the Maytag Defendants assert that Plaintiff cannot maintain an independent fraud claim because they cannot show special damages that are not available in a warranty action. Specifically, the Maytag Defendants claim that Plaintiff fails to state a claim for punitive damages, and that "no special damages that are actually recoverable are alleged aside from what Plaintiff could recover from his warranty claims."  (Def. Mem. At 16).  Again, the Court disagrees.

Although "punitive damages are not available in the ordinary fraud and deceit case" they are available where "the defendant acts with evil and reprehensible motives."  Orlando v. Novurania of America, Inc., 162 F. Supp. 2d 220, 226 (S.D.N.Y. 2001).  Furthermore, "where the parties are in a contractual relationship, courts have allowed punitive damages for fraud only where the additional damages are 'necessary to vindicate a public right.'"  Mayline Enterprises v. Milea Truck Sales Corp., 641 F. Supp. 2d 304, 311 (S.D.N.Y. 2009) (citing New York

University v. Cont'l Ins. Co., 87 N.Y. 2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 767 (1995)).

Thus, to state a claim for punitive damages in a fraud and deceit action, "a defendant must

exhibit fraud 'aimed at the public generally, evincing a 'high degree of moral turpitude,' and

demonstrating 'such wanton dishonesty as to [sic] imply a criminal indifference to civil

obligations." Koch v. Greenberg, No. 07-CV-9600, 2008 WL 4778813, at *5 (S.D.N.Y. 2008)

(quoting Walker v. Sheldon, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961)).

In Walker, the New York Court of Appeals held that the egregious behavior necessary to

obtain an award of punitive damages in a fraud and deceit case is where a defendant

"deliberately and cooly engage[s] in a far-flung fraudulent scheme, systematically conducted for

profit." Walker, 10 N.Y.2d at 406, 223 N.Y.S.2d at 492. Here, the Plaintiff contends that the

fraudulent misrepresentations were made to the "general public . . . through the [I]nternet, by

advertisement literature and other means . . ." (Compl. ¶ 39) and that

> Defendant(s) was aware of this defective condition and was fully
> capable of taking proper remedial action to correct it, but
> wrongfully failed and refused to do so in order to save itself the
> substantial cost and expense involved . . . and at the inexcusable
> and unjustifiable risk of exposing Plaintiffs and the class to serious
> and perilous safety hazards and severe bodily harm. (Compl. ¶18.)

The Court finds that the type of scheme described by the Plaintiff in the Complaint is the kind of

egregious business behavior aimed at the general public that may permit an award of punitive

damages. Thus, assuming these facts as true, the Plaintiff has pled facts that may lay a

foundation for punitive damages potentially recoverable in a properly pled fraud claim, which is

separate and distinct from the damages available for breach of warranty.

## D.  General Business Law Section 349

The New York Consumer Protection Act codified at Section 349 of the New York

General Business Law declares that "[d]eceptive acts or practices in the conduct of any business,

trade or commerce or in the furnishing of any service" in New York are unlawful. N.Y. Gen.

Bus. § 349(a) ("GBL § 349").  The Act provides a cause of action to "any person who has been

injured by reason of any violation of this section" and provides for recovery of actual damages.

N.Y. Gen. Bus. Law § 349(h); see Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris U.S.A.

Inc., 3 N.Y.3d 200, 205, 785 N.Y.S.2d 399, 818 N.E.2d 1140, 1143 (2004).  "To make out a

prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's

deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3)

the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir.

2000) (per curiam) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,

85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (N.Y.1995)). "[A]n action under §

349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P.,

but need only meet the bare-bones notice-pleading requirements of Rule 8(a) . . . ." Pelman ex

rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).

Thus, a Plaintiff failing to adequately plead a fraud claim does not necessarily also fail to

plead a claim under GBL § 349.  See, e.g., Ng v. HSBC Mortg. Corp., NO. 07-CV-5434, 2010

WL 889256, at *14 (E.D.N.Y. March 10, 2010) ("Deceptive conduct that does not rise to the

level of actionable fraud, may nevertheless form the basis of a claim under New York's

Deceptive Practices Act, which was created to protect consumers from conduct that might not be

fraudulent as a matter of law, and also relaxes the heightened standards required for a fraud

claim."); Williams v. Aries Financial, LLC, No. 09-CV-1816, 2009 WL 3851675, at *10

(E.D.N.Y. Nov. 18, 2009) (granting the motion to dismiss the fraud claim for failure to plead

with particularity under Rule 9(b), but denying the motion to dismiss the Consumer Protection

Act claim).

However, "[c]onclusory allegations have been held to be insufficient to state a claim under Section 349." <u>Moses v. Citicorp Mortg., Inc.</u>, 982 F. Supp. 897, 903 (E.D.N.Y. 1997); <u>Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.</u>, 834 F. Supp. 605, 610 (E.D.N.Y. 1993) (granting Defendant's motion to dismiss where Plaintiff's claim under the Consumer Protection Act was pled upon information and belief, lacked specificity, and alleged mere conclusions).

