UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

GARY WOODS on behalf of himself and
other consumers of the Maytag Gas Oven
Appliance (Model MGR5875QDS) similarly
situated,

                Plaintiffs,

    v.

MAYTAG CORPORATION, MAYTAG
SALES, INC., and PLESSER'S M.S.H. INC.,

           Defendants.

———————————————————— x

Case No. 10-cv-00559-ADS-WDW


**DEFENDANTS' MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED
COMPLAINT**

## TABLE OF CONTENTS

Page

Table of Authorities ...................................................................................................... ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

      A.     Relevant Procedural History ............................................................... 2

            1.     The Court's Order Dismissing Plaintiff's Fraud Claim............................ 2

            2.     The Court's Order Dismissing Plaintiff's Section 349 Claim .................. 4

      B.     Plaintiff's Allegations in the Amended Complaint ................................. 5

ARGUMENT .................................................................................................................. 10

I.      LEGAL STANDARD ............................................................................................ 10

II.     PLAINTIFF FAILS TO PLEAD A CLAIM FOR FRAUD ........................................... 11

      A.     Plaintiff Fails to Allege a Claim for Fraudulent Inducement ................................ 11

      B.     Plaintiff Fails to Plead a Claim for Fraudulent Concealment................................ 13

III.    PLAINTIFF FAILS TO STATE A VIOLATION OF SECTION 349........................... 17

CONCLUSION ................................................................................................................ 19

# **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                  <u>Page</u>

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005) ................................................................... 13

*Anatian v. Coutts Bank (Switzerland) Ltd.*,
193 F.3d 85 (2d Cir. 1999) ..................................................................... 10

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ........................................................................... 10

*Bell Atl. Corp. v. Twombley*,
550 U.S. 544 (2007) ............................................................................... 10

*Cortec Indus., Inc. v. Sum Holdings, L.P.*,
949 F.2d 42 (2d Cir. 1991) ..................................................................... 18,19

*Fingles v. Continental Cas. Co.*,
No. 08-05943, 2010 WL 1718289 (E.D. Pa. April 28, 2010) ........................ 10

*Harsco Corp. v. Segui*,
91 F.3d 337 (2d Cir. 1996) ..................................................................... 3

*In re Crude Oil Commodity Litig.*,
No. 06 Civ. 6677(NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ......................... 16,17

*Jepson, Inc. v. Makita Corp.*,
34 F.3d 1321 (9th Cir. 1994) ................................................................... 17

*Johnson v. Univ. of Rochester Med. Ctr.*,
686 F. Supp. 2d 259 (W.D.N.Y. 2010) ...................................................... 10

*Lava Trading, Inc. v. Hartford Fire Ins. Co.*,
326 F. Supp. 2d 434 (S.D.N.Y. 2004) ...................................................... 11

*Leftkowitz v. Bank of N.Y.*,
676 F. Supp. 2d 229 (S.D.N.Y. 2009) ...................................................... 19

*Madonna v. United States*,
878 F.2d 62 (2d Cir. 1989) ..................................................................... 17

*MaGee v. Paul Revere Life Ins. Co.*,
954 F. Supp. 582 (E.D.N.Y. 1997) .......................................................... 18

<u>Cases</u>                                                                                        <u>Page</u>

*Maurizio v. Goldsmith,*
230 F.3d 518 (2d Cir. 2000) ........................................................................   17

*Merrill Lynch & Co. v. Allegheny Energy, Inc.,*
500 F.3d 171 (2d Cir. 2007) ........................................................................   11

*Mills v. Polar Molecular Corp.,*
12 F.3d 1170 (2d Cir. 1993) ........................................................................   11,14

*O'Brien v. Nat'l Prop. Analysts Partners,*
936 F.2d 674 (2d Cir. 1991) ........................................................................   15,16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
85 N.Y.2d 20 (N.Y. App. Div. 1995) ...........................................................   17,18

*Wall v. CSX Transp., Inc.,*
471 F.3d 410 (2d Cir. 2006) ........................................................................   11

*Weaver v. Chrysler Corp.,*
172 F.R.D. 96 (S.D.N.Y. 1997) ...................................................................   13

*Watts v. Jackson Hewitt Tax Service Inc.,*
579 F. Supp. 2d 334 (E.D.N.Y. 2008) .........................................................   4

<u>Statutes, Rules, and Regulations</u>

Fed. R. Civ. P. 8(a) .....................................................................................   *passim*

Fed. R. Civ. P. 9(b) .....................................................................................   *passim*

Fed. R. Civ. P. 12(b)(6) ...............................................................................   *passim*

N.Y. Gen. Bus. Law § 349 ...........................................................................   *passim*

## **INTRODUCTION**

Following the Court's November 2, 2010, Memorandum of Decision and Order

("Order") granting Maytag Corporation and Maytag Sales, Inc.'s (collectively, "Maytag")

motion to dismiss Plaintiff's original Complaint, Plaintiff has filed an Amended Complaint and

Jury Demand ("Amended Complaint") against Maytag and Plesser's M.S.H. Inc. ("Plesser's")

(collectively, "Defendants") asserting purported claims for common-law fraud (i.e., fraudulent

inducement and fraudulent concealment) and violation of New York General Business Law

section 349 ("section 349").  This is Plaintiff's second attempt to plead viable fraud and

section 349 claims, and although the Court's Order provided detailed guidance to Plaintiff as

to elements of those claims and the types of facts that must be pled to survive a motion to

dismiss (Order at 9-15, 24-28), the Amended Complaint recites no facts that, if true, would

support each of the elements of Plaintiff's purported claims.

The Amended Complaint still fails to identify <u>any</u> statement by Maytag at all, much

less any statement that allegedly was false or misleading due to the omission of a material

fact, and much less any false or misleading statement by Maytag that Plaintiff actually

received and relied on when he bought his Maytag oven (the "Oven").  (*See* Am. Compl. ¶¶

1-84.)  Further, Plaintiff still fails to allege facts that, if true, would show that Maytag knew

that the Oven was defective before Plaintiff bought it, or how and when Maytag became

aware of that fact.  Thus, as with his original Complaint, Plaintiff has failed to plead Maytag's

misrepresentations, omissions, or scienter with the requisite particularity.

With respect to Plesser's purported fraud, Plaintiff makes only vague and conclusory

allegations regarding statements made by an individual Plesser's sales representative who

spoke with Plaintiff before Plaintiff bought the Oven (*id.* ¶¶ 25-26), but Plaintiff fails to plead

any facts that, if true, would support Plesser's scienter.  In fact, the Amended Complaint contains no factual allegations that, if true, show Plesser's had <u>any</u> knowledge of the alleged gas igniter defect at any time, let alone before Plaintiff bought the Oven, or that Plesser's intended to misrepresent the safety of the Oven or to conceal material facts from Plaintiff during the sales transaction.  (*Id.* ¶¶ 15, 25-27; *see also id.* ¶¶ 1-84.)

Plaintiff similarly fails to plead a violation of section 349 because he does not identify any facts that, if true, would show a deceptive act committed by Maytag or Plesser's.  There simply are no factual allegations identifying any statement or omission by Maytag at all, and there are no factual allegations showing that either Defendant was aware of the alleged defect before Plaintiff bought the Oven, much less engaged in materially misleading conduct with respect to the sales transaction.

Accordingly, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), the Court should dismiss Plaintiff's fraud claim, and pursuant to Rule 8(a) and 12(b)(6), the Court should dismiss Plaintiff's section 349 claim.  Both claims should be dismissed with prejudice because Plaintiff has failed to cure the same fatal deficiencies that existed in his original Complaint, and has shown that he lacks sufficient facts to maintain his purported fraud and section 349 claims.

<u>STATEMENT OF FACTS</u>

A.    **Relevant Procedural History**

1.    **The Court's Order Dismissing Plaintiff's Fraud Claim**

Plaintiff's original Complaint included claims for breach of express warranty, breach of implied warranty of fitness, breach of implied warranty of merchantability, fraud, and violation of section 349.  Pursuant to Rules 8(a), 9(b), and 12(b)(6), Maytag filed a motion

2

seeking dismissal of all of those counts.  The Court dismissed with prejudice the warranty

claims but dismissed without prejudice the fraud and section 349 claims.  (Order at 28-29.)

As to the fraud claim, the Court noted that the "particularity requirement of Rule 9(b)

demands that a plaintiff '(1) detail the statements (or omissions) that the plaintiff contends are

fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions)

were made, and (4) explain why the statements (or omissions) are fraudulent.'"  (Order at 10

(quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)).)  The Court then analyzed

the factual allegations in Plaintiff's Complaint and found that "Plaintiff failed to plead the

alleged misrepresentations and omissions he relied upon with the requisite particularity to

support a claim for fraudulent inducement" and that Plaintiff failed "to plead scienter."  (*Id.*)

As to Plaintiff's misrepresentation and omission allegations, the Court concluded that the

"allegations in the Complaint fail to specify the actual locations of the advertisements or

literature where the Plaintiff purportedly viewed the alleged statements, the content of the

statements, and when the statements were made."  (*Id.* at 11.)  The Court also found that

"Plaintiff's additional allegations that '[a]t the time of sale and as part thereof . . . Defendants

warranted certain safety features' and that he relied on 'the professed integrity of Defendant

Maytag' (Compl. ¶¶ 40-41), in purchasing the oven cannot support a fraud claim because they

do not identify any statements made by the Maytag Defendants."  (*Id.* at 12.)  As discussed

below, the Amended Complaint shares these defects.

As to Plaintiff's scienter allegations, the court previously noted that the Complaint

lacked "particularized facts to support an inference that the defendants acted fraudulently"

(*id.*), stating:

> Here, the Plaintiff first alleges that "[u]pon information and belief, these defects are reflected in data and reports maintained by Defendant and other reports, technical service bulletins, documents and memoranda within the possession of Defendant" (Compl. ¶ 20.)   However, the Plaintiff does not provide any details about these documents, most importantly when they were created and therefore when the Maytag Defendants allegedly become aware of a defect.

(*Id.* at 13-14.)  The Court compared Plaintiff's Complaint to the pleading that survived a motion to dismiss in *Watts v. Jackson Hewitt Tax Service Inc.*, 579 F. Supp. 2d 334, 351 (E.D.N.Y. 2008):

> Comparatively, the Plaintiff in the instant action does not state where he saw, or how he received, the advertisements and literature he allegedly relied upon. In addition, in <u>Watts</u>, the plaintiffs provided context to the alleged omissions despite the fact that the majority of the information was uniquely within the defendant's possession.   Whereas counsel in <u>Watts</u> compared the itemized charges on different plaintiffs bills and actual documents containing the alleged misrepresentation, the Plaintiff in the instant action cites only one example of an oven malfunctioning to support the contention that the oven contained a design defect and presumes, without anything more, that the Maytag Defendants knew about it.

(Order at 14-15 (internal citations omitted).)  Thus, the Court concluded that the "lack of specificity in what would otherwise be the Plaintiff's factual support for his allegations prevents him from raising a 'strong inference' of fraudulent intent sufficient to satisfy Rule 9(b)."  (*Id.* at 15.)  Again, as shown below, Plaintiff's Amended Complaint fails to cure these fundamental pleading deficiencies.

## 2.      The Court's Order Dismissing Plaintiff's Section 349 Claim

With respect to Plaintiff's putative section 349 claim, the Court found that, although Rule 9(b)'s heightened pleading standard does not apply to that claim, Plaintiff had failed to allege more than conclusory allegations that Defendants engaged in a materially misleading deceptive act or practice.  (Order at 26.)  More precisely, the Court found that "Plaintiff vaguely alleges that Defendants 'knew' of the alleged defect, and failed to provide enough

4

factual support to plausibly support the contention that a deceptive act or practice has taken place" (*id.* at 27), and that "general references to advertisements and statements will not be sufficient to allege a deceptive act or practice" (*id.* at 28).  Thus, the Court concluded, "Plaintiff has simply not provided enough factual information to plausibly suggest that the Maytag Defendants had knowledge of the defect or made misrepresentations to induce purchase of the ovens."  (*Id.*)  These fatal defects remain in the Amended Complaint as well.

**B.     Plaintiff's Allegations in the Amended Complaint**

Plaintiff filed his Amended Complaint on November 22, 2010.  Although Plaintiff has added some generalized and conclusory factual allegations, the new allegations do not cure <u>any</u> of the fundamental defects that the Court identified in the original Complaint.

Plaintiff avers that, on July 21, 2005, he bought the Oven from Plesser's.  (Am. Compl. ¶ 15.)  Plaintiff claims that, for unstated reasons, he had "concerns regarding safety" and was familiar "with problems associated with gas ovens and ranges."  (*Id.* ¶ 25.)  Thus, Plaintiff "inquired of the Plesser's sales representative who assisted him as to whether the [Oven] was subject to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990s."  (*Id.*)  According to Plaintiff, an unidentified Plesser's sales representative "assisting Plaintiff [] assured him that the [Oven] was safe and not of the type prone to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990s."  (*Id.* ¶  26.)

Plaintiff alleges that, on February 29, 2008, he "attempted to use the oven, at which time it malfunctioned due to the negligent and careless design of the manufacturer," resulting in an "explosion and fire which caused Plaintiff to experience serious burns."  (Am. Compl. ¶ 28.)  Plaintiff pleads the existence of a design defect in the Oven "[u]pon information and

5

belief" (*id.* ¶ 37) and asserts that "the subject Appliance contained no failsafe or inadequate

failsafes to interrupt and/or halt the flow of gas in the absence of combustion" (*id* ¶ 24),

which results in the Oven's "unjustifiable safety risk of explosion and/or fire due to the risk,

tendency and propensity of the Appliance to suddenly, and without warning, become

inoperable, and/or explode and/or cause fire at any given time" (*id.* ¶ 40). Specifically,

Plaintiff states that the Oven's "igniter" was defective "in that it caused the gas valve to open

in such a manner that the open valve causes the oven to fill with gas, but does not ignite," and

"[u]nder circumstances such as opening the oven door, the fuel-rich oven air mixes with the

oxygen-rich room air, and can trigger an explosion and/or fire."  (*Id.* ¶ 42.)

Plaintiff fails to identify any other Maytag oven of the same design or model that has

manifested the alleged defect (Am. Compl. ¶¶1-84), but nonetheless alleges in conclusory

fashion that <u>all</u> Maytag model MGR5875QDS ovens share the same alleged igniter defect and

pose the same safety risk to consumers who use the ovens (*id.* ¶¶ 37-43).

The Amended Complaint also fails to allege when or how Maytag or Plesser's first

became aware of the alleged defect in the ovens, much less how they were notified.  (Am.

Compl. ¶¶ 41-47.)  In an attempt to imply, without alleging any facts, that Maytag had

knowledge of the alleged defect before Plaintiff's Oven purchase in July 2005, Plaintiff states

"[u]pon information and belief" that Maytag recalled 23,000 Gemini-brand gas ranges in 2003

for a problem with a gas ignition system.  (*Id.* ¶ 21.)  Plaintiff also mentions various patents

obtained by numerous companies, including one Maytag patent, for various devices that

address "concerns of fuel buildup in gas ovens/ranges with hot surface ignition systems." (*Id.*

¶ 23.)  But Plaintiff fails to allege:  (i) any facts showing that Maytag model MGR5875QDS

ovens shared the same igniter or other parts with the Gemini-brand ranges that were recalled

6

in 2003, much less shared the same manufacturing or design issue that led to Maytag's recall;

(ii) any facts showing that the various patents are relevant to or address the igniter that is

used in Plaintiff's Oven; or (iii) any other facts that, if true, would show that either Maytag or

Plesser's knew (or should have known) that there was a safety defect in the Oven before July

2005.  (*Id.* ¶¶ 16-24.)

      Further, Plaintiff never pleads any facts showing what Plesser's knew about the

alleged safety defect, or when or how Plesser's purportedly became aware of the alleged

defect.  (Compl. ¶¶ 1-84.)  There certainly are no new facts that create a strong inference of

Plesser's supposed fraudulent intent.  (*See id.*)

      Plaintiff alleges that some unidentified service technician employed by a nonparty,

Cool Power LLC of Hauppauge, New York, purportedly told Plaintiff <u>after the February 29,

2008, accident</u> that the service technician "had addressed numerous other similar consumer

complaints with respect to the subject Appliance, specifically flare-ups, explosions and fire."

(Am. Compl. ¶ 30.)  Of course, Plaintiff fails to allege even the most basic supporting facts

that would allow Defendants to investigate or challenge his allegation.  (*Id.*)  Plaintiff fails to

state the service technician's name; fails to identify even one similar "flare-up" or "explosion"

incident that has occurred with any Maytag model MGR5875QDS oven anywhere in the

country, much less in or near Happauge, New York; fails to allege <u>when</u> any of the

"numerous" other "flare-ups, explosions and fire[s]" occurred; fails to allege that Maytag or

Plesser's knew of <u>any</u> of these unidentified incidents that supposedly occurred in New York;

fails to identify any incident report made to or by the U.S. Consumer Product Safety

Commission; fails to identify any Safety Commission investigation or action regarding the

alleged safety problem with Maytag ovens' ignition systems; and fails to identify any patent,

design change, or other action by Maytag that purportedly addresses the alleged defect that Plaintiff baldly contends has caused fires and explosions across the United States. (*Id.* ¶¶ 1-84.) In short, Plaintiff strains his credibility by inviting the Court to infer, without any facts at all, that there were numerous similar "explosions" of Maytag ovens just within the local New York area, and yet these "routine" and "repeated" events failed to trigger any Safety Commission investigation, any recall action by Maytag or any reseller, or any publicly available incident report that could be obtained by Plaintiff and identified in his Amended Complaint. The only reasonable inference to be drawn from Plaintiff's dearth of facts is that such facts do not exist at all, otherwise Plaintiff would have stated them.

Instead of including any well-pled facts, Plaintiff makes the conclusory allegations that (a) "Defendants knew" of the alleged defect "[a]t all times relevant hereto" (*id.* ¶¶ 41-43); and (b) "the hidden and/or concealed defects in the Appliance generally, and with respect to the igniter mechanism specifically were known to Defendants" and "reflected in [unidentified] data and reports maintained by Defendants" and other unidentified "reports, technical service bulletins, documents and memoranda within the possession of Defendants" (*id.* ¶ 48). Plaintiff fails to identify any patent, advertisement, or other document that addresses the Maytag ovens, let alone any document that references the igniter in the ovens.

Further, the Amended Complaint fails to identify any statement by Maytag regarding the Oven's safety generally or the ignition system or gas valve specifically, much less any statement that allegedly was either false or misleading by omission, and much less any statement that Plaintiff actually received and relied on before he bought the Oven. (Am. Compl. ¶¶ 25-52.) Plaintiff makes only the following conclusory allegations regarding Maytag's misrepresentations or omissions:

(i)     "Defendants failed to warn of the dangers of the Appliance" (*id.* ¶ 45);

(ii)    "Defendants misrepresented the safety of the Appliance and they

        negligently designed, manufactured, assembled, inspected, marketed,

        advertised, promoted, sold, and/or distributed the Appliance as safe"

        (*id.* ¶ 46);

(iii)   "Defendants fraudulently concealed from Plaintiff and Plaintiffs' Class

        Members dangerous defects in the Appliance that caused it to routinely

        malfunction, rendering it unusable and inoperable" (though Plaintiff

        does not identify any oven that was unusable or inoperable, other than

        arguably his own following the accident) (*id.* ¶ 47);

(iv)    "Defendants . . . represented to the general public and to the Plaintiff,

        through the internet, by advertisement literature, through sales

        representatives and other means that consumers could safely use the

        product for the purpose of cooking" (*id.* ¶ 50);

(v)     "Defendants themselves and through their [unidentified]

        representatives represented and/or promised that the ovens possessed

        certain safety features, namely those that would mitigate the propensity

        to cause flare-ups, explosions and/or fire" (*id.* ¶ 51); and

(vi)    "Plaintiff and Plaintiff Class members purchased or obtained the ovens

        in reliance on the represented/promised safety features, namely those

        that would mitigate the propensity to cause flare-ups, explosions

        and/or fire (as well as the professed integrity of Defendant Maytag)"

(*id.* ¶ 52; *see also id.* ¶¶ 66-76 (making similar conclusory allegations in the First Cause of Action).)

## <u>ARGUMENT</u>

### I.    LEGAL STANDARD

As the Court noted in its previous Order, a complaint should be dismissed if it does not state a claim that is "plausible on its face."  (Order at 3 (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007)).)  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Mere "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not adequate.  *Id.*

When pleading a claim for fraud, such as fraudulent concealment or fraudulent inducement, Rule 9(b) imposes a heightened pleading standard that requires Plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999); *see also* Order at 10; *Johnson v. Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 266 (W.D.N.Y. 2010) (noting that even where the plaintiff alleges the necessary information is exclusively within the defendant's control, the plaintiff still must "set forth the factual basis for that belief, and that basis must arise from the plaintiff's direct, independent, firsthand knowledge").  Plaintiff must plead each element of fraud with particularity.  *See Fingles v. Continental Cas. Co.*, No. 08-05943, 2010 WL 1718289, at *7 n.7 (E.D. Pa. April 28, 2010).

Although a claim under section 349 does not require heightened pleading under Rule 9(b), Plaintiff must state with "some specificity the allegedly deceptive acts or practices that form the basis for the claim." *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004); *see also* Order at 25, 27.

Plaintiff fails to meet the Rule 9(b) pleading standard for his fraud count or Rule 8(a) and 12(b)6) for his section 349 count.  Thus, his Amended Complaint should be dismissed.

## II.   PLAINTIFF FAILS TO PLEAD A CLAIM FOR FRAUD

### A.   Plaintiff Fails to Allege a Claim for Fraudulent Inducement

To state a claim for fraudulent inducement under New York law, Plaintiff must plead with particularity that "'(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'"  (Order at 9 (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006)); *see also Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007).)  Plaintiff fails to plead each of these elements with particularity.

First, Plaintiff fails to even identify the party responsible for the allegedly false misrepresentations and states, for example, that "Defendants misrepresented the safety of the Appliance and they . . . marketed, advertised, promoted, sold, and/or distributed the Appliance as safe . . . ."  (Am. Compl. ¶ 46; *compare id. with Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").)

Second, at least as to Maytag, Plaintiff never identifies any misrepresentation by Maytag regarding the Oven's safety generally, the igniter specifically, or any other matter that

11

Plaintiff actually received and relied on in deciding to buy his Oven. (*See* Am. Compl. ¶¶ 15-76.) Plaintiff pleads only the conclusory allegation that "Defendants, in order to promote and induce the purchase of their product, represented to the general public and to the Plaintiff, through the internet, by advertisement literature, through sales representatives and other means that consumers could safely use the product for the purpose of cooking which was in fact the purpose for which the product was intended." (*Id.* ¶ 50.) But the Court already found that this allegation, which appeared in the original Complaint, does not satisfy Rule 9(b). (Order at 10; *id.* at 11 ("The allegations in the complaint fail to specify the actual locations of the advertisements or literature where the Plaintiff purportedly viewed the alleged statements, the content of the statements, and when the statements were made.").)

Third, as to Plesser's, under a solicitous reading of the Amended Complaint, the Court may infer that Plaintiff alleges an unidentified Plesser's sales representative induced Plaintiff to buy the Oven by "assur[ing] him that the [Oven] was safe and not of the type prone to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990s." (Am. Compl. ¶ 26.) Plaintiff, however, fails to plead any facts to support his claim that Plesser's inducement was fraudulent or that Plesser's acted with the requisite scienter. The Amended Complaint contains no facts showing that at the time the Plesser's sales representative made the purported statements to Plaintiff, the representative knew or should have known that he was misstating a material fact about the Oven. (*Id.* ¶¶ 15-76.) In fact, Plaintiff pleads no fact showing when or how Plesser's (or the unidentified sales representative) obtained any information indicating that there was a safety defect in the Oven, much less that Plesser's obtained such information before July 2005. (*Id.*) Consequently, Plaintiff has failed to plead the scienter element of a claim for fraudulent inducement. (*See*

12

Order at 13-15; *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y. 1997) (finding that the plaintiff's allegations did not give rise to a "strong inference of fraudulent intent" because the plaintiff failed to "identify the data and field reports and their contents and to allege any other factual basis").)

Similarly, Plaintiff fails to plead sufficient facts to support the scienter element of his claim against Maytag. (*Compare* Am. Comp. ¶¶ 15-47 *with* Order at 13-15.) As noted above, Plaintiff makes only conclusory allegations that (a) "Defendants knew" of the alleged defect "[a]t all times relevant hereto" (Am. Compl. ¶¶ 41-43); and (b) "the hidden and/or concealed defects in the Appliance generally, and with respect to the igniter mechanism specifically were known to Defendants" and "reflected in [unidentified] data and reports maintained by Defendants" and other unidentified "reports, technical service bulletins, documents and memoranda within the possession of Defendants" (*id.* ¶ 48).

For the second time Plaintiff fails to identify any misrepresentation of material fact about the Oven by Maytag on which he relied in making his purchase decision in July 2005. (*See* Order at 10-12.) And for the second time Plaintiff's "factual support for his allegations prevents him from raising a 'strong inference' of fraudulent intent sufficient to satisfy Rule 9(b)" as to either Maytag or Plesser's. (*Id.* at 12; *see also id.* at 12-15.) Thus, Court should dismiss with prejudice Plaintiff's fraudulent inducement claim.

**B.      Plaintiff Fails to Plead a Claim for Fraudulent Concealment**

Under New York law, the elements of a claim for fraudulent concealment are: "a relationship between the contracting parties that creates a duty to disclose, knowledge of the material facts by the party bound to disclose, scienter, reliance, and damage." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005); *see also* Order at 9 (a

fraudulent concealment claim shares the elements of fraudulent inducement "with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information").  Again, Plaintiff has failed to plead all of these elements with the particularity and specificity required by Rule 9(b).

First, Plaintiff fails to identify the party responsible for the alleged concealment, stating that "Defendants fraudulently concealed from Plaintiff and Plaintiffs' Class Members dangerous defects in the Appliance that caused it to routinely malfunction, rendering it unusable and inoperable" and to "present an unreasonable risk, tendency and propensity to cause explosion and/or fire when properly used by consumers, in the manner in which it was intended to be used . . . ."  (Am. Compl. ¶ 47; *see also id.* ¶ 72 ("Defendants' concealment and omissions of material facts concerning, inter alia, the negligent manufacturer" of the Oven); *compare id.* ¶¶ 47 & 72 *with Mills*, 12 F.3d at 1175.)

Second, Plaintiff's claim fails because he does not plead any facts sufficient to show that Maytag or Plesser's knew of the alleged defect before Plaintiff bought the Oven in July 2005.  Plaintiff avers only that, after Plaintiff's accident on February 29, 2008, "Whirlpool"— Maytag's parent corporation as of February 2008—"stated to not proceed filing safety issue & personal injury" report and instead "Whirlpool will call [Plaintiff] with what to do."  (Am. Compl. ¶ 32.)  But even if this allegation were true—and it certainly is not—it would not save Plaintiff's claim for fraudulent concealment under the circumstances because it does not show what Maytag or Plesser's knew about the alleged defect, or when they knew it, or that either or both of them knew of the alleged defect at the time of Plaintiff's purchase nearly three years <u>before</u> the accident.

The only allegations regarding Defendants' purported knowledge and intent are vague and conclusory. (*E.g.*, Am. Compl. ¶¶ 41-44, 69.) Such conclusory assertions are inadequate here to support the scienter element, as well as the duty to disclose insofar as Plaintiff pleads that a duty existed based on "special knowledge" known to Defendants but not to Plaintiff. (*See* Order at 13-17; *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991); *but see* Order at 18-19 (stating in dicta that "if Plaintiff repleads the fraud claim with the requisite particularity discussed *supra*, he will have adequately alleged an independent legal duty to disclose so that a fraudulent concealment claim can exist parallel to a breach of warranty claim").)

Third, Plaintiff's fraudulent concealment claim is deficient as to Maytag because the Amended Complaint contains no facts that, if true, would show Plaintiff's reliance on any statement at all by Maytag, let alone any partial or ambiguous statement by Maytag regarding the safety of the Oven or the igniter that would give rise to a duty to disclose. (*See* Am. Compl. ¶¶ 15-76; *cf.* Order at 11 (finding that the Complaint failed to allege sufficient facts to provide the "context to the alleged omissions as required under Rule 9(b)"); *id.* at 17 (noting that if Plaintiff were to amend his Complaint, he would have to identify, "with the requisite specificity, statements by the Maytag Defendants as to the safety of the ovens" to plead "a duty speak based on 'partial or ambiguous statements'").) Instead, Plaintiff makes only vague and conclusory averments, such as "Plaintiff and Plaintiff Class Members purchased or obtained the ovens in reliance on the represented/promised safety features, namely those that would mitigate the propensity to cause flare-ups, explosions and/or fire (as well as the professed integrity of Defendant Maytag)." (Am. Compl. ¶ 52; *see also id.* ¶ 74.)

15

Fourth and finally, as to the scienter element generally, the Amended Complaint asserts no facts that, if true, would show Maytag's or Plesser's intent to fraudulently conceal material information from Plaintiff at the time of sale.  (*Compare* Am. Compl. ¶¶ 15-27 *with* Order at 12-15 *and O'Brien*, 936 F.2d at 676).  As the Court found in dismissing Plaintiff's fraudulent concealment claim the first time, Plaintiff's pleading must establish a "strong inference of fraud . . . either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  (Order at 12-13 (internal quotation marks omitted).)  Simply stated, there are no well-pled facts in the Amended Complaint that would allow a reasonable inference that Maytag or Plesser's knowingly or recklessly sold unreasonably dangerous ovens to consumers in 2005, let alone any well-pled facts that would show <u>why</u> Maytag or Plesser's would do so.  Indeed, there is no plausible motive for Maytag or Plesser's to sell ovens that they know are unreasonably dangerous and that will "routinely" and "repeatedly" malfunction, resulting in personal injuries to its customers, as Plaintiff speculates, unless Maytag or Plesser's hoped to accomplish its own self-destruction.  The Court is not required to suspend reason and adopt Plaintiff's bald allegations that necessarily imply that Defendants were motivated by irrational and fraudulent intent.

The ability to plead "facts" on information and belief, as Plaintiff does repeatedly (*e.g.*, Am. Compl. ¶¶ 3, 5-7, 21-22, 24, 35, 37), "should not be  . . . free license to base claims of fraud on speculation and conclusory allegations . . . ."  *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677(NRB), 2007 WL 1946553, at *7 (S.D.N.Y. June 28, 2007) (citation and quotation marks omitted).  Here, Plaintiff does just that, asserting speculative claims and pleading conclusory allegations.  This is not enough.  (*See* Order at 10-15.)

The heightened pleading standard is especially important in fraud cases like this one because <u>every</u> line of mass-produced products of any complexity will have some fraction that malfunction during the life of the products.  Absent a requirement that the plaintiffs plead with particularity the facts evidencing the defendant's fraudulent conduct, virtually every product launch would be followed by baseless, expensive, and extortionate class litigation based on the unsupported theory that the malfunction or defect that manifested itself in the named plaintiff's product has manifested, or will manifest, in all other owners' products.  *Cf., e.g.*, *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (9th Cir. 1994) (observing that one of the purposes of Rule 9(b)'s heightened pleading requirement is to "minimize 'strike suits' and 'fishing expeditions'"); *Crude Oil*, 2007 WL 1946553, at *7 ("Allowing plaintiff's case to go forward on the basis of these conclusory allegations . . . would contravene an important purpose of Rule 9(b), which is 'to discourage the filing of complaints as a pretext for discovery of unknown wrongs.'" (quoting *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989))).

For these reasons, Plaintiff's claim for fraudulent concealment and fraudulent inducement should be dismissed with prejudice.

## III.   PLAINTIFF FAILS TO STATE A VIOLATION OF SECTION 349

"'To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'"  (Order at 25 (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam).)  New York courts have emphasized that a plaintiff must allege "consumer oriented conduct having a broad impact on consumers at large."  *Oswego Laborers' Local 214 Pension Fund v. Marine*

*Midland Bank, N.A.*, 85 N.Y.2d 20, 24-25 (N.Y. App. Div. 1995) (noting that the statute's legislative history makes clear that section 349 was intended to afford a practical means of halting consumer frauds, not individual ones, at their incipiency).   In other words, Plaintiff must allege conduct directed at the public generally as distinguished from conduct directed at Plaintiff alone.  *MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997).

Plaintiff fails to identify sufficient facts that, if true, would show that Maytag or Plesser's engaged in a consumer-oriented deceptive act or practice that was misleading in any material respect.  (*Compare* Am. Compl. ¶¶ 15-52, 77-84 *and* Statement of Facts, Part B, *with* Order at 25-28.)  The Court explicitly stated in its Order that Plaintiff must plead more than conclusory allegations and may not plead the most significant contentions of the claim on mere information and belief.  (Order at 26-27.)  For example, Plaintiff must identify the allegedly false or misleading statements in Defendants' advertising, literature, or packaging (*id.* at 26-27), but he has failed to do so for the second time (*e.g.*, Am. Compl. ¶¶ 46, 50-51, 79).  Plaintiff also must allege <u>some</u> facts showing how and when each Defendant became aware of the alleged defect before Plaintiff's purchase to show that Maytag or Plesser's, or both, engaged in deceptive conduct, but Plaintiff failed to do so in his Amended Complaint. (*Compare* Order at 27 ("Plaintiff vaguely alleges that Defendants 'knew' of the alleged defect") *and id.* at 28 ("Plaintiff has simply not provided enough factual information to plausibly suggest that the Maytag Defendants had knowledge of the defect or made misrepresentations to induce purchase of the ovens") *with* Am. Compl. ¶¶ 41-48 (containing only conclusory allegations of "Defendants'" knowledge).)  Thus, Plaintiff's section 349 claim should be dismissed with prejudice because Plaintiff clearly has demonstrated his inability to plead viable section 349 claim.  *Cf. Cortec Indus., Inc. v. Sum Holdings, L.P.*, 949 F.2d 42,

48-50 (2d Cir. 1991) (noting that a district court has discretion to deny leave to amend for good reason, such as futility); *Leftkowitz v. Bank of N.Y.*, 676 F. Supp. 2d 229, 277 (S.D.N.Y. 2009) (denying leave to amend where the plaintiff made no showing that further pleading would remedy the defects in the complaint).

## <u>CONCLUSION</u>

For all these reasons, the Court should dismiss Plaintiff's Amended Complaint with prejudice.

Dated:  December 9, 2010                       Respectfully submitted,

                                               *s/ Michael T. Williams*
                                               Michael T. Williams (pro hac vice)
                                               Theresa R. Wardon (pro hac vice)
                                               Wheeler Trigg O'Donnell LLP
                                               1801 California Street, Suite 3600
                                               Denver, Colorado 80202
                                               Telephone: (303) 244-1800
                                               Facsimile:  (303) 244-1879
                                               Email:  williams@wtotrial.com
                                                           wardon@wtotrial.com

                                               James K. Leader (JL-9417)
                                               Thomas K. Richards (TR-8945)
                                               Leader & Berkon LLP
                                               630 Third Avenue
                                               New York, NY  10017
                                               Telephone:  (212) 486-2400
                                               Facsimile:  (212) 486-3099
                                               Email:  jkleader@leaderberkon.com
                                                           trichards@leaderberkon.com

                                               Attorneys for Defendants Maytag Corporation,
                                               Maytag Sales, Inc., and Plesser's M.S.H. Inc.

To:
**Parker Waichman Alonso LLP**
*Attorneys for Plaintiff, Gary Woods*
Daniel C. Burke
Andres F. Alonso
6 Harbor Park Drive
Port Washington, New York 11050

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I hereby certify that on December 9, 2010, I caused to be electronically filed the

foregoing document entitled Defendants' Memorandum in Support of Motion to Dismiss

Plaintiff's Amended Complaint with the Clerk of Court using the CM/ECF system which will

send notification of such filing to all attorneys of record.


*s/ Michael T. Williams*
Michael T. Williams