UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

GARY WOODS on behalf of himself and other
Consumers of the Magtag Gas Oven Appliance
(Model MGR5875QDS) similarly situated,

                                                      Case No. 10-cv-559
                                                      (ADS)(WDW)

                            Plaintiffs,

                -v-

MAYTAG CO., MAYTAG APPLIANCES SALES
CO., and PLESSER'S M.S.H. INC.,

                            Defendants.

------------------------------------------------------------------X

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................i

STATEMENT OF FACTS..................................................................................1

ARGUMENT...................................................................................................5

I.      Legal Standard..................................................................................... 5

II.     Plaintiffs' Amended Complaint satisfies the applicable pleading requirements..............7

        A.      Plaintiffs' Amended Complaint states cognizable claims ............................7

        B.      Plaintiffs' Amended Complaint meets Rule 9(b)'s heightened
                pleading requirements with respect to their claims for Fraudulent
                Inducement and Fraudulent Misrepresentation.......................................8

        C.      Plaintiffs' Amended Complaint meets Rule 8(a)'s pleading
                requirements with respect to their claims pursuant to New York
                General Business Law Section 349....................................................13

III.    If this Court grants Defendants' Motion to Dismiss the Amended
        Complaint, Plaintiffs request leave to re-plead to cure any deficiencies.......................16

CONCLUSION..................................................................................................17

## __TABLE OF AUTHORITIES__

CASES:

*Allstate Ins. Co. v. Rozenberg,* 590 F. Supp. 2d 384, 395 (E.D.N.Y 2008...................13

*Arfons v. E.I. du Pont De Nemours & Co.,* 261 F.2d 434, 435 (2d Cir.1958)...............6

*Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-5- (2009)……………………………...........5, 7, 8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 108 (2d Cir.2007).................16

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964,
167 L.Ed.2d 929 (2007) ………………………………………..…................5, 6, 7, 8

*Billard v. Rockwell International Corp.,* 683 F.2d 51, 57 (2d Cir.1982).....................17

*Bower v. Weisman,* 639 F.Supp. 532, 539 (S.D.N.Y.1986)......................................6

*Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006)...............................7

*Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).......................6, 17

*Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964)...........6

*Equcadores Puertorriqueños en Acción v. Hernández,* 367 F.3d 61, 66 (1st Cir. 2004)....14

*Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)..........5

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230 9 L.Ed.2d 222 (1962)...............16

*Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995)...........................6

*GE Capital Corp. v. Posey,* 415 F. 3d 391, 396-97 (5th Cir. 2005).......................8, 13

*Griggs v. Hinds Junior College,* 563 F.2d 179, 180 (5th Cir. 1977)........................16

*Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007)........................................5, 7

*In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir. 1997).............8

*In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007).................................7

*Lawson v. Affirmative Equities Co., L.P.,* 341 F. Supp. 2d 51, 67 n25 (D. Mass. 2004)...13

*Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001)......................................................................6

*Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986)....................................16

*Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000)...........................14

*Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003)...................................6

*Molex Inc. v Wyler,* 365 F. Supp.2d 901, 912 (N.D.Ill. 2005)..........................9

*Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005).................7

*Patane v. Clark,* 508 F.3d 106, 111-12, (2d Cir.2007)...................................6

*Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir. 2005)......................13

*Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir.1990)...............................16

*Stair v. Calhoun,* 2009 WL 3259482 (E.D.N.Y.)......................................5

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002)................................13

*Weaver v. Chrysler Corp.,* 172 F.R.D. 96, 102 (S.D.N.Y. 1997)........................11

*Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 562 (2d Cir.1985)........17

STATUTES, RULES AND REGUALTIONS:

Fed.R.Civ.P. 8(a)(2)..............................................................5, 13

Fed.R.Civ.P. 9(b)..............................................................5, 8, 13, 16, 17

Fed.R.Civ.P. 12(b)(6)..............................................................5, 6, 7

Fed.R.Civ.P. 15(a)..............................................................16

N.Y. Gen. Bus. Law § 349.......................................................5, 13, 14, 16

OTHER AUTHORITIES:

2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12-99 (2d ed. 1989)..............16

2A J. Moore & J. Lucas, *Moore's Federal Practice,* ¶ 9.03 at 9-34 (2d ed. 1986)………17

Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE: CILIL 3D §1291 at 16 (2004)……………………………………………………………..9

## STATEMENT OF FACTS

Upon the motion of Defendants Maytag Corporation and Maytag Sales, Inc. (collectively "Maytag"), on November 2, 2010, this Honorable Court entered a Memorandum of Decision and Order ("Order") dismissing Plaintiffs' original Complaint herein.  In its Order, however, the Court offered Plaintiffs guidance with respect to curing the defects in the original Complaint as it concerned causes of action for Fraudulent Inducement, Fraudulent Concealment and for violations of New York General Business Law Section 349.

On November 22, 2010, Plaintiffs filed an Amended Complaint and Jury Demand in accordance with the Court's curative instructions.  All Defendants now move to dismiss the newly filed complaint.

On or about July 21, 2005, Plaintiff purchased from Defendant Plesser's a Maytag 30 inch gas range convection oven model number MGR5875QDS [the "Appliance"], that had previously been designed, manufactured, constructed, assembled, and sold by Defendant Maytag. (Am. Compl. ¶ 15.)

The subject Appliance is a combination gas oven/range designed, manufactured, marketed and sold with an electric igniter known commonly known as a "glow plug" or "hot surface igniter," which when activated by the end user, generates heat while simultaneously opening a gas valve with the intention of creating enough heat to cause combustion of the fuel, thus lighting the oven for use in cooking. (Am. Compl. ¶ 16.)

The aforementioned system is commonly referred to as "self-proving," meaning that the opening of the gas valve and the generation of sufficient heat is "proved" by the oven being ignited. (Am. Compl. ¶ 17.)

Such "self-proving" systems such as that which exists on the subject Appliance do not contain a failsafe or redundancy that will stop the flow of fuel in the event the igniter fails to generate sufficient heat to cause combustion. (Am. Compl. ¶ 18.)

In the event the igniter does not generate sufficient heat to ignite the fuel, gas continues to flow into the oven, causing an excess to build up which when combined with oxygen-rich room air, creates a highly combustible fuel mixture and dramatically increases the potential for explosion and/or fire. (Am. Compl. ¶ 19.)

Beginning in the early 1990s, reports and data began to emerge demonstrating that gas ovens with "self-proving" systems were prone to hazardous flare-ups and explosions.  This propensity was investigated by the Consumer Products Safety Commission (CPSC) and resulted in the publication of a report on July 15, 2002 entitled *Gas Range Delayed Ignitions*.  It concluded, *inter alia*, that marketed "hot surface igniters" and gas valves create a system that "is not failsafe and the presence of gas at the burner was not proved."  Moreover, such appliances "have no means to detect and react to the release or accumulation of non-combusted gases." (Am. Compl. ¶ 20.)

Upon information and belief, on or about March 27, 2003, Maytag issued a consumer recall of 23,000 units in its line of Gemini Gas Ranges because of reports of "delayed ignition flashback fires" in the ovens which resulted in burn injuries to at least three (3) consumers. (Am. Compl. ¶ 21.)

Upon information and belief, the subject Appliance was never similarly recalled. (Am. Compl. ¶ 22.)

Upon information and belief, a number of United States Patents were granted to scientists dating back as far as 1974 addressing the concerns of fuel buildup in gas ovens/ranges with hot

surface ignition systems.  In 1974, US 3832123 designed a "fail safe" improvement that shuts off gas flow when a flame is not detected after a predetermined amount of time.  In 1988, US 4765536 noted that ovens that use a pilot light system include flame sensors that only allow the flow of gas in the presence of a flame.  In 1998, US 5791890 used an extra thermocouple near the burner in conjunction with the existing thermocouple to monitor flame ignition, and stops the flow of gas if a flame is not detected.  In 2000, US 6164958 was a safety system comprised of a gas supply valve, a gas flow sensor, a gas leak warning circuit, a no-flame warning circuit and a gas supply valve controller.  In 2003, US 6634351 addresses multiple patents that include a shutoff that senses flame ignition and stops gas flow in the absence of flame.  In 2004 US 6830045 was issued to Maytag Corporation and was a system designed to reduce buildups.  In 2006, US 7044729 included a safety valve and flame detection circuit to interrupt the flow of gas if not ignited. (Am. Compl. ¶ 23.)

Upon information and belief, the subject Appliance contained no failsafe or inadequate failsafes to interrupt and/or halt the flow of gas in the absence of combustion. (Am. Compl. ¶ 24.)

On or about July 21, 2005, in light of his own concerns regarding safety and familiarity with problems associated with gas ovens and ranges, Plaintiff Gary Woods inquired of the Plesser's sales representative who assisted him as to whether the Maytag 30 inch gas range convection oven model number MGR5875QDS was subject to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990s. (Am. Compl. ¶ 25.)

On or about July 21, 2005, the Plesser's sales representative assisting Plaintiff Gary Woods assured him that the Maytag 30 inch gas range convection oven model number

3

MGR5875QDS was safe and not of the type prone to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990s. (Am. Compl. ¶ 26.)

On or about July 21, 2005, satisfied that the subject Appliance was safe for its intended use, Plaintiff Gary Woods purchased the Maytag 30 inch gas range convection oven model number MGR5875QDS for his home. (Am. Compl. ¶ 27.)

Thereafter, on or about February 29, 2008, Plaintiff Gary Woods attempted to use the oven, at which time it malfunctioned due to the negligent and careless design of the manufacturer. There was a resulting explosion and fire which caused Plaintiff to experience serious burns. (Am. Compl. ¶ 28.)

Thereafter, on or about February 29, 2008, an authorized Maytag repairman from Cool Power LLC located in Hauppauge, New York was dispatched to Plaintiff's home for a service call following the explosion and fire. (Am. Compl. ¶ 29.)

The repairman verbally communicated to Plaintiff Gary Woods that he had addressed numerous other similar consumer complaints with respect to the subject Appliance, specifically flare-ups, explosions and fire. (Am. Compl. ¶ 30.)

At the time of the service visit, the repairman created a report that stated "Work completed this visit: found unknown issue intermittent gas ignition Causing gas buildup. Customer face Badly Burned." (Am. Compl. ¶ 31.)

The work report further noted that "Whirlpool [the authorized service arm for Maytag] stated to not proceed filing safety issue & personal injury. Whirlpool will call cust with what to do." (Am. Compl. ¶ 32.)

The repairman advised Plaintiff that he was specifically told by his superiors not to generate a report indicating that the incident was caused by the gas igniter. (Am. Compl. ¶ 33.)

4

Based, *inter alia*, upon the forgoing factual bases and the guidance of the Court, Plaintiffs re-pleaded their Complaint to allege causes of action for (a) Fraudulent Inducement and Fraudulent Concealment, and (b) Violation of New York General Business Law Section 349. (Am. Compl. ¶¶ 65-84.)

Since the Amended Complaint contains "well-pleaded factual allegations, [the] court should assume their veracity . . ." and determine they plausibly give rise to an entitlement to relief. *Stair v. Calhoun,* 2009 WL 3259482 (E.D.N.Y.) (quoting *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-50 (2009). Accordingly, it is respectfully submitted that Defendants' Motion to Dismiss should be denied in its entirety.

## ARGUMENT

### I.    Legal Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard, which is particularly unexacting in its requirements. Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the

claim is "plausible"). Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim. *Twombly*, 127 S.Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.2003), *cert. denied*, 540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003).

The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial. The question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (other quotations omitted)). In sum, "[t]he motion to dismiss for failure to state a claim is disfavored and is seldom granted." *Bower v. Weisman*, 639 F.Supp. 532, 539 (S.D.N.Y.1986) (citing *Arfons v. E.I. du Pont De Nemours & Co.*, 261 F.2d 434, 435 (2d Cir.1958)).

Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly*, 127 S.Ct. at 1969, 1974; *see also Patane v. Clark*, 508 F.3d 106, 111-12, (2d Cir.2007) ("In order to withstand a motion to dismiss, a

complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'") (quoting *Twombly*, 127 S.Ct. at 1974). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly*, 127 S.Ct. at 1974).

## II.    Plaintiffs' Amended Complaint satisfies the applicable pleading requirements

### A.    Plaintiffs' Amended Complaint states cognizable claims

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.2005). The plaintiff must satisfy "a flexible 'plausibility standard.' " *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir.2007), *rev'd on other grounds sub nom; Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint,

7

they must be supported by factual allegations." *Id.*   Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly,* 550 U.S. at 556-57) (internal citations omitted).

Maytag argues that Plaintiffs' claims fail because they are implausible.  However, the legal standard set forth in *Twombly* and in *Iqbal* amply support Plaintiff's claims here.  The Complaint is replete with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *See also, Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests.").

### B.   Plaintiffs' Amended Complaint meets Rule 9(b)'s heightened pleading requirements with respect to their claims for Fraudulent Inducement and Fraudulent Misrepresentation

As the Court noted with respect to Plaintiffs claims rooted in common-law fraud, Rule 9(b) requires a plaintiff to plead with particularity "the circumstances constituting the fraud or mistake." Fed. R. Civ.P. Rule 9(b).  However, Rule 9(b) should be applied sensibly so as not to allow "defrauders" to hide behind procedure. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir. 1997).  "Indeed, under rule 9(b), even for allegations of fraud, not every alleged misrepresentation need appear in the pleadings." *Posey,* 415 F.3d at 397 n.7.  Since

Plaintiffs Amended Complaint contains factually-based paragraphs that detail the conduct providing the basis for the relief requested (Am. Compl. ¶¶ 15-52, 65-76.), Defendants' Motion should be denied.

Further, even if Plaintiffs have not adequately alleged their claims with sufficient particularity, "[t]he proper remedy for failure to plead fraud with particularity is not dismissal of the claims or striking of the pleading, but allowance of a "motion for a more definite statement, an amendment under Rule 15, or the use of the discovery procedures." *Molex Inc. v Wyler*, 365 F. Supp.2d 901, 912 (N.D.Ill. 2005) (citing Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D §1291 at 16 (2004)).

In its Order dated November 2, 2010, the Court notes that Plaintiffs' failure in their original complaint to identify the source, content and date of Defendants' misrepresentations and/or omissions was fatal to their fraud claims as the allegations fall short of the particularity requirements of Rule 9(b). (*See* Order at 10.)

Plaintiffs' Amended Complaint, however, cures the deficiency and identifies with particularity the salient facts underlying Defendants' misrepresentations to Plaintiffs.

Indeed, Plaintiffs assert there were defects in the subject appliance (Am. Compl. ¶ 37), that Defendants' were aware or should have been aware of the defect (Am. Compl. ¶¶ 41-44), that Defendants failed to warn of the defect (Am. Compl. ¶ 45), that Defendants misrepresented the safety of the Appliance (Am. Compl. ¶ 46) and that Defendants fraudulently concealed the defects from Plaintiffs. (Am. Compl. ¶ 47.)

Plaintiffs state that Defendants "represented to the general public and to the Plaintiff, through the internet, by advertisement literature, through sales representatives and other means

that consumers could <u>safely</u> use the product for the purpose of cooking which was in fact the purpose for which the product was intended." (*See* Am. Compl. ¶ 50, emphasis added.)

Moreover, Plaintiffs allege that "[a]t the time of the sale and as a part thereof, and as inducement to Plaintiff and Plaintiff Class Members to acquire the gas ovens, Defendants themselves and through their representatives represented and/or promised that the ovens possessed certain safety features, namely those that would mitigate the propensity to cause flare-ups, explosions and/or fire," (Am. Compl. ¶ 51) and that "Plaintiff and Plaintiff Class Members purchased or obtained the ovens in reliance on the represented/promised safety features, namely those that would mitigate the propensity to cause flare-ups, explosions and/or fire." (Am. Compl. ¶ 51).

Further, Plaintiffs explicitly assert that "[o]n or about July 21, 2005, the Plesser's sales representative assisting Plaintiff Gary Woods assured him that the Maytag 30 inch gas range convection oven model number MGR5875QDS was safe and not of the type prone to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990s. (*See* Am. Compl. ¶ 26.)

Accordingly, Plaintiffs' Amended Complaint sets forth, with the requisite particularity, the time and source the source of the alleged misrepresentations (*i.e.* July 21, 2005 by Defendants' sales representative at Plesser's), as well as the content of the alleged misrepresentations (*i.e.* that the subject Appliance was safe and not of the type prone to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990s).

Moreover, the identification of the misleading statements upon which Plaintiffs allege to have relied give context to the omissions made by Defendants, and are sufficiently particularized

to satisfy the pleading requirements of Rule 9(b). See *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 102 (S.D.N.Y. 1997).

Similarly, the facts pleaded in the Amended Complaint are sufficiently particularized to support the scienter element of Plaintffs' fraud-based claims. Contrary to Defendants' assertions, there are indeed well-pled facts in Plaintiffs' Amended Complaint supporting a "strong inference of fraud."

Plaintiffs allege that the defects in the subject Appliance "are reflected in data and reports maintained by Defendants and other reports, technical service bulletins, documents and memoranda within the possession of Defendants as more fully detailed above." (Am. Compl. ¶ 48.)

First, the Amended Complaint is replete with detailed factual assertions that evidence Defendants' awareness of the underlying defect in the subject appliance:

Plaintiffs allege that data with respect to the propensity of type of igniter used in the subject appliance to malfunction and/or cause explosion and/or fire emerged throughout the 1990s and was the subject of a report published by the Consumer Products Safety Commission in 2002. (Am. Compl. ¶ 20.).

Plaintiffs further allege a recall by Maytag of an appliance in 2003 resulting from an igniter system similar to the one used in the subject appliance (Am. Compl. ¶ 21), and that numerous United States Patents exist, dating back to 1974 (including a patent secured by Maytag itself), addressing concerns of malfunctions, explosions and fires with similar ignition systems. (Am. Compl. ¶ 23.)

Importantly, Plaintiffs allege that following a malfunction of the subject appliance on or about February 29, 2008, "an authorized Maytag repairman from Cool Power LLC located in

Hauppauge, New York was dispatched to Plaintiff's home for a service call following the explosion and fire." (Am. Compl. ¶¶ 28-29.)

Plaintiffs also allege that "[t]he repairman verbally communicated to Plaintiff Gary Woods that he had addressed numerous other similar consumer complaints with respect to the subject Appliance, specifically flare-ups, explosions and fire," and that the repairman "created a report that stated 'Work completed this visit: found unknown issue intermittent gas ignition Causing gas buildup. Customer face Badly Burned.'" (Am. Compl. ¶¶ 30-31.)

Second, the Amended Complaint contains <u>detailed</u> factual assertions that evidence Defendants' intent to conceal the underlying defect from Plaintiffs:

Critically, Plaintiffs' Amended Complaint alleges that "<u>[t]he work report further noted that "Whirlpool [the authorized service arm for Maytag] stated to not proceed filing safety issue & personal injury. Whirlpool will call cust with what to do.</u>" (Am. Compl. ¶ 32, emphasis added.)

Of equal import, Plaintiffs allege that "<u>[t]he repairman advised Plaintiff that he was specifically told by his superiors not to generate a report indicating that the incident was caused by the gas igniter.</u> (Am. Compl. ¶ 33, emphasis added.)

These allegations, if proven, certainly create a "strong inference" with respect to Defendants' intent to conceal the defect in the subject Appliance.

The Court in its prior Order has already determined that if Plaintiffs' re-pleaded the fraud claims with sufficient particularity (which, it is respectfully submitted that Plaintiffs have done as is evidenced by the foregoing), that Plaintiffs pleaded "sufficient facts to support a claim that the Maytag Defendants had a duty to disclose based on their 'special knowledge'" sufficient to

satisfy the "duty to disclose" element of their Fraudulent Concealment cause of action. (Order at 17-19.)

Based upon all of the foregoing, it is respectfully submitted that Plaintiffs have pleaded their fraud-based claims with sufficient particularity to warrant denial of Defendants' motion.

**C.  Plaintiffs' Amended Complaint meets Rule 8(a)'s pleading requirements with respect to their claims pursuant to New York General Business Law Section 349**

Federal Rule of Civil Procedure 8(a)(2) requires Plaintiffs to provide only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.P. 8(a)(2). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002).

Citing *Swierkiewicz,* several courts have held that this simplified standard applies to claims for violation of consumer protection statutes and unjust enrichment. *See, e.g., Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir. 2005) ("an action under § 349 [of the New York General Business Law] is not subject to the pleading-with-particularity requirements of rule 9(b), Fed. R. Civ.P., but need only meet the bare-bones notice-pleading requirements of rule 8(a), Fed. R. Civ.P."); *GE Capital Corp. v. Posey,* 415 F. 3d 391, 396-97 (5th Cir. 2005) ("Other than in the situations *expressly* enumerated in Rule 9(b), *e.g.,* allegations of *actual* fraud, plaintiffs must satisfy *only* the minimal requirements of Rule 8(a)." (emphasis added); *Allstate Ins. Co. v. Rozenberg,* 590 F. Supp. 2d 384, 395 (E.D.N.Y 2008) (same); *Lawson v. Affirmative Equities Co., L.P.,* 341 F. Supp. 2d 51, 67 n25 (D. Mass. 2004) (same). Indeed, *Swierkiewicz* "sounded the death knell for the imposition of a heightened pleading standard except in cases in which either a federal statute or specific Civil Rule requires that result." *Lawson,* 341 F. Supp 2d at 67

n 25 (quoting *Equcadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 66 (1st Cir. 2004)).

The Court has already determined in its prior Order that Plaintiffs have adequately pleaded two of the requisite elements of a prima facie case under New York General Business Law Section 349, *i.e.* that Defendants' deceptive acts were consumer-oriented and that Plaintiffs have been injured as a result. (Order at 25-6; *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).

Moreover, the Court granted Plaintiff leave to re-plead with respect to the third element, specifically, that Defendants' acts were misleading in a "material way." *Id.*

Specifically, the Court held that Plaintiffs' original complaint was deficient in this regard because it did not "provide[ ] enough factual information to plausibly suggest that the Maytag Defendants had knowledge of the defect or made misrepresentations to induce purchase of the ovens." (Order at 28.).

Notably, although the Court acknowledged that the facts that give rise to a Section 349 claim do not require the same level of specificity as those for a fraud-based claim, the same well-plead facts that give rise to Plaintiffs' fraud-based claims similarly support Plaintiffs' claims under Section 349:

Plaintiffs' Amended Complaint contains detailed factual assertions that evidence Defendants' "knowledge of the defect":

Plaintiffs allege that data with respect to the propensity of type of igniter used in the subject appliance to malfunction and/or cause explosion and/or fire emerged throughout the 1990s and was the subject of a report published by the Consumer Products Safety Commission in 2002. (Am. Compl. ¶ 20.).

Plaintiffs further allege a recall by Maytag of an appliance in 2003 resulting from an igniter system similar to the one used in the subject appliance (Am. Compl. ¶ 21), and that numerous United States Patents exist dating back to 1974 (including a patent secured by Maytag itself) addressing concerns of malfunctions, explosions and fires with similar ignition systems. (Am. Compl. ¶ 23.)

Plaintiffs allege that following a malfunction of the subject appliance on or about February 29, 2008, "an authorized Maytag repairman from Cool Power LLC located in Hauppauge, New York was dispatched to Plaintiff's home for a service call following the explosion and fire." (Am. Compl. ¶¶ 28-29.)

Plaintiffs also allege that "[t]he repairman verbally communicated to Plaintiff Gary Woods that he had addressed numerous other similar consumer complaints with respect to the subject Appliance, specifically flare-ups, explosions and fire," and that the repairman "created a report that stated 'Work completed this visit: found unknown issue intermittent gas ignition Causing gas buildup. Customer face Badly Burned.'" (Am. Compl. ¶¶ 30-31.)

Moreover, the Amended Complaint contains <u>detailed</u> factual assertions that evidence Defendants' made misrepresentations and/or omissions evidencing their intent to conceal the underlying defect from Plaintiffs to induce purchase of ovens:

Plaintiffs Amended Complaint alleges that "[t]he work report further noted that "Whirlpool [the authorized service arm for Maytag] stated to not proceed filing safety issue & personal injury. Whirlpool will call cust with what to do." (Am. Compl. ¶ 32, emphasis added.)

Plaintiffs further allege that "[t]he repairman advised Plaintiff that he was specifically told by his superiors not to generate a report indicating that the incident was caused by the gas igniter. (Am. Compl. ¶ 33.)

These facts, if taken as true, evidence Defendants intent to make misrepresentations and/or omissions designed to induce Plaintiffs to purchase ovens. (*See also*, generally, the factual allegations set forth in Am. Compl. ¶¶ 15-52, 65-76.)

Based upon all of the foregoing, it is respectfully submitted that Plaintiffs have pleaded their Section 349 claims with sufficient particularity to warrant denial of Defendants' motion.

**III.   If this Court grants Defendants' motion to dismiss the Amended Complaint, Plaintiffs request leave to re-plead to cure any deficiencies**

It is a longstanding principle that in general, leave to amend should be freely granted upon dismissal of a complaint. *See, e.g., Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir.1990). When a motion to dismiss is granted, "the usual practice is to grant leave to amend the complaint." 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12-99 (2d ed. 1989); *see also Luce v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend."); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 108 (2d Cir.2007) ("District courts typically grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b)).

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint shall be freely given when justice so requires. Permission should be denied only if it appears to a certainty that plaintiffs cannot state a claim showing they are entitled to relief or if the defendant will be unduly prejudiced. *Griggs v. Hinds Junior College,* 563 F.2d 179, 180 (5th Cir. 1977). Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a valid ground. *Foman v. Davis, supra,* 371 U.S. at 182, 83 S.Ct. at 230 ("outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion").

Furthermore, complaints dismissed under Rule 9(b) are "almost always" dismissed with leave to amend. 2A J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 9.03 at 9-34 (2d ed. 1986). *See also, Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 562 (2d Cir.1985). In cases where such leave has not been granted, often plaintiffs defective allegations were made after full discovery in a related case, *Billard v. Rockwell International Corp.,* 683 F.2d 51, 57 (2d Cir.1982).

Since the facts alleged in plaintiffs' original complaint are sufficient to notify defendants of the theory of their claim and the grounds which support it, (*see Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)), and this would be the first time that Plaintiffs will amend the Complaint, leave to amend to properly allege breach of express and implied warranty, fraud and violation of Section 349 of New York's General Business Law  should be granted.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Court (1) deny Defendants' motion to dismiss in its entirety; (2) in the alternative, grant Plaintiffs' request for leave to amend the Complaint; and (3) grant such other and further relief as is just and proper under the circumstances.

Dated: January 6, 2011

Respectfully Submitted,


 /s/  Daniel C. Burke
Daniel C. Burke
Andres F. Alonso
**PARKER WAICHMAN ALONSO LLP**
6 Harbor Park Drive
Port Washington, New York 11050
Telephone:  (516) 466-6500
Facsimile:  (516) 466-6665
dburke@yourlawyer.com

John T. Gorton, Esq.
**Gorton & Gorton LLP**
Attorneys for Plaintiff
1225 Franklin Avenue, Suite 475
Garden City, NY 11530

*Attorneys for Plaintiffs*

To:   **Leader & Berkon LLP**
*Attorneys for Defendants Maytag Corporation, Maytag Sales, Inc. and Plesser's M.S.H.*
630 Third Avenue
New York, NY 10017
By:  James K. Leader, Esq. & Thomas K. Richards, Esq., Of Counsel

**Wheeler Trigg O'Donnell LLP**
*Attorneys for Defendants Maytag Corporation, Maytag Sales, Inc. and Plesser's M.S.H.*
1800 California Street
Suite 3600
Denver, CO 80202
By:  Michael T. Williams, Esq. & Theresa R. Wardon, Esq., Of Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2011, I electronically filed the foregoing document entitled: PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/  Daniel C. Burke
Daniel C. Burke