**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
GARY WOODS on behalf of himself and other
consumers of the Maytag Gas Oven Appliance
(Model MGR5875QDS) similarly situated,

                    Plaintiffs,

         -against-

MAYTAG CO., MAYTAG APPLIANCES
SALES CO., and PLESSER'S M.S.H.  INC.

                  Defendants.
--------------------------------------------------------X

                        **MEMORANDUM OF**
                        **DECISION AND ORDER**
                        10-CV-0559 (ADS)(WDW)

<u>**APPEARANCES:**</u>

**Parker Waichman Alonso LLP**
*Attorneys for the Plaintiff*
6 Harbor Park Drive, 5th Floor
Port Washington, NY 11050
      By: Andres F. Alonso, Esq. & Daniel C. Burke, Esq, Of Counsel

**Gorton & Gorton LLP**
*Attorneys for the Plaintiff*
1225 Franklin Avenue, Suite 475
Garden City, NY 11530
      By:  John T. Gorton, Esq., Of Counsel

**Leader & Berkon LLP**
*Attorneys for Defendants*
630 Third Avenue
New York, NY 10017
      By:  James K. Leader, Esq. & Thomas K. Richards, Esq., Of Counsel

**Wheeler Trigg O'Donnell LLP**
*Attorneys for Defendants*
1800 California Street
Suite 3600
Denver, CO 80202
      By:  Michael T. Williams, Esq. & Theresa R. Wardon, Esq., Of Counsel

**SPATT, District Judge**.

Plaintiff Gary Woods ("Woods" or "the Plaintiff") commenced this action on behalf of himself and a putative class against Maytag Company (now known as Maytag Corporation ("Maytag Corp.")), and Maytag Sales Appliance Company  (now known as Maytag Sales, Inc. ("Maytag Sales") and together with Maytag Corp. "the Maytag Defendants"), and Plesser's M.S.H ("Plesser's" and together with the Maytag Defendants "the Defendants"),  seeking damages associated with the purchase and use of an allegedly defective oven.  In the amended complaint, the Plaintiff asserts causes of action against all of the Defendants for:  (1) fraudulent inducement through misrepresentations and concealment and (2) violations of New York General Business Law §349 ("GBL § 349").

Presently before the Court is the motion by the Defendants pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaint in its entirety.  For the reasons set forth below, the Court grants in part and denies in part the Defendants' motion.

# I.  BACKGROUND

## A.  Factual Background

The following facts are taken from the amended complaint. As required in reviewing a motion to dismiss, the Court accepts the alleged facts as true, and draws all reasonable inferences in favor of the plaintiff.

On July 21, 2005, plaintiff Gary Woods purchased a Maytag 30-inch gas range oven with the model number MGR5875QDS (the "Oven") from Plesser's, M.S.H., a department store in Babylon, New York.  The Oven was "designed, manufactured, constructed, assembled, and sold" by defendant Maytag Corp. and was sold through Maytag Corp.'s subsidiary, defendant Maytag Sales.  As described in the Amended Complaint, the Oven:

> is a combination gas oven/range designed, manufactured, marketed and sold with an electric igniter . . . commonly known as a "glow plug" or "hot surface igniter," which when activated by the end user, generates heat while simultaneously opening a gas vale with the intention of creating enough heat to cause combustion of the fuel, thus lighting the oven for use in cooking.

(Am. Compl., ¶ 16.).  The Oven system is commonly referred to as "self-proving" because "the opening of the gas valve and the generation of sufficient heat is 'proved' by the oven being ignited".  (Am. Compl., ¶17.)

Prior to purchasing the Oven, "in light of his own concerns regarding safety and familiarity with problems associated with gas ovens and ranges", Woods asked the Plesser's sales representative who was assisting him whether the Oven "was subject to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990's."  (Am. Compl., ¶ 25.) In response, Woods states that the Plesser's sales representative assured him that the Oven "was safe and not of the type prone to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990's." (Am. Compl., ¶ 26.)  Satisfied that the Oven was safe, Woods purchased the Oven.

Subsequently, on or about February 29, 2008, when Woods attempted to use the Oven, a malfunction occurred causing the Oven to explode and catch fire, resulting in Woods suffering serious burns.  According to Woods, the explosion was caused by a defect in the igniter mechanism.  Following the explosion, Woods placed a service call to Cool Power LLC located in Hauppauge, New York, and an authorized Maytag repairman was dispatched to his home.

Woods alleges that the repairman told him that "he had addressed numerous other similar consumer complaints with respect to [the Oven], specifically flare-ups, explosions and fire." (Am. Compl., ¶ 30.)  Furthermore, as quoted in the Amended Complaint, the repairman also created a work report ("the Work Report") that stated:

> "Work completed this visit:  found unknown intermittent gas
> ignition[.] Causing gas buildup.  Customer face Badly Burned."

> "Whirlpool [the authorized service arm for Maytag] stated to not
> proceed filing safety issue & personal injury.  Whirlpool will call
> cust [sic] with what to do."

(Am. Compl., ¶¶ 31 & 32.)  Finally, Woods states that the repairman "advised [him] that he was

specifically told by his superiors not to generate a report indicating that the incident was caused

by the gas igniter".  (Am. Compl., ¶ 33.)

According to Woods, the Defendants have known of the potential for this type of

explosion or fire in self-proving oven systems since the early 1990s.  In particular, Woods

references a July 15, 2002 report by the Consumer Products Safety Commissions entitled "Gas

Range Delayed Igniters" ("2002 Consumer Safety Report") which published the results of an

investigation into self-proving oven systems and noted that such appliances "have no means to

detect and react to the release or accumulation of non-combusted gases."  (Am. Compl.,  ¶ 20.)

In addition, Woods contends that, upon and information and belief, in March 2003,

Maytag issued a consumer recall of 23,000 units in another self-proving oven line, the Gemini

Gas Range (the "2003 Gemini Recall") "because of reports of 'delayed ignition flashback fires'

in the ovens which resulted in burn injuries to at least three (3) consumers."  (Am. Compl., ¶ 21.)

Moreover, Woods contends that since 1974 a number of patents have been obtained "addressing

the concerns of fuel build up in gas ovens/ranges with hot surface ignition systems".  In fact,

Woods identifies two patents issued to defendant Maytag Corp. directly:  (1) United States

Patent 6830045 issued in 2004 for "a system designed to reduce buildups" ("2004 Patent"); and

(2) United States Patent 7044729 issued in 2006 which "included a safety valve and flame

detection circuit to interrupt the flow of gas if not ignited" (the "2006 Patent").  (Am. Compl., ¶

23.)

4

**B.  Procedural History**

On February 10, 2010 Woods filed this putative class action against Plesser's, Maytag Corp. and Maytag Sales, alleging that all of the Defendants knew or should of known of a defect in the Oven and falsely represented and/or concealed the information and therefore were liable for:  (1) breach of express warranty; (2) breach of the implied warranty of fitness; (3) breach of the implied warranty of merchantability; (4) fraud and deceit; and (5) violations of General Business Law §349.  On March 10, 2010, the Maytag Defendants brought a Fed. R. Civ. P. 12(b)(6) motion to dismiss the Initial Complaint in its entirety.

In an order dated November 2, 2010, the Court granted the motion, dismissing the Plaintiff's breach of warranty claims against the Maytag Defendants as time-barred by the statute of limitations.  In addition, the Court dismissed the fraud and GBL § 349 claims on the grounds that the Plaintiff failed to plead facts plausibly alleging that the Maytag Defendants had knowledge of the purported defect and failed to identify specific misrepresentations or omissions made by the Maytag Defendants to the Plaintiff or to consumers.  See Woods v. Maytag Co. ("Maytag I"), No. 10-CV-0559, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010).  However, because the Court found that "the conclusory language Plaintiff use[d] to describe some of Maytag Defendants' alleged misstatements or omissions demonstrate[d] that Plaintiff may have additional information to include in the Complaint", the Court granted the Plaintiff leave to re-plead his fraud allegations with the requisite particularity required by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), and his GBL §349 claims with sufficient plausibility under Federal Rule of Civil Procedure 8(a) ("Rule 8(a)").  Id. at *16.

As a result, on November 22, 2010, the Plaintiff filed an amended complaint ("the Amended Complaint").  The following facts from the above-stated case-description were new

5

additions to the Amended Complaint:  (1) the statement by the Plesser's sales representative; (2) the representations by the authorized Maytag repairman and the contents of the Work Report; and (3) references to the 2002 Consumer Safety Report, the Gemini Recall, the 2004 Patent, and the 2006 Patent.  Based on the allegations in the Amended Complaint, the Plaintiff, on behalf of a putative class, asserted causes of action against all of the Defendants for:  (1) fraudulent inducement through misrepresentations and concealment and (2) violations of the General Business Law §349.  Although the Court's decision in <u>Maytag I</u> did not apply to Plesser's, the Court notes that the Amended Complaint abandons the warranty claims that were asserted against Plesser's in the Initial Complaint.

On December 9, 2010, all of the Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6), on the grounds that the Plaintiff: (1) failed to plead his fraud claim with the requisite particularity under Rule 9(b), and (2) failed to plausibly allege a GBL §349 claim under Rule 8(a).  The Court addresses the sufficiency of Plaintiff's fraud and GBL §349 claims against Plesser's and the Maytag Defendants in turn below.

## II. DISCUSSION

### A. Legal Standard on a Rule 12(b)(6) Motion to Dismiss

Under the now well-established <u>Twombly</u> standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007).  The Second Circuit has explained that, after <u>Twombly</u>, the Court's inquiry under Rule 12(b)(6) is guided by two principles.  <u>Harris v. Mills</u>, 572 F.3d 66 (2d Cir. 2009) (citing <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is in applicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " Id. (quoting Iqbal, 129 S. Ct. at 1929).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will … be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.' " Id. (quoting Iqbal, 129 S. Ct. at 1950).  Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and … determine whether they plausibly give rise to an entitlement of relief."  Iqbal, 129 S. Ct. at 1950.

## B. Whether the Plaintiff Adequately Pleads a Claim for Fraud

The Plaintiff asserts against all of the Defendants claims for fraudulent inducement based on fraudulent misrepresentations and fraudulent concealment.

Under New York law, to sustain a fraudulent inducement claim the Plaintiff must plausibly allege that "(1) the defendant made a material, false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation and (4) the plaintiff suffered damage as a result of such reliance" Wall v. CSX Transp., Inc., 471 F.3d 410, 415–16 (2d Cir. 2006) (citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996)).  A fraudulent concealment claim shares these same elements with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information.  See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 213 (S.D.N.Y. 2007).

Fraudulent inducement claims are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must

state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To comply with Rule 9(b), a complaint alleging fraudulent misrepresentation under New York law must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). Furthermore, where the fraudulent inducement claim is premised on concealment so that the plaintiff cannot specify the time and place because no affirmative act occurred, "the complaint must still allege: (1) what the omissions were (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." Manhattan Motorcars, Inc., 244 F.R.D. at 213 (internal quotation marks omitted).

While the fraud alleged must be stated with particularity, Rule 9(b) specifies that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Courts apply a more general standard for scienter "for the simple reason that 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'" Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996) (quoting Conn. Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987)). Therefore, "the requisite intent of the alleged speaker of the fraud need not be alleged with great specificity." Id.

However, a plaintiff "'must allege facts that give rise to a strong inference of fraudulent intent.'" Lerner, 459 F.3d at 290 (quoting Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995)). A "strong inference" of fraudulent intent may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging

8

facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  Finally, "[w]here multiple

defendants are asked to respond to allegations of fraud, the complaint should inform each

defendant of the nature of his alleged participation in the fraud."  DiVittorio v. Equidyne

Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987).

### 1.  Fraudulent Misrepresentation

The Plaintiff alleges that the Defendants fraudulently misrepresented the safety of the

Oven for its intended use "through the internet, by advertisement literature, through sales

representatives and other means."  (Am. Compl., ¶ 50.)  As an initial matter, in Maytag I, the

Court held that similar allegations regarding the Maytag Defendants misrepresentations on the

"internet" and in "advertisement literature" were insufficient to meet the particularity

requirements of Rule 9(b) for a fraudulent inducement claim because the Plaintiff "fail[ed] to

specify the actual locations of the advertisements or literature where the Plaintiff purportedly

viewed the alleged statements, the content of the statements, and when the statements were

made."  Maytag I, 2010 WL 4314313, at *6.  The Amended Complaint—which now asserts this

vague allegation against all of the Defendants as opposed to only the Maytag Defendants—does

not provide any additional detail about the alleged misrepresentations on the "internet" and in

"advertisement literature".  The Plaintiff's repetition of these claims does not alter the Court's

original determination that they fail to state an adequate cause of action for fraudulent

misrepresentation.

New to the Amended Complaint is the Plaintiff's contention that he relied on affirmative

misrepresentations by the Defendants "sales representatives".  (See Am. Compl., ¶¶ 50 & 51.)

The Court will address the sufficiency of this allegation as against the Maytag Defendants and Plesser's separately.

### a. The Maytag Defendants

The Plaintiff broadly states in the Amended Complaint that "<u>Defendants</u> . . . through their representatives represented and/or promised that the ovens possessed certain safety features . . . ." (Am. Compl., ¶ 51 (emphasis added). However, it is well-settled that "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'". <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993). Here, the only misrepresentation by a sales representative that the Plaintiff identifies in the Amended Complaint is a statement made by the Plesser's sales representative to the Plaintiff at the time he purchased the Oven. The relevant portion of the Amended Complaint alleges:

> On or about July 21, 2005, in light of his own concerns regarding safety and familiarity with problems associated with gas ovens and ranges, Plaintiff GARY WOODS inquired of the Plesser's sales representative who assisted him as to whether the Maytag 30 inch gas range convection oven model number MGR5875QDS was subject to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990's. (Am. Compl., ¶ 25.)

> On or about July 21, 2005, the Plesser's sales representative assisting Plaintiff GARY WOODS assured him that the Maytag 30 inch gas range convection oven model number MGR5875QDS was safe and not of the type prone to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990s. (Am. Compl., ¶ 26.)

> At the time of the sale and as a part thereof, and as inducement to Plaintiff and Plaintiff Class Members to acquire the gas ovens, Defendants themselves and through their representatives represented and/or promised that the ovens possessed certain safety features, namely those that would mitigate the propensity to cause flare-ups, explosions and/or fire. (Am. Compl., ¶ 51)

In opposition to the instant motion, the Plaintiff states, without any supporting facts or argument, that the above statement by the Plesser's sales representative constitutes a fraudulent misrepresentation by the Maytag Defendants.  Although it is a well-established principle that "[t]he fraudulent statements of an agent, when made within the scope of its agency, are attributable to the principal", Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566 (2d Cir. 2005), the Plaintiff has failed to plead any facts supporting the existence of an agency relationship between the Maytag Defendants and Plesser's.

Generally, "an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C., 266 F.3d 112, 122 (2d Cir. 2001); Cabrera v. Jakabovitz, 24 F.3d 372, 386 (2d Cir. 1994).  "Essential to the agency relationship is the notion that the agent acts subject to the principal's direction and control." Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Insur. Servs., 388 F. Supp. 2d 292, 301 (S.D.N.Y. 2005) (citing In re Shulman Transport Enter., Inc., 744 F.2d 293, 295 (2d Cir. 1984)).  On a motion to dismiss, the relevant inquiry is "whether plaintiff has made specific allegations from which an agency relationship can be inferred".  Meisel, 651 F. Supp. 2d at 111. Furthermore, where, as here, the agency relationship is an integral element of an alleged fraud, courts have required the facts establishing agency be pled with Rule 9(b) particularity.  Id. at 111 n.6 (collecting cases).

In the instant case, the Amended Complaint is wholly lacking any facts concerning the relationship between the Maytag Defendants and Plesser's from which the Court can infer the existence of an agency relationship.  The Amended Complaint separately identifies the Maytag Defendants as manufacturers and distributors of the Oven, and Plesser's as a retail store that

sells, among other things, Maytag products such as the Oven.  The mere fact that Plesser's sold a Maytag product does not plausibly support a finding that Plesser's was acting as the Maytag Defendant's agent.  Therefore any purported misrepresentation by a Plesser's sales representative cannot be attributed to the Maytag Defendants.  Cf. Tietsworth v. Sears, Roebuck and Co., No. 09-CV-288, 2009 WL 3320486, *4 n.3 (N.D. Cal. Oct. 13, 2009) ("A representation made by a single salesman employed by Sears is not the equivalent of a misrepresentation by Whirlpool and Sears . . .").

Accordingly, the Court dismisses the fraudulent misrepresentation claim against the Maytag Defendants.  Furthermore, the Plaintiff has already had an opportunity to re-plead the fraudulent misrepresentation claim against the Maytag Defendants and has failed to show that, if given another opportunity, he could identify any misrepresentation by the Maytag Defendants that he relied upon.  Thus, the Defendants' motion is granted with prejudice.

### b.  Plesser's

With respect to the fraudulent misrepresentation claim against Plesser's, the Plaintiff relies on the same statement by the Plesser's sales representative.  However, unlike with the Maytag Defendants, the statement by the Plesser's sales representative can be imputed to Plesser's because "[i]t is black-letter agency law in New York that an employer is liable for the representations of its agents when those representations are made within the scope of the agent's employment."  Glidepath Holding B.V. v. Spherion Corp., 590 F. Supp. 2d 435, 453 (S.D.N.Y. 2007) (citing 2A N.Y. Jur.2d Agency & Indep. Contractors § 290 (2007)).  Here, the Court finds that the Plaintiff has alleged a cause of action for fraudulent misrepresentation against Plesser's with the requisite specificity under Rule 9(b).

First, the Court finds that the allegations pertaining the Plesser's sales representatives statement to the Plaintiff meet the Rule 9(b) particularity requirement for pleading the element of a "material, false representation" because they identify:  (1) the detail of the statement:  that the Oven was not the type prone to hazardous flare-ups:  (2) the speaker:  a Plesser's sales representative; (3) where and when the statements were made:  at Plesser's on July 21, 2005; and (4) why the statements were fraudulent:  the Oven was prone to hazardous flare ups.

As to the remaining elements of the fraudulent misrepresentation claim against Plesser's, the Defendants contend that dismissal is appropriate because the Amended Complaint is void of any allegations from which this Court can infer that Plesser's had actual knowledge of the purported design defect at the time of the misrepresentation or the intent to defraud necessary to satisfy the element of scienter.  As discussed in greater detail in the fraudulent concealment section, the Court agrees that the Plaintiff has failed to adequately allege that Plesser's or Plesser's sales representative had actual knowledge of the purported design defect.  However, the Court finds that the allegations describing the nature and context of the Plesser's sales representative's statement constitute "strong circumstantial evidence" that the Plesser's sales representative either knowingly or recklessly made a fraudulent misrepresentation to induce the Plaintiff to purchase the Oven.

It is a long-established principle under New York law that where, as here, a statement is made with the "pretense of knowledge", a defendant cannot "escape responsibility through plea of lack of personal knowledge of the truth of declarations made by him" because "their statement made as if from personal knowledge is equally fraudulent as though intentionally falsely made".  Sgarlata v. Carioto, 23 Misc. 2d 263, 201 N.Y.S.2d 384, 384 (N.Y. City Ct. 1960) (quoting Abel v. Paterno, 245 A.D. 285, 281 N.Y.S. 58 (1st Dep't 1935) quoting Rothschild v. Mack, 115 N.Y.

1 (1889)); Ultramares Corp. v. Touche, 255 N.Y. 170, 179, 174 N.E. 441 (1931) ("Fraud includes the pretense of knowledge when knowledge there is none.").

In DiRose v. PK Management Corp., 691 F.2d 628 (2d Cir. 1982), the Second Circuit reaffirmed this principle, noting that "a defendant may be guilty of fraudulent misrepresentation for making a false statement without knowing it to be false, if he made it recklessly with the pretense of knowledge that it was true when in fact he knew that he had no such knowledge."  Id. at 632; In re LILCO Sec. Litig., 625 F. Supp. 1500, 1504 (E.D.N.Y. 1986) (stating that scienter for fraud can exist when a statement is made "knowing that one does not have a basis for asserting the truth of a representation with the intention that another party rely on the representation").  While it is true that "statements will not form the basis of a fraud claim when they are mere 'puffery' or are opinions as to future events", Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994), "[i]f [a] defendant's misrepresentation comes in the form of a positive assertion, then it is likely that defendant will be responsible if it happens to be false", In re Simon II Litig., 211 F.R.D. 86, 140 (E.D.N.Y. 2002), vacated on other grounds, 407 F.3d 125 (2d Cir. 2005). See Meisel v. Grunberg, 651 F. Supp. 2d 98, 117 (S.D.N.Y. 2009) ("[A] misrepresentation must be factual, rather than an expression of an opinion.") (internal quotation marks omitted).

Here, the statement that the Plaintiff contends constituted the material misrepresentations which induced him to purchase the Oven, was a statement by a Plesser's sales representative in response to a direct question that "[the Oven] was safe and not of the type prone to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990s."  (Am. Compl., ¶ 26.)  This representation, which the Court must accept was made for the purposes of this motion, was not mere opinion, "puffery", or a casual statement, but rather a positive

14

assertion of fact made in response to a direct question.  Cf. Serbalik v. Gen. Motors Corp., 246

A.D.2d 724, 726, 667 N.Y.S.2d 503, 504 (3d Dep't 1998) ("Under these circumstances, there is

no basis for concluding that the salesperson's comments—which were not made in response to

any particular question or concern expressed by plaintiff and were, in our view, nothing more

than innocent "puffery"—induced the purchase").  Thus, the Court can infer that the Plesser's

sales representative either knew his representation was false, or assumed a pretense of

knowledge as to whether the Oven was "safe" or "prone to hazardous flare-ups" in order to

induce the Plaintiff to purchase the Oven.

Taken together, these allegations constitute strong circumstantial evidence of scienter to

satisfy the pleading requirements of Rule 9(b).  See Cirillo v. Slomin's Inc., 196 Misc. 2d 922,

927, 768 N.Y.S.2d 759, 764 (N.Y. Sup. Ct. 2003) ("[I]t can be inferred from the context of the

alleged statement that Goldberg intended to induce plaintiffs to purchase the SLOMIN'S alarm

system and monitoring service, and that Goldberg, at minimum, assumed a pretense of

knowledge in trying to conclude the sale. The Court concludes that the facts alleged in the

complaint are sufficient to put defendants on notice of the misconduct complained of, and thus

are sufficient to withstand dismissal . . . ."); see also EED Holdings v. Palmer Johnson

Acquisition Corp., 387 F. Supp. 2d 265, 276–277 (S.D.N.Y. 2004) (holding that although it is

"well established in New York that a seller's mere general commendations of the product sought

to be sold, commonly known as 'dealer's talk,' 'sales talk,' or 'puffery,' do not amount to

actionable misrepresentations" the "alleged misrepresentation as to the condition of [the

defendant's] finances and operations . . . is not mere puffery [and] is actionable as fraud")

(internal quotation marks omitted); Sgarlata v. Carioto, 23 Misc. 2d 263, 264, 201 N.Y.S.2d 384,

385 (N.Y. City Ct. 1960) ("Defendant strenuously urges that the element of scienter is lacking-he

had no way of knowing that the motor was defective. There is no question, however, that

defendant did represent the truck to be in 'good operating condition.' The court finds this to be

an actionable fraudulent representation.").

Thus, the Amended Complaint has sufficiently alleged facts that meet the heightened

pleading requirements for fraudulent misrepresentation against Plesser's by specifying a material

misrepresentation, made with the requisite scienter, which the Plaintiff reasonably relied upon to

his detriment.  Accordingly, the Court denies the motion to dismiss the fraudulent

misrepresentation claim against Plesser's.

### 2.  Fraudulent Concealment

With respect to the fraudulent concealment claim the Plaintiff contends that the

Defendants had a duty to disclose based on their superior and exclusive knowledge that the Oven

"was defective in its design and manufacturing in that:  (i) it routinely malfunctioned, rendering

it unusable and inoperable; and (ii) presented an unreasonable risk, tendency and propensity to

cause explosion and/or fire when properly used by consumers . . . in the manner which it was

intended to be used . . . ." and that the Defendants concealed this fact by remaining silent and

failing to warn consumers.  As with the misrepresentations, the Plaintiff pleads these allegations

against all of the "Defendants" generally.  However, as set forth below, the Court finds that the

Plaintiff has only pled facts supporting a fraudulent concealment claim against the Maytag

Defendants.

### a.  The Maytag Defendants

Even where there is no affirmative misrepresentation, "a fraud cause of action may be

predicated on acts of concealment where the defendant had a duty to disclose material

information".  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291–92 (2d Cir. 2006) (quoting

Kaufman v. Cohen, 307 A.D.2d 113, 119–20, 760 N.Y.S.2d 157, 165 (1st Dep't 2003).  The elements of a fraudulent concealment claim under New York law are:  (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (5) damages.  Aetna Casualty & Surety Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 582 (2d Cir. 2005) (citing Congress Fin. Corp. v. John Morrell & Co., 790 F. Supp. 459, 472 (S.D.N.Y. 1992)); see also City of N.Y. v. Smokes-Spirits.com, Inc., 541 F.3d 425, 454 (2d Cir. 2008) ("[A] fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information.").  New York recognizes a duty to disclose by a party to a business transaction in three situations:  "first, where the party has made a partial or ambiguous statement . . . second, when the parties stand in a fiduciary or confidential relationship with each other . . . and third, 'where one party possesses superior knowledge, not readily available to the other, and know that the other is acting on the basis of mistaken knowledge.'"  Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

With respect to the duty to disclose, "New York recognizes a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair."  Miele v. Am. Tobacco Co., 2 A.D.3d 799, 803, 770 N.Y.S.2d 386, 391 (2d Dep't 2003); see also Abrams v. Gen. Motors Corp., 120 Misc. 2d 371, 374, 466 N.Y.S.2d 124, 127 (N.Y. Sup. Ct. 1983) ("If one party has superior knowledge or has means of knowledge not available to both parties, then he is under a legal obligation to speak and the silence would constitute fraud."); Nasaba Corp. v. Harfred Realty Corp., 287 N.Y. 290, 293, 39 N.E.2d 243 (1942)

("Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact.").

Although normally this duty to disclose arises in the context of direct business transactions, courts have also imposed this duty on a manufacturer who has exclusive knowledge of a product defect or danger. See, e.g., Miele, 2 A.D.3d at 803, 770 N.Y.S.2d at 391 (recognizing that cigarette manufacturers have a duty to disclose material facts about the dangers associated with smoking to consumers for the purposes of a fraudulent concealment claim); Standish-Parkin v. Lorillard Tobacco Co., 12 A.D.3d 301, 786 N.Y.S.2d 13 (1st Dep't 2004) (same); Abrams, 120 Misc. 2d at 374–75, 466 N.Y.S.2d at 127 (recognizing a car manufacturers duty to disclose defects to consumers for the purposes of a fraudulent concealment claim); see also Tietsworth v. Sears, 720 F. Supp. 2d 1123 (N.D. Cal. 2010) (holding that the plaintiff had adequately alleged the defendant Whirlpool Corporation, who manufactured the product at issue, a top-loading Kenmore Elite Oasis automatic washing machine, had exclusive knowledge of a defect in the machine giving rise to a duty to disclose for the purposes of a fraudulent concealment claim). Thus, as the Court held in Maytag I, assuming the Plaintiff has adequately pled the remaining elements with the requisite specificity, the Plaintiff can maintain a cause of action against the Maytag Defendants for fraudulent concealment. See Maytag I, 2010 WL 4314313, at *11.

The Defendants contend that the Plaintiff has not met this burden. In particular, the Defendants assert that the Plaintiff has not sufficiently alleged that: (1) the Maytag Defendants had knowledge of the alleged defect; and (2) any failure to disclose was done with the requisite intent to defraud. The Court disagrees.

As previously mentioned, in contrast to the other elements of fraud, Rule 9(b) states that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).  Indeed, "it is not unusual in cases involving concealment that a plaintiff will be unable to state the facts constituting fraud in detail since such facts are necessarily peculiarly within the knowledge of the defrauding party." Kaufman v. Cohen, 307 A.D.2d 113, 121, 760 N.Y.S.2d 157, 166 (1st Dep't 2003) (internal quotation marks omitted).  However, even under the relaxed standard, allegations that a defendant had "superior knowledge" and "actively concealed" a defect cannot be alleged generally.  See Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008) (noting that the heightened pleading requirements of Rule 9(b) were designed to monitor situations where, as here, the allegations that a manufacturer had exclusive knowledge of and concealed a defect can be made by any unsatisfied customer with regard to "any alleged design defect in any manufactured product").  Thus, even where information indicating fraud is solely within the possession of the defendant the pleading party must still "provide a statement of facts upon which the belief is founded."  See Campaniello Imps., Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 664 (2d Cir. 1997) (citing Luce v. Edelstein, 802 F.2d 49, 54 n. 1 (2d Cir. 1986)).

As an initial matter, the Court agrees with the Defendants that the Plaintiff's allegations relating to the 2002 Consumer Safety Report, the Gemini Recall, the 2004 Patent and the 2006 Patent do not establish that the Maytag Defendants had knowledge of the alleged defect giving rise to a duty to disclose.  At most, the information derived from the report, patents, and the recall permit an inference that the Maytag Defendants were aware of risks associated with gas igniters in self-proving ovens generally.  This is not equivalent to knowledge that the gas igniter mechanism in the Oven contained a design defect and posed a safety risk.

Moreover, in order to premise a duty to disclose on superior knowledge, the knowledge must be of the type "not readily available to others." Brass, 987 F.2d at 150. Here, the Plaintiff cannot plausibly allege that knowledge of the dangers associated with self-proving ovens was exclusively in the Maytag Defendants possession giving rise to the duty to disclose. Rather, as the Plaintiff alleges in the complaint, the potential for flare-ups and explosions has been commonly discussed in the industry since the 1990s, and scientists had been obtaining patents to address the problem since as early as 1974. Furthermore, to the extent the knowledge of the Maytag Defendants was derived from the Gemini Recall, the same information was "readily available" to the Plaintiff and every other consumer. Indeed, the Plaintiff admits that at the time at he purchased the Oven he had "familiarity with problems associated with gas ovens and ranges." (Am. Compl., ¶ 25.)

However, the Court ultimately finds that the statements of the repairman and the contents of the Work Report constitute "strong circumstantial evidence" that the Maytag Defendants had specific knowledge of a defect in the Oven's igniting mechanism and acted with the requite scienter evidenced by the allegations regarding their attempt to conceal the problem. As opposed to the allegations in the Initial Complaint, which lacked specificity and were pled "upon information and belief", the Plaintiff in the Amended Complaint alleges that: (1) the Maytag authorized repairman represented that he himself had "addressed numerous other similar consumer complaints"; (2) Whirlpool, on behalf of Maytag, told the Plaintiff "not [to] proceed filing safety issue & personal injury" and; (3) Whirlpool, on behalf of Maytag, advised its employees not to list the gas igniter as the cause of the malfunction.

The allegations pertaining to similar customer complaints and a specific order not to report the gas igniter as the source of the explosion plausibly allege that the Maytag Defendants

had knowledge not only of a danger associated with igniting mechanisms in self-proving ovens generally, but that the igniting mechanism in the Oven specifically posed a danger to consumers. Furthermore, the Court can infer that by instructing the Plaintiff not to report a "safety issue" or "personal injury" associated with the Oven, and instructing the repairman not to report the gas igniter as the source of the explosion, the Maytag Defendants were acting with the requisite fraudulent intent to conceal the alleged defect from consumers.  See Tietsworth, 720 F. Supp. 2d at 1135–36 (active concealment for purposes of a fraudulent concealment claim sufficiently alleged under California law where plaintiffs contacted defendant for service of defective machines and were told there was no defect and/or denied free service or replacement parts).

The Defendants argue that the Court cannot credit "post-accident statements by a non-party service technician".  (Defs.' Reply at 7.)  Again, the Court disagrees.  In contrast to the allegations regarding the Plesser's sales representative, the Plaintiff has specifically pled facts alleging that the repairman was the Maytag Defendants agent.  In particular, the Plaintiff states that the repairman was an "authorized Maytag repairman" who worked for Whirlpool, "the authorized service arm for Maytag".  (Am. Compl., ¶¶ 29 & 32.)  In addition to these general statements of agency, which on their own may not satisfy the pleading requirements of Rule 9(b), the Plaintiff also quotes the Work Report in the Amended Complaint, which included instructions from Whirlpool on how the Plaintiff should proceed with reporting the explosion of a Maytag appliance.  Furthermore, the Defendants acknowledge in their reply brief that, as of February 2008, Whirlpool is Maytag's parent corporation.  (Defs.' Reply Br. 7.)  Taken together, and accepting these facts as true, which the Court must on a motion to dismiss, the Plaintiff has sufficiently alleged that the repairman was Maytag Defendant's agent and therefore the repairman's knowledge of the defect and statements regarding the alleged concealment can be

attributed to the Maytag Defendants.  See New York Marine & Gen. Insur. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 122 (2d Cir. 2001) ("Under New York law, knowledge acquired by an agent acting within the scope of its agency is imputed to the principal, even if the information was never actually communicated.").

Furthermore, the fact that the statements were made "post-accident" does not compel a different result.  Post-accident statements can raise an inference of pre-accident knowledge, particularly where, as here, the Plaintiff alleges that the facts are "peculiarly within the knowledge of the defrauding party."  Kaufman, 307 A.D.2d at 121, 760 N.Y.S.2d at 166. Although the Plaintiff will ultimately have to prove all of these allegations, including that the Maytag Defendants had this knowledge and were intentionally concealing the information prior to the Plaintiff's purchase of the Oven, they are sufficient for the purposes of a motion to dismiss to give the Maytag Defendants notice of the charges and allegations against them.

Finally, the Plaintiff has sufficiently pled the remaining elements of a fraudulent concealment claim against the Maytag Defendants.  Assuming the truth of the Plaintiff's allegations, the Plaintiff has adequately alleged that the Maytag Defendants failed to discharge their duty to disclose by staying silent.  See Grill v. Philip Morris USA, Inc., 653 F. Supp. 2d 481, 495–96 (S.D.N.Y. 2009) ("Thus, Plaintiff need not, as Defendant contends, point to a specific statement on which Ann Grill relied in starting to smoke, but rather must present evidence that she relied on Defendant's silence regarding the hazards and addictiveness of smoking in making her decision to smoke."); Inzerilla v. The Am. Tobacco Co., Index No. 11754/96, 2000 WL 34016364, at *8 (N.Y. Sup. Ct. Oct. 27, 2000) ("It is well settled that when there is a duty to speak, silence may very well constitute fraudulent concealment . . . which is

itself the equivalent of affirmative misrepresentations of fact . . . .") (internal quotation marks omitted).

In addition, the Plaintiff has adequately alleged that he relied on this silence by pleading that he purchased the Oven only after he was "satisfied that the [Oven] was safe for its intended use". (Am. Compl., ¶ 27.) See McGrath v. Dominican College of Blauvelt, New York, 672 F. Supp. 2d 477, 492 (S.D.N.Y. 2009) ("In New York 'a failure to disclose the existence of a known danger may be the equivalent of misrepresentation, where it is to be expected that another will rely upon the appearance of safety.'") (quoting McKinney v. Bellevue Hosp., 183 A.D.2d 563, 565, 584 N.Y.S.2d 538, 540 (1st Dep't.1992)). Finally, the Plaintiff has sufficiently alleged that he suffered economic damages from the purchase of the Oven, and sustained personal injuries from the continued use of the Oven.

Accordingly, the Court denies the Defendants motion to dismiss the fraudulent concealment claim as against the Maytag Defendants.

### b.  Plesser's

With respect to the fraudulent concealment claim against Plesser's, the Court finds that the Plaintiff has failed to allege any facts from which the Court can infer that Plesser's had actual knowledge of the purported defect giving rise to a duty to disclose. As the Court previously held, the 2002 Consumer Safety Report, the Gemini Recall, the 2004 Patent, and the 2006 Patent do not establish that the Maytag Defendants had knowledge of the purported defect in the Oven. However, even assuming the Court found that the Maytag Defendants acquired superior knowledge about a defect in the Oven from the report, patents and recall, the Plaintiff has not adequately alleged that Plesser's had access to any information that was not also available to the Plaintiff.

Moreover, although the facts surrounding the Plaintiff's discussion with the repairman were sufficient to allege the Maytag Defendants intent to defraud, the Plaintiff does not allege the existence of a relationship between the repairman and Plesser's from which the Court could infer that Plesser's was aware of the customer complaints and the alleged instructions for handling those complaints.  Thus, the Plaintiff has not alleged any facts to support that Plesser's was in a position of "superior knowledge" giving rise to a duty to disclose.  Accordingly, the Court grants the Defendants motion to dismiss the fraudulent concealment claim as against Plesser's, with prejudice.

**C. Whether Plaintiff Adequately Pleads a Claim Under New York General Business Law §349**

The New York Consumer Protection Act codified at §349 of the New York General Business Law declares that "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service" in New York are unlawful.  N.Y. Gen. Bus. §349(a).  "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)).  "[A]n action under §349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a). . . ."  Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).

As an initial matter, to the extent the Plaintiff intended to plead this cause of action against Plesser's, the Court dismisses the claim because the Plaintiff has not demonstrated that the misrepresentation by the Plesser's sales representative, directed only towards the Plaintiff,

had a broad impact on consumers at large. See Oswego,  85 N.Y.2d at 25.

With respect to the Maytag Defendants, the Court held in Maytag I that the Plaintiff adequately plead the first and third elements of a GBL §349 claim, finding that the Maytag Defendants' acts, if proven, were consumer oriented and aimed at the public, and that the Plaintiff was injured as a result.  See Maytag I, 2010 WL 4314313 at *16.  However, the Court dismissed the claim based on the Plaintiff's failure to plead that the Maytag Defendants "knew" of the alleged defect and therefore plausibly engaged in a "deceptive act or practice".  The Court finds that although the affirmative misrepresentations are still insufficient to support a GBL § 349 claim, the Plaintiff has plausibly alleged that the Maytag Defendants had knowledge of the purported defect and failed to disclose or actively concealed such information in violation of GBL § 349.

First, as in Maytag I, the Plaintiff has failed to plausibly state a GBL § 349 claim even under the liberal pleading of Rule 8(a) based on affirmative misrepresentations or false advertising by the Maytag Defendants.  As previously stated, the Plaintiff did not amplify the level of detail regarding the Maytag Defendants purported misrepresentations, and, as the Court held in Maytag I, "general references to advertisements and statements will not be sufficient to allege a deceptive act or practice".  Id. at *16.  Furthermore, the Plaintiff cannot premise a GBL § 349 claim against the Maytag Defendants based on the statement by the Plesser's sales representative, which not only cannot be attributed to the Maytag Defendants, but was also not directed to the public at large.

However, to the extent the Plaintiff seeks to rely on the Maytag Defendants silence or failure to warn, these "omissions" fall within the scope of a GBL § 349 claim.  "Deceptive acts" are "acts that are 'likely to mislead a reasonable consumer acting reasonably under the

circumstances.'" <u>Maurizio</u>, 230 F.3d at 521 (quoting <u>Oswego</u>, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741).  As the Court noted in <u>Maytag I,</u> "when a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice."  <u>Maytag I</u>, 2010 WL 4314313 at *16; <u>Oswego</u>, 85 N.Y.2d at 27 (holding that an omission can constitute a deceptive act or practice for purposes of GBL § 349 "where the business alone possesses material information that is relevant to the consumer and fails to provide this information."); <u>but see</u> <u>Henry v. Rehab Plus Inc.</u>, 404 F. Supp. 2d 435, 445 (E.D.N.Y. 2005) (denying a motion for summary judgment by a defendant manufacturer on a failure to warn claim, but granting the manufacturers motion for summary judgment on the GBL § 349 claim holding that, for a GBL § 349 claim "an omission becomes a misrepresentation only in a situation in which it renders other statements made by a defendant misleading" and therefore because the plaintiff did not submit any advertisements, statements, or other misrepresentations by the manufacturer, the failure to warn could not constitute a misleading "deceptive act or practice").  The Court's above stated finding that the Plaintiff has plausibly alleged that the Maytag Defendants had knowledge of the purported defect and failed to disclose that information for the purposes of the fraudulent concealment claim satisfies the pleading requirement for a deceptive act or practice by omission under GBL § 349.

Accordingly, the Court denies the Defendants motion to dismiss the GBL § 349 claim as against the Maytag Defendants.

### III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendants' motions to dismiss:  (1) the fraudulent concealment claim and the GBL § 349 claim against the Maytag Defendants and (2) the fraudulent misrepresentation claim against Plesser's are DENIED, and it is further

**ORDERED**, that the Defendants' motions to dismiss:  (1) the fraudulent misrepresentation claim against the Maytag Defendants and (2) the fraudulent concealment and GBL § 349 claims against Plesser's are GRANTED, with prejudice, and it is further

**ORDERED**, that the parties are directed to contact the chambers of United States Magistrate Judge William D. Wall in order to proceed with discovery.

Dated: Central Islip, New York
       August 31, 2011

                    _/s/ Arthur D. Spatt_____
                     ARTHUR D. SPATT
                   United States District Judge

27