UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY WOODS on behalf of himself and other Consumers of the Maytag Gas Oven Appliance (Model MGR5875QDS) similarly situated,<br><br>                      Plaintiffs,<br><br>v.<br><br>WHIRLPOOL CORPORATION and PLESSER'S M.S.H. INC.,<br><br>                      Defendants. | *SECOND AMENDED COMPLAINT AND JURY DEMAND*<br><br>Civil Action No.:<br>2:10-cv-00559-ADS-WDW |

Plaintiff by his attorneys, PARKER WAICHMAN ALONSO LLP, and GORTON & GORTON as and for his Second Amended Complaint against Defendants, alleges as follows:

### THE PARTIES

1.  Plaintiff GARY WOODS is a resident of the County of Nassau, State of New York. He brings this action both in his individual capacity and on behalf of all those who now or in the past owned or purchased a Maytag 30 inch gas range convection oven model number MFR5875QDS.

2.  The named class representative is a member of the above-defined class and seeks to represent those similarly situated persons who now or in the past owned or purchased a Maytag 30 inch gas range convection oven model number MFR5875QDS.

3.  Upon information and belief, Defendant WHIRLPOOL CORPORATION is a domestic corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of New York, with its principal place of business located at 2000 N. M-63, Benton Harbor, MI 49022.

4. Defendant WHIRLPOOL CORPORATION through its former wholly-owned subsidiaries including Maytag Corporation and Maytag Sales, Inc., is now, and at all times mentioned in this Complaint, in the business of designing, manufacturing, constructing, assembling, inspecting, and selling various types of household appliances, including gas ovens.

5. Upon information and belief, the Defendant WHIRLPOOL CORPORATION through its former wholly-owned subsidiaries including Maytag Corporation and Maytag Sales, Inc. manufactured the Maytag 30 inch gas range convection oven model number MFR5875QDS.

6. At all times hereinafter mentioned the Defendant PLESSER'S M.S.H., INC. is located at 6 East Main Street, Babylon, New York 11702 and does business in the State of New York.

7. At all times hereinafter mentioned, the Defendant PLESSER'S M.S.H., INC. (hereinafter referred to as "Plesser's"), was a domestic corporation organized and existing pursuant to the laws of the State of New York.

8. At all times hereinafter mentioned, the Defendant PLESSER'S M.S.H., INC. was a foreign corporation duly authorized to do business in the State of New York.

9. Defendant PLESSER'S is now, and at all times mentioned in this Complaint was, in the business of selling at retail to Plaintiff and to the members of the public, various types of household appliances, including gas ovens designed and manufactured by Defendant WHIRLPOOL CORPORATION through its former wholly-owned subsidiaries including Maytag Corporation and Maytag Sales, Inc.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act, because at least one member of the class is a citizen of a different

State than the Defendant, there are 100 or more class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11. Venue is properly set in this District pursuant to 28 U.S.C. § 1391(a) because Defendant resides, transacts business and is found within this District, and a substantial part of the events giving rise to the claims at issue in this Complaint arose in this District.

## GENERAL ALLEGATIONS

12. On or about July 21, 2005, Plaintiff purchased from Defendant PLESSER'S a Maytag 30 inch gas range convection oven model number MGR5875QDS [the "Appliance"], that had previously been designed, manufactured, constructed, assembled, and sold by Defendant WHIRLPOOL CORPORATION through its former wholly-owned subsidiaries including Maytag Corporation and Maytag Sales, Inc.

13. The subject Appliance is a combination gas oven/range designed, manufactured, marketed and sold with an electric igniter known commonly known as a "glow plug" or "hot surface igniter," which when activated by the end user, generates heat while simultaneously opening a gas valve with the intention of creating enough heat to cause combustion of the fuel, thus lighting the oven for use in cooking.

14. The aforementioned system is commonly referred to as "self-proving," meaning that the opening of the gas valve and the generation of sufficient heat is "proved" by the oven being ignited.

15. Such "self-proving" systems such as that which exists on the subject Appliance do not contain a failsafe or redundancy that will stop the flow of fuel in the event the igniter fails to generate sufficient heat to cause combustion.

16. In the event the igniter does not generate sufficient heat to ignite the fuel, gas continues to flow into the oven, causing an excess to build up which when combined with oxygen-rich room air, creates a highly combustible fuel mixture and dramatically increases the potential for explosion and/or fire.

17. Beginning in the early 1990s, reports and data began to emerge demonstrating that gas ovens with "self-proving" systems were prone to hazardous flare-ups and explosions. This propensity was investigated by the Consumer Products Safety Commission (CPSC) and resulted in the publication of a report on July 15, 2002 entitled *Gas Range Delayed Ignitions*. It concluded, *inter alia*, that marketed "hot surface igniters" and gas valves create a system that "is not failsafe and the presence of gas at the burner was not proved." Moreover, such appliances "have no means to detect and react to the release or accumulation of non-combusted gases."

18. Upon information and belief, on or about March 27, 2003, Maytag issued a consumer recall of 23,000 units in its line of Gemini Gas Ranges because of reports of "delayed ignition flashback fires" in the ovens which resulted in burn injuries to at least three (3) consumers.

19. Upon information and belief, the subject Appliance was never similarly recalled.

20. Upon information and belief, a number of United States Patents were granted to scientists dating back as far as 1974 addressing the concerns of fuel buildup in gas ovens/ranges with hot surface ignition systems. In 1974, US 3832123 designed a "fail safe" improvement that shuts off gas flow when a flame is not detected after a predetermined amount of time. In 1988, US 4765536 noted that ovens that use a pilot light system include flame sensors that only allow the flow of gas in the presence of a flame. In 1998, US 5791890 used an extra thermocouple near the burner in conjunction with the existing thermocouple to monitor flame ignition, and

4

stops the flow of gas if a flame is not detected.  In 2000, US 6164958 was a safety system comprised of a gas supply valve, a gas flow sensor, a gas leak warning circuit, a no-flame warning circuit and a gas supply valve controller.  In 2003, US 6634351 addresses multiple patents that include a shutoff that senses flame ignition and stops gas flow in the absence of flame.  In 2004 US 6830045 was issued to Maytag Corporation and was a system designed to reduce buildups.  In 2006, US 7044729 included a safety valve and flame detection circuit to interrupt the flow of gas if not ignited.

21. Upon information and belief, the subject Appliance contained no failsafe or inadequate fail-safe's to interrupt and/or halt the flow of gas in the absence of combustion.

22. On or about July 21, 2005, in light of his own concerns regarding safety and familiarity with problems associated with gas ovens and ranges, Plaintiff GARY WOODS inquired of the Plesser's sales representative who assisted him as to whether the Maytag 30 inch gas range convection oven model number MGR5875QDS was subject to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990s.

23. On or about July 21, 2005, the Plesser's sales representative assisting Plaintiff GARY WOODS assured him that the Maytag 30 inch gas range convection oven model number MGR5875QDS was safe and not of the type prone to hazardous flare-ups and explosions as had been reported in similar appliances throughout the 1990s.

24. On or about July 21, 2005, satisfied that the subject Appliance was safe for its intended use, Plaintiff GARY WOODS purchased the Maytag 30 inch gas range convection oven model number MGR5875QDS for his home.

25. Thereafter, on or about February 29, 2008, Plaintiff GARY WOODS attempted to use the oven, at which time it malfunctioned due to the negligent and careless design of the

manufacturer. There was a resulting explosion and fire which caused Plaintiff to experience serious burns.

26. Thereafter, on or about February 29, 2008, an authorized Maytag repairman from Cool Power LLC located in Hauppauge, New York was dispatched to Plaintiff's home for a service call following the explosion and fire.

27. The repairman verbally communicated to Plaintiff GARY WOODS that he had addressed numerous other similar consumer complaints with respect to the subject Appliance, specifically flare-ups, explosions and fire.

28. At the time of the service visit, the repairman created a report that stated "Work completed this visit: found unknown issue intermittent gas ignition causing gas buildup. Customer face Badly Burned."

29. The work report further noted that "Whirlpool [the authorized service arm for Maytag] stated to not proceed filing safety issue & personal injury. Whirlpool will call cust with what to do."

30. The repairman advised Plaintiff that he was specifically told by his superiors not to generate a report indicating that the incident was caused by the gas igniter.

31. Defendants' attempt to conceal the true nature and cause of the explosion and fire evidences their intent to hide and conceal the underlying defect from consumers including Plaintiff and Plaintiff Class Members.

32. Upon information and belief, Plaintiff was never again contacted by Defendants or their authorized representatives regarding the subject Appliance.

33. Defendants are now, and at all times relevant hereto, in the business of designing, manufacturing, assembling, inspecting, marketing, selling and/or distributing household appliances including the subject Appliance.

34. Upon information and belief, the Appliance was defective in its design and manufacturing in that (i) it routinely malfunctioned, rendering it unusable and inoperable; and (ii) presented an unreasonable risk, tendency and propensity to cause explosion and/or fire when properly used by consumers, including Plaintiff and Plaintiff Class Members in the manner in which it was intended to be used.

35. As a result of the negligence, carelessness and recklessness of Defendants and the dangerous and the defective nature of the Appliance, reasonable consumers including Plaintiff and Plaintiff Class Members routinely endured the Appliance malfunctioning, rendering it inoperable and unusable.

36. As a result of the negligence, carelessness and recklessness of Defendants and the dangerous and defective nature of the Appliance, reasonable consumers including Plaintiff and Plaintiff Class Members were routinely and repeatedly subjected to unjustifiable inconvenience, expense and otherwise incurred damages in order to repair the Appliance in an attempt to maintain the Appliance in a usable condition.

37. As a result of the negligence, carelessness and recklessness of Defendants and the dangerous and defective nature of the Appliance, reasonable consumers including Plaintiff and Plaintiff Class Members were subjected to the unjustifiable safety risk of explosion and/or fire due to the risk, tendency and propensity of the Appliance to suddenly, and without warning become inoperable, and/or explode and/or cause fire at any given time.

38. At all times relevant hereto, Defendants knew, and had reason to know, or should have known, that the Appliance was negligently designed, manufactured, assembled, inspected, marketed, advertised, promoted, sold, and/or distributed in a dangerous and defective condition, and was fully capable of taking remedial proper remedial action, but failed and/or refused to do so.

39. At all times relevant hereto, Defendants knew, and had reason to know, or should have known, that the igniter on the Appliance was negligently designed, manufactured, assembled, inspected, marketed, advertised, promoted, sold, and/or distributed in a dangerous and defective condition in that it caused the gas valve to open in such a manner that the open valve causes the oven to fill with gas, but does not ignite. Under circumstances such as opening the oven door, the fuel-rich oven air mixes with the oxygen-rich room air, and can trigger an explosion and/or fire. Defendant was fully capable of taking remedial proper remedial action, but failed and/or refused to do so.

40. At all times relevant hereto, Defendants knew, and had reason to know, or should have known, that Appliance was negligently designed, manufactured, assembled, inspected, marketed, advertised, promoted, sold, and/or distributed in a dangerous and defective condition in that it possessed hidden and/or concealed defects with respect to the igniter mechanism that created the risk, tendency and propensity of the Appliance to suddenly, and without warning become inoperable, and/or explode and/or cause fire at any given time, which were not reasonably known or knowable to Plaintiff and Plaintiff Class Members. Defendant was fully capable of taking remedial proper remedial action, but failed and/or refused to do so.

41. At all times relevant hereto, Defendants were fully aware of the defective condition of the Appliance, and was fully capable of taking proper remedial action to correct it,

but wrongfully failed and refused to do so in order to save themselves the substantial cost and expense involved, all to the detriment, damage and loss to Plaintiff and Plaintiff Class Members, and at the inexcusable and unjustifiable risk of exposing Plaintiff and Plaintiff Class Members to the risk of serious and perilous safety hazards, bodily harm and/or death.

42. At all times relevant hereto, Defendants failed to warn of the dangers of the Appliance, including that it routinely malfunctioned, rendering it unusable and inoperable; and presented an unreasonable risk, tendency and propensity to cause explosion and/or fire when properly used by consumers, in the manner in which it was intended to be used, including Plaintiff and Plaintiff Class Members.

43. At all times relevant hereto, Defendants misrepresented the safety of the Appliance and they negligently designed, manufactured, assembled, inspected, marketed, advertised, promoted, sold, and/or distributed the Appliance as safe, despite the fact that it routinely malfunctioned, rendering it unusable and inoperable; and presented an unreasonable risk, tendency and propensity to cause explosion and/or fire when properly used by consumers, in the manner in which it was intended to be used, including Plaintiff and Plaintiffs' Class Members.

44. At all times relevant hereto, Defendants fraudulently concealed from Plaintiff and Plaintiffs' Class Members dangerous defects in the Appliance that caused it to routinely malfunction, rendering it unusable and inoperable; and present an unreasonable risk, tendency and propensity to cause explosion and/or fire when properly used by consumers, in the manner in which it was intended to be used, including Plaintiff and Plaintiff Class Members.

45. At all times relevant hereto, the hidden and/or concealed defects in the Appliance generally, and with respect to the igniter mechanism specifically were known to Defendants.

These defects are reflected in data and reports maintained by Defendants and other reports, technical service bulletins, documents and memoranda within the possession of Defendants as more fully detailed above. These defects were not reasonably known or knowable by Plaintiff, and were never disclosed or warned of by Defendants to Plaintiffs or Plaintiff Class Members.

46. At all times relevant hereto, Defendants continued to design, manufacture, assemble, inspect, market, advertise, promote, sell, and/or distribute the Appliance as safe, despite their exclusive possession of knowledge of the defects in the Appliance generally, and with respect to the igniter mechanism specifically.

47. Prior to Plaintiff's use of the gas ovens, Defendants, in order to promote and induce the purchase of their product, represented to the general public and to the Plaintiff, through the internet, by advertisement literature, through sales representatives and other means that consumers could safely use the product for the purpose of cooking which was in fact the purpose for which the product was intended.

48. At the time of the sale and as a part thereof, and as inducement to Plaintiff and Plaintiff Class Members to acquire the gas ovens, Defendants themselves and through their representatives represented and/or promised that the ovens possessed certain safety features, namely those that would mitigate the propensity to cause flare-ups, explosions and/or fire.

49. Plaintiff and Plaintiff Class Members purchased or obtained the ovens in reliance on the represented/promised safety features, namely those that would mitigate the propensity to cause flare-ups, explosions and/or fire (as well as the professed integrity of Defendant Maytag).

## **CLASS ALLEGATIONS**

50. Plaintiff brings this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the following ascertainable Class defined as:

>All consumers of a Maytag 30-inch gas range convection oven model number MGR5875QDS.

51. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' legal representatives, predecessors, successors, assigns, and employees.

52. The definition of the Class is unambiguous. Plaintiff is a member of the Class he seeks to represent. Class members can be notified of the class action through publication and direct mailings to address lists maintained in the usual course of business by Defendants and their retail customers.

53. Class members are so numerous that individual joinder is impracticable. The precise number of Class members is unknown to Plaintiffs, but it is clear that the number greatly exceeds the number to make joinder possible, particularly given Defendants' sales of their Maytag 30-inch gas range convection oven model number MGR5875QDS.

54. Common questions of law and fact predominate over the questions affecting only individual Class members. Some of the common legal and factual questions include:

> a. Whether Defendants have committed fraud by failing to disclose to Plaintiff and Plaintiff Class Members the hidden and/or concealed design defects in the Maytag 30-inch gas range convection oven model number MGR5875QDS although such defects were fully known to Defendant.
>
> b. Whether Defendants have concealed the hidden defects from Plaintiff and Plaintiff Class Members, *inter alia*, by (i) failing to recall such the Maytag 30-inch gas range convection oven model number MGR5875QDS; and (ii) failing to make a correct, complete, and comprehensive installation of an electrical or other appropriate system and components in order to render the Maytag 30-inch gas range convection oven model number MGR5875QDS properly operable and safe for its intended use.
>
> c. Whether Defendants violated General Business Law Section 349 by their deceptive practices and acts in misleading consumers,

including Plaintiff and Plaintiffs' Class Members that their product was safe for its intended use, and which acts have posed a risk to Plaintiff and Plaintiffs' Class Members and potential consumers at large.

55. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class members. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

56. The injuries sustained by the Class members flow, in each instance, from a common nucleus of operative facts – Defendants' misconduct. In each case, Defendants marketed and sold the Maytag 30-inch gas range convection oven model number MGR5875QDS by misleading, deceiving or otherwise omitting the truth to Plaintiffs and Plaintiff Class Members that the Maytag 30-inch gas range convection oven model number MGR5875QDS was safe and effective for its marketed purpose and intended use.

57. Plaintiff and Plaintiff Class Members have been damaged by Defendant's misconduct, in that they (i) routinely endured the Appliance malfunctioning, rendering it inoperable and unusable; (ii) were routinely and repeatedly subjected to unjustifiable inconvenience, expense and otherwise incurred damages in order to repair the Appliance in an attempt to maintain the Appliance in a usable condition; and (iii) were subjected to the unjustifiable safety risk of explosion and/or fire due to the risk, tendency and propensity of the Appliance to suddenly, and without warning become inoperable, and/or explode and/or cause fire at any given time.

58. Plaintiff's claims are typical of the claims of the other Class members.

59. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is familiar with the basic facts that form the bases of the Plaintiffs' Class Members' claims.

Plaintiff's interests do not conflict with the interests of the other Plaintiffs' Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in Class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has prosecuted complex Class actions, including consumer protection Class actions. Plaintiffs and Plaintiff's counsel will fairly and adequately protect the interests of the Class members.

60. The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Plaintiff Class Members. The relief sought per individual Plaintiff Class Member is relatively small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendants. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Plaintiff Class Members themselves could afford such individual litigation, the court system could not.

61. Individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system. The Class Action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Plaintiff Class Members' claims and the absence of material differences in the state statutes and common laws upon which Plaintiffs' Class Members' claims are based, a Class will be easily managed by the Court and the parties.

## AS AND FOR A FIRST CAUSE OF ACTION
## FRAUDULENT CONCEALMENT AS TO DEFENDANT WHIRLPOOL CORPORATION & FRAUDULENT INDUCEMENT THROUGH FRAUDULENT MISREPRESENTATIONS AS TO DEFENDANT PLESSER'S

62. Plaintiff, GARY WOODS, individually, and on behalf of all others similarly situated, repeats, reiterates and realleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

63. At all times during the course of dealing between Defendants and Plaintiff, GARY WOODS, and/or Plaintiff Class Members, Defendants misrepresented the safety of Defendants' Maytag 30 inch gas range convection oven model number MFR5875QDS.

64. Defendants knew, or were reckless in not knowing, that their representations were false.

65. Defendants fraudulently concealed, and/or intentionally omitted, the fact that Defendants' Maytag 30 inch gas range convection oven model number MFR5875QDS was defective in its design and manufacturing in that (i) it routinely malfunctioned, rendering it unusable and inoperable; and (ii) presented an unreasonable risk, tendency and propensity to cause explosion and/or fire when properly used by consumers, including Plaintiff and Plaintiffs' Class Members in the manner in which it was intended to be used, and was negligently manufactured in this regard.

66. Defendants fraudulently concealed and/or intentionally omitted the fact that Defendants were aware of consumer complaints related to the defective design of the Appliance generally, and with respect to the igniter mechanism specifically, and did nothing.

67. Defendants were under a duty to disclose to Plaintiff, GARY WOODS, and Plaintiff Class Members, the aforementioned as it pertains to Defendants' Maytag 30 inch gas range convection oven model number MFR5875QDS.

68. Defendants' concealment and omissions of material facts concerning, inter alia, the negligent design and manufacture of Defendants' Maytag 30 inch gas range convection oven model number MFR5875QDS was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff and Plaintiff Class Members into reliance and continued purchase and use of Defendants' Maytag 30 inch gas range convection oven model number MFR5875QDS.

69. Defendants' concealment and omissions of material facts concerning, inter alia, the negligent manufacture of Defendants' Maytag 30 inch gas range convection oven model number MFR5875QDS was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff, GARY WOODS, and Plaintiff Class Members into reliance, continued use of Defendants' Maytag 30 inch gas range convection oven model number MFR5875QDS, and to cause them to purchase and/or use Defendants' Maytag 30 inch gas range convection oven model number MFR5875QDS solely for Defendants' financial gain and without regard for the safety of their customers, the Plaintiff herein and the Plaintiff Class Members.

70. Defendants knew that Plaintiff, GARY WOODS, and Plaintiff Class Members, had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of facts surrounding Defendants' Maytag 30 inch gas range convection oven model number MFR5875QDS as alleged herein.

71. Plaintiff and Plaintiff Class Members reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

72. As a result of the foregoing acts and omissions, the Plaintiff and Plaintiff Class Members experienced, and/or are at the risk of experiencing, serious injuries and/or financial damage and injury.

73. That by reason of the foregoing, Plaintiff and Plaintiff Class Members has been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## AS AND FOR A SECOND CAUSE OF ACTION
## VIOLATION OF GENERAL BUSINESS LAW SECTION 349
## AS TO DEFENDANT WHIRLPOOL CORPORATION

74. Plaintiff, GARY WOODS, individually, and on behalf of all others similarly situated, repeats, reiterates and realleges each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effect as if fully set forth herein.

75. Defendant engaged in consumer-oriented, commercial conduct by selling and advertising the subject product.

76. Defendant misrepresented and omitted material information regarding the subject product and/or its packaging by failing to disclose known risks.

77. Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of the subject product, in violation of New York General Business Law ("GBL") § 349.

78. New York has enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices. Defendant violated these statutes by knowingly and falsely representing that the subject product and/or its packaging were fit to be used for the purpose for which it was intended, when Defendant knew it was defective and dangerous, and by other acts alleged herein.

16

79. Defendant engaged in the deceptive acts and practices alleged herein in order to sell the subject product to the public, including Plaintiff GARY WOODS and Plaintiff Class Members.

80. As a direct and proximate result of Defendant's violations of GBL § 349, Plaintiff and Plaintiff Class Members have suffered damages, for which they are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

81. That by reason of the foregoing, Plaintiff and Plaintiff Class Members has been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all Plaintiff Class Members he seeks to represent, demand judgment against Defendants as follows:

1. An order certifying the Class pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class, appointing Plaintiff as class representative, and appointing PARKER WAICHMAN ALONSO LLP and GORTON & GORTON as counsel to the Class;

2. Damages in an amount to be determined at trial;

3. Pre-judgment and post-judgment interest at the maximum rate allowable at law;

4. Treble, exemplary, and/or punitive damages in an amount to be determined at trial;

5. The costs and disbursements incurred by Plaintiffs and Class members in connection with this action, including reasonable attorneys' fees;

6. All statutory damages;

7. Disgorgement of Defendants' profits from the sale of Maytag 30 inch gas range convection oven model number MFR5875QDS; and

8. Such other and further relief under all applicable state of federal law and any relief the Court deems just and appropriate.

Dated: Port Washington, New York
September 21, 2011

Respectfully Submitted,

/s/ Daniel C. Burke
Daniel C. Burke
Andres F. Alonso
**PARKER WAICHMAN ALONSO LLP**
6 Harbor Park Drive
Port Washington, New York 11050
Telephone: (516) 466-6500
Facsimile: (516) 466-6665
dburke@yourlawyer.com

John T. Gorton, Esq.
**Gorton & Gorton LLP**
Attorneys for Plaintiff
1225 Franklin Avenue, Suite 475
Garden City, NY 11530

*Attorneys for Plaintiff Gary Woods*

To: **Leader & Berkon LLP**
*Attorneys for Defendants*
630 Third Avenue
New York, NY 10017

**Wheeler Trigg O'Donnell LLP**
*Attorneys for Defendants*
1800 California Street
Suite 3600
Denver, CO 80202

18

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury as to all issues so triable.

Dated: Port Washington, New York
September 21, 2011

Respectfully Submitted,

 /s/  Daniel C. Burke
Daniel C. Burke
Andres F. Alonso
**PARKER WAICHMAN ALONSO LLP**
6 Harbor Park Drive
Port Washington, New York 11050
Telephone:  (516) 466-6500
Facsimile:  (516) 466-6665
dburke@yourlawyer.com

John T. Gorton, Esq.
**Gorton & Gorton LLP**
Attorneys for Plaintiff
1225 Franklin Avenue, Suite 475
Garden City, NY 11530

*Attorneys for Plaintiff Gary Woods*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ Daniel C. Burke
Daniel C. Burke