In the present case, there is no dispute that Plaintiff has adequately alleged that he was injured by the alleged defect, which is sufficient to plead the required element of injury. There also can be no dispute that, if accepted as true, Plaintiff is alleging a deceptive business practice that is consumer-oriented and aimed at the public. <u>See</u> <u>Vitolo v. Mentor H/S, Inc.</u>, 426 F. Supp. 2d 28, 34 (E.D.N.Y. 2006) ("To show consumer-oriented conduct, Plaintiff would have to 'demonstrate that the acts or practices [complained of] have a broader impact on consumers at large . . .'") (citing <u>Oswego</u>, 85 N.Y.2d at 25, 623 N.Y.S.2d at 529).

However, Plaintiff's claim under GBL § 349 must ultimately be dismissed for failure to adequately plead a materially misleading "deceptive act or practice." <u>Benjaminov v. Republic Ins. Group</u>, 241 A.D.2d 473, 474, 660 N.Y.S.2d 148, 149 (2d Dep't 1997) ("Plaintiff may not maintain a cause of action under General Business Law § 349 where . . . she has failed to identify any 'material' 'deceptive acts' engaged in by the defendant."); <u>Horowitz v. Stryker Corp.</u>, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (holding that Plaintiff failed to state a claim under GBL § 349 by failing not only to identify the deceptive acts, but also why the acts were deceptive). In the Complaint, Plaintiff asserts that "[u]pon information and belief, the defendant knowingly misrepresented material facts regarding the safety and use of said Maytag oven in an effort to induce plaintiffs and the public at large to purchase said oven, Model No. MGR5875QDS." (Compl. ¶ 64.)

If true, this describes the type of practice that clearly falls within purpose of GBL § 349 to "empower consumers" and to "even the level playing field of their disputes with better funded and superiorly situated fraudulent businesses." Watts v. Jackson Hewitt Tax Serv. Inc., 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008). As with fraud claims, when a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice. See Oswego, 85 N.Y.2d at 27, 623 N.Y.S.2d 529, 647 N.E.2d 741. However, the plausibility of the scheme is crucial to pleading a cause of action under GBL § 349, and when the "most significant contentions" are made on "information and belief" plaintiffs will fail to set forth a cause of action under GBL § 349. Tinlee, 834 F. Supp. at 610. Thus, the determinative issue is whether Plaintiff has set forth enough facts to support the contention that the alleged deceptive act or practice plausibly could have occurred.

Courts routinely dismiss claims under GBL § 349 where the allegations are insufficiently specific to establish a deceptive practice. For example, in Tinlee, this Court dismissed a claim under GBL § 349 because Plaintiff's allegations regarding the scheme were based on information and belief, were conclusory, and lacked specificity. Tinlee, 834 F. Supp. at 160. In Weaver v. Chrysler Corp., 172 F.R.D. 96, 100 (S.D.N.Y.,1997), the Court dismissed Plaintiff's claim under GBL § 349 against a vehicle manufacturer who, Plaintiff alleged, knew of and failed to disclose a material defect, in part because the deceptive practice was plead entirely on information and belief and lacked specificity. Similarly, here, Plaintiff vaguely alleges that Defendants "knew" of the alleged defect, and failed to provide enough factual support to plausibly support the contention that a deceptive act or practice has taken place. Although the Plaintiff does not need to allege these facts with the same level of specificity as a fraud claim,

general references to advertisements and statements will not be sufficient to allege a deceptive act or practice. See Weaver, 172 F.R.D. at 100 (holding that pleading that "advertisements aimed at the general public," without any other specificity, was not sufficient to adequately allege "deceptive acts and practices" under the Consumer Protection Act).

As discussed above, in detail, the Plaintiff has simply not provided enough factual information to plausibly suggest that the Maytag Defendants had knowledge of the defect or made misrepresentations to induce purchase of the ovens. Thus, the Court finds that the Plaintiff has failed to state a claim under GBL § 349.

## E. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure requires that courts freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). Thus, in the appropriate cases, it is the "usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). In addition, "[c]omplaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986) (citation omitted).

With regard to the warranty claims, the Court denies the Plaintiff's request to replead because amendment would be futile. Plaintiff did not provide any information in his request to replead for the Court to find that any facts exist that would allow him to overcome the statute of limitations. Conversely, with respect to the fraud and GBL § 349 causes of action, the conclusory language Plaintiff uses to describe some of Maytag Defendant's alleged misstatements or omissions demonstrate that Plaintiff may have additional information to include

in the Complaint.  Furthermore, in light of the Court's determination that a properly pled fraud claim would not be duplicative of the warranty claims, amendment would not be futile.  Thus, the Court grants Plaintiff leave replead his fraud allegations with sufficient particularity to satisfy Rule 9(b) and his GBL § 349 claims with sufficient plausibility under Rule 8(a).

### III.    CONCLUSION

The Plaintiff's warranty claims are dismissed, with prejudice.  The Plaintiff's fraud and GBL § 349 claims are dismissed without prejudice.  The Plaintiff may file an amended complaint, within 20 days of the date of this order, for the sole purpose of repleading their fraud and GBL § 349 claims.

**SO ORDERED.**

Dated: Central Islip, New York
November 2, 2010

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